UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK,
-------------------------------------------------------------------x
EKMAN & CO. AB.,

                                 Plaintiff,

Case No. 10 CV 8110 (JGK)

    –against –

GRAPHIC PAPER, INC.,

                                 Defendant.
-------------------------------------------------------------------x
GRAPHIC PAPER, INC.,

                                 Interpleader Plaintiff,

    -against-

EKMAN & CO. AB., and
U.S. BANK NATIONALASSOCIATION,

                                 Interpleader Defendants.
-------------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO INTERPLEADER DEFENDANT EKMAN'S MOTION TO DISMISS THE INTERPLEADER COMPLAINT**

                                                Ettelman & Hochheiser, P.C.
                                                Attorneys for Interpleader Plaintiff
                                                100 Quentin Roosevelt Blvd.
                                                Suite 401
                                                Garden City, New York 11530
                                                (516) 227-6300

**TABLE OF CONTENTS**

**PAGE #**

TABLE OF AUTHORITIES ...................................................................................ii, iii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ..........................................................................................3

ARGUMENT ................................................................................................................5

    I.     THE PURPOSE OF INTERPLEADER IS TO AVOID
           MULTIPLE CONFLICTING CLAIMS .......................................................5

    II.    AN INTERPLEADER PLAINTIFF "IS NOT REQUIRED
           TO EVALUATE THE MERITS OF CONFLICTING
           CLAIMS AT ITS PERIL" ..............................................................................6

    III.   EKMAN PREMATURELY ATTEMPTS TO ARGUE
           THE MERITS OF U.S. BANK'S UNDERLYING CLAIM .........................9

    IV.   EKMAN'S ANALYSIS CONCERNING THE RESTRAINING
           NOTICE IS FLAWED ..................................................................................10

    V.    GRAPHIC PAPER HAS ALREADY DEPOSITED THE
           INTERPLEADER STAKE INTO THE COURT'S REGISTRY ...............11

    VI.   THE COURT SHOULD NOT DISMISS THE CPLR § 5239 CLAIM......12

CONCLUSION ..........................................................................................................13

# TABLE OF AUTHORITIES

**CASES**          **PAGE #**

*A/S Krediit Pank v. Chase Manhattan Bank*,
 155 F. Supp. 30 (S.D.N.Y. 1957)..................................................................................7, 10

*Bank of N.Y. v. First Millennium, Inc.*,
 No. 06 Civ. 13388(CSH), 2008 WL 953619 (S.D.N.Y. Apr. 8, 2008) .....................................7

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
 102 F.3d 660 (2d Cir. 1996)...........................................................................................3

*Republic of Philippines v. Pimentel*,
 553 U.S. 851 (2008).....................................................................................................5

*Rubinbaum LLP v. Related Corporate Partners V, L.P.*,
 154 F. Supp. 2d 481 (S.D.N.Y. 2001)..............................................................................5

*Sotheby's, Inc. v. Garcia*,
 802 F. Supp. 1058 (S.D.N.Y. 1992)..........................................................................6, 7, 9

*State Farm Fire & Cas. Co. v. Tashire*,
 386 U.S. 523 (1967).....................................................................................................6

*U.S. Trust Co. of N.Y. v. Alpert*,
 10 F. Supp. 2d 290 (S.D.N.Y. 1998)................................................................................7

*UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*,
 No. 09 Civ. 4286(LAK), 2009 WL 1619915 (S.D.N.Y. June 4, 2009).....................................6

*Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*,
 985 F.2d 677 (2d Cir. 1993).....................................................................................6, 7, 10

*Weininger v. Castro*,
 462 F. Supp. 2d 457 (S.D.N.Y. 2006)............................................................................12

**STATUTES**

28 U.S.C. § 1335..................................................................................................6, 12

CPLR § 5222........................................................................................................8, 10

CPLR § 5239.........................................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) and 12(b) .................................................................................1, 3, 9, 13

Fed. R. Civ. P. 22(a) ........................................................................................................6, 12

Fed. R. Civ. P. 56............................................................................................................... 9

Interpleader Plaintiff Graphic Paper, Inc. ("Graphic Paper") respectfully submits the following Memorandum of Law in opposition to the motion to dismiss filed by Interpleader Defendant Ekman & Co. AB ("Ekman") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), stating as follows:

## PRELIMINARY STATEMENT

The instant motion to dismiss must be denied because it is premature and utilizes the wrong standard for dismissal of an interpleader action. Tellingly omitted from Ekman's motion is any real discussion as to the proper standard to be employed by the Court in deciding the sufficiency of an interpleader complaint, namely whether the interpleader plaintiff possessed a "good faith" concern about duplicative litigation and multiple liability. Instead, Ekman attempts to argue the merits of the case, that is whether Ekman has any connection to the judgment debtor and whether co-interpleader defendant U.S. Bank National Association ("U.S. Bank") properly perfected its restraining notice (the "Restraining Notice"). Such arguments are premature at this stage and only serve to delay this case and a final determination by the Court regarding which party is entitled to the $1,905,885.33 that Graphic Paper has deposited with the Court.

The simple fact is that when Graphic Paper filed the instant interpleader action, it was stuck between a rock and a hard place. On the one hand, it ordered and received paper products from its foreign supplier Ekman totaling $1,905,885.33. On the other hand, it was served with a Restraining Notice from U.S. Bank regarding an $851 Million judgment obtained by U.S. Bank against certain judgment debtors in New York Supreme Court that prevented Graphic Paper from making payment to Ekman. In particular, the Restraining Notice defined the term "Judgment Debtor" broadly and listed a certain company, Paper Max, Inc. ("Paper Max"), as an Affiliate company under the control of the Judgment Debtors. Pursuant to both definitions, a defined

1

Affiliate could also be a Judgment Debtor. Paper Max is important because at the time Graphic Paper ordered the relevant paper products from Ekman, Paper Max was integrally involved in the transaction and in fact was listed as an "intermediate consignee" on the bill of lading. Thus, due to the involvement of Paper Max in the relevant transaction, Graphic Paper was unsure as to who was the rightful party at interest, and whether the transaction was structured so that Ekman was operating merely as a pass through.

As a result of the inclusion of Paper Max on the Restraining Notice, Graphic Paper had a "good faith" believe that if it made payment to Ekman, it could be subject to not only multiple liability, but a separate lawsuit filed by U.S. Bank for breach of the Restraining Notice. This good faith belief was only strengthened by subsequent discussions that Graphic Paper had with the interpleader defendants prior to filing its Complaint. Specifically, U.S. Bank refused to release Graphic Paper from the Restraining Notice, stating that "it could not conclude that Ekman is not acting on behalf of the Judgment Debtors," and telling Graphic Paper to file an "interpleader action." Moreover, despite Ekman's repeated assertions that it had no connection to the Judgment Debtors, it refused to indemnify Graphic Paper if it went forward and made payment to Ekman for the ordered paper. Therefore, with Ekman and US Bank both taking intractable positions, one party refusing to release the Restraining Notice and the other party refusing to indemnify, Graphic Paper was forced to file the instant interpleader action or else face the possibility of being liable for multiple judgments, once for the cost of the paper, and a second time for a violation of the Restraining Notice.

Thus, any argument by Ekman concerning the enforceability of the restraining notice simply misses the mark (it focuses too much on the actions of U.S. Bank) and ignores the fact that Graphic Paper had a "good faith" and reasonable belief that if it didn't file the instant

2

interpleader action it could potentially be subject to multiple liabilities. In fact, Ekman filed suit against Graphic Paper first, and as a result, Graphic Paper was forced to use interpleader as a defense to that action. Accordingly, Graphic Paper hereby requests that this Court deny the instant motion to dismiss filed by Ekman.

## STATEMENT OF FACTS

The following motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b), and as a result, the Court is required to accept the allegations contained in the four corners of the Interpleader Complaint filed by Graphic Paper as true and consider them in a light most favorable to the non-moving party, namely Graphic Paper. *See, generally Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). Accordingly, the following are the relevant facts as contained in the Interpleader Complaint:

- Throughout 2009 and 2010, Graphic Paper purchased paper products from Ekman. (Interpleader Complaint ¶ 9) (Dkt # 13)  The amount of outstanding invoices is currently $1,905,885.33. (Interpleader Complaint ¶ 10)

- In August 2010, Graphic Paper was served with a subpoena and Restraining Notice from U.S. Bank. (Interpleader Complaint ¶ 10) The subpoena and Restraining Notice concerned the entry of a March 5, 2005, judgment obtained by U.S. Bank in the amount of $851 Million against various defendants including (1) APP International Finance Company B.V.; (2) P.T. Lontar Papyrus Pulp & Paper Industry; (3) Asia Pulp & Paper Company, Ltd.; (4) Indah Kiat International Finance Company B.V.; and (5) P.T. Indah Kiat Pulp & Paper Company (collectively, "Judgment Defendants")  (Interpleader Complaint ¶ 14)

- The Restraining Notice stated that "you are forbidden to make or suffer any sale, assignment or transfer of, or interfere with any property of the Judgment Debtors or pay over or

otherwise dispose of any debt owed to the Judgment Debtors….[and] also covers all property in which the Judgment Debtors have an interest…" (Restraining Notice, Exhibit A to Interpleader Complaint, at 2) (Dkt # 13)

- The Restraining Notice defined Judgment Debtors as the above referenced Judgment Defendants, along with "their principals, officers, directors, employees, agents, and all other persons acting or purporting to act on their behalf, whether individually or collectively." (Restraining Notice, Exhibit A to Interpleader Complaint, at 6)  Additionally, the Restraining Notice defined an "Affiliate" as "any person or entity contracted by, under common control with, or controlling any Judgment Debtor…" (Restraining Notice, Exhibit A to Interpleader Complaint, at 7)  Thus, under both definitions, a defined Affiliate could also be a Judgment Debtor.

- One of the 97 listed affiliates was Paper Max, Inc. ("Paper Max").  (Restraining Notice, Exhibit A to Interpleader Complaint, at 9)  Paper Max was a company that was integrally involved in Graphic Paper's transaction with Ekman.  First, the transactions were initially negotiated between Graphic Paper and Paper Max, however, at the request of Paper Max, Graphic Paper sent all purchase orders for the product to Ekman.  (Interpleader Complaint ¶ 11)  Second, even after Graphic Paper had ordered the product from Ekman, Paper Max continued to be listed on the bill of lading as the "Notify Party/Intermediate Consignee."  (Interpleader Complaint ¶ 12)  Thus, due to the involvement of Paper Max in the relevant transaction, Graphic Paper was unsure as to who was the rightful party at interest, and whether the transaction was structured so that Ekman was operating merely as a pass through.

- After receiving the Restraining Notice from U.S. Bank, Graphic Paper notified Ekman and engaged in discussions with both Ekman and U.S. Bank.  In response, Ekman produced an

4

affidavit, which continued to prove unsatisfactory to U.S. Bank, and U.S. Bank refused to release Graphic Paper from the Restraining Notice.  In a letter from U.S. Bank to Graphic Paper, U.S. Bank stated that "[d]espite Mr. Tidebrant's affidavit, at this point in the proceedings, we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors (nor does he state so in his affidavit)…I suggest that you consider the filing of an interpleader action…" (Interpleader Complaint ¶ 19)

- As a result of the aforementioned facts, Graphic Paper became concerned that either Paper Max or Ekman may have been an agent of one or more of the Judgment Debtors and was unsure about the source of the paper purportedly supplied by Ekman.  (Interpleader Complaint ¶ 19)  Additionally, Graphic Paper became concerned that if it made payment to Ekman, it could be subject to suit by U.S. Bank for a breach of the Restraining Notice.  (Interpleader Complaint ¶ 20)

- On October 25, 2010, Ekman filed suit against Graphic Paper for payment of its invoices.

## ARGUMENT

### I. THE PURPOSE OF INTERPLEADER IS TO AVOID MULTIPLE CONFLICTING CLAIMS

The purpose of an interpleader action is to avoid the problem of multiple, conflicting claims to a single fund by forcing all claimants to resolve their claims in one action.  *See Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001); *Republic of Philippines v. Pimentel*, 553 U.S. 851, 872 (2008).   The interpleader remedy is not just limited to cases where there are actual competing claims. *Rubinbaum*, 154 F. Supp. 2d at 486.  The United States Supreme Court has held that claimants also include individuals with

potential claims because the text of section 1335 includes those who "may claim" the interpleaded money or property. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 532 (1967); 28 U.S.C. § 1335 ("Two or more adverse claimants, of diverse citizenship … claiming or may claim to be entitled to such money or property.")

Similarly, the language of Fed. R. Civ. P. 22(a) also provides that the grounds for interpleader are available to "persons with claims that *may* expose a plaintiff to double or multiple liability." (emphasis added); also *Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) ("Under Rule 22, interpleader is proper if the party requesting it 'is or may be exposed to double or multiple liability.'") Thus, the relevant test for purposes of both statutory and rule interpleader is not strictly whether the adverse claimants (in this case Ekman and U.S. Bank) have validly asserted their claims, but whether they have actual or potential claims that may expose the interpleader plaintiff to liability.  Clearly in this case, U.S. Bank's service of the Restraining Notice is an act that "may" expose Graphic Paper to multiple liabilities, regardless of whether it is later proven to have been defective.  Furthermore, U.S. Bank's refusal to release Graphic Paper from the Restraining Notice put Graphic Paper on notice that if it made payment to Ekman anyway, it was faced with the real likelihood of being sued by U.S. Bank.

### II. AN INTERPLEADER PLAINTIFF "IS NOT REQUIRED TO EVALUATE THE MERITS OF CONFLICTING CLAIMS AT ITS PERIL"

"Moreover, a party is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous [sic] litigation and multiple liability if it responds to the requests of certain claimants and not to others." *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992); *UBS Int'l Inc. v. Itete Brasil Instalacoes*

*Telefonicas Ltd.*, No. 09 Civ. 4286(LAK), 2009 WL 1619915, at *2 (S.D.N.Y. June 4, 2009). Rather, "what triggers interpleader is 'a real and reasonable fear of double liability *or* vexatious, conflicting claims...." (emphasis added); *Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993); also *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992) ("The availability of the interpleader remedy, however, is not dependent on the merits of the claims asserted against the stakeholder.")

In fact, in *A/S Krediit Pank,* the interpleader defendant asserted that interpleader action was not valid because "the alleged adverse claims to the funds are invalid on their face, or, in any event, so tenuous as to be patently unenforceable and therefore do not give rise to a right to interpleader." *A/S Krediit Pank v. Chase Manhattan Bank*, 155 F. Supp. 30, 33 (S.D.N.Y. 1957). However, in rejecting this argument the court held that "[**t**]**he mere threat of future litigation is a sufficient basis for interpleader.**" *A/S Krediit Pank v. Chase Manhattan Bank*, 155 F. Supp. 30, 34 (S.D.N.Y. 1957) (emphasis added); also *Bank of N.Y. v. First Millennium, Inc.*, No. 06 Civ. 13388(CSH), 2008 WL 953619, at *6 (S.D.N.Y. Apr. 8, 2008); *U.S. Trust Co. of N.Y. v. Alpert*, 10 F. Supp. 2d 290, 307 (S.D.N.Y. 1998).

In the instant case, there can be no doubt that Graphic Paper had a fear of multiple liability and future litigation. In fact, it attempted to negotiate with both U.S. Bank and Ekman for a release of the Restraining Notice by U.S. Bank or indemnification by Ekman. Both refused. As alleged in the Interpleader Complaint, "Upon receipt of the Affidavit, Graphic Paper contacted the Judgment Creditor, U.S. Bank, and attempted to obtain the Judgment Creditor's consent to the payment by Graphic Paper of the Ekman invoices. However, despite the Affidavit, U.S. Bank stated that '[d]espite Mr. Tidebrant's affidavit, at this point in the proceedings, we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors

(nor does he state so in his affidavit)…I suggest you consider the filing of an interpleader action…" (Interpleader Complaint ¶ 19)  Thus, it was U.S. Bank that suggested the filing of this interpleader action.

Furthermore, Graphic Paper had legitimate concerns about the source of the paper supplied by Ekman and whether Ekman was operating as a pass-through because "the transactions were negotiated between Graphic Paper and an entity known as Paper Max, Inc" (Interpleader Complaint ¶ 11) and "Paper Max is listed as the 'Notify Party/Intermediate Consignee'" on the bill of lading (Interpleader Complaint ¶ 12).  In light of the fact that Paper Max was listed on the Restraining Notice as an affiliate of the Judgment Debtors (Interpleader Complaint ¶ 15), and CPLR § 5222(b) provides that a restraining notice is effective if "he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in *which he or she knows or has reason to believe* the judgment debtor has an interest," (emphasis added), Graphic paper had a fear of double liability if it made payment to Ekman because it was not sure about the relationship between Ekman and Paper Max.  *See* Interpleader Complaint ¶ 20 ("Graphic Paper is concerned that either or both of Paper Max or Ekman may be an agent for one or more the Judgment Debtors…")

Accordingly, based on Graphic Paper's negotiations with U.S. Bank and Ekman, wherein U.S. Bank refused to release the subpoena and Ekman refused to indemnify Graphic Paper, and in light of the involvement of Paper Max, an entity defined on the Restraining Notice as an affiliate of the Judgment Debtor, Graphic Paper had a reasonable fear that it could be subjected to multiple litigation from both Ekman and U.S. Bank, and the instant motion to dismiss must be denied.

### III.  EKMAN PREMATURELY ATTEMPTS TO ARGUE THE MERITS OF U.S. BANK'S UNDERLYING CLAIM

In its motion to dismiss, Ekman asserts that the interpleader complaint must be dismissed because the Restraining Notice served by U.S. Bank was defective.[1] However, these arguments are premature because they go to the merits and sufficiency of U.S. Bank's claim, and not the right and ability of Graphic Paper to file an interpleader action and let the real parties at interest, the adverse claimants, fight it out. As stated earlier, "a party is not required to evaluate the merits of conflicting claims at its peril." *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992). Yet, this is exactly what Ekman is seeking, to make Graphic Paper evaluate the merits of the Restraining Notice before it is allowed to file an interpleader action. Clearly, this is not the standard.

Furthermore, Ekman attempts to confuse the real issue by alleging certain false statements by "Graphic's [general] counsel," namely that he "was willing to confirm that he had no knowledge or belief that any of the Judgment Debtors had even an interest in the Graphic Debt." (Ekman Br. at 2) Besides being clearly false (Graphic Paper's counsel did not make such statements), these allegations are not supported by affidavit, or in fact any evidence whatsoever and are thus, improperly raised in a Fed. R. Civ. P. 12(b)(6), or even in a summary judgment motion, which would require an affidavit. *See, generally* Fed. R. Civ. P. 56. (c)(1). Moreover, in light of the fact that U.S. Bank told Graphic Paper that "we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors," regardless of any allegations of a supposed belief by Graphic Paper's counsel (which are not true), Graphic Paper still faced the threat of future

---

[1] Tellingly, at no point in time does Ekman actually assert that is has absolutely no relationship with Paper Max or the Judgment Debtors, a fact that would clear up this matter and the ultimate issue of the rightful party owed the interpleader stake.

litigation.  *See A/S Krediit Pank v. Chase Manhattan Bank*, 155 F. Supp. 30, 34 (S.D.N.Y. 1957) ("[t]he mere threat of future litigation is a sufficient basis for interpleader.")  In fact, in *A/S Krediit Pank,* the Court rejected similar arguments made by the interpleader defendant, namely that the claiming instrument was defective on its face, and still permitted the interpleader to go forward because of the threat of future litigation.  Furthermore, in *Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993), the Court held that the issue was not just a "reasonable fear of double liability," but also of "vexatious, conflicting claims...."  Clearly, based on U.S. Bank's letter, Graphic Paper had a reasonable fear of vexatious, conflicting claims if it made payment to Ekman.

### IV.     EKMAN'S ANALYSIS CONCERNING THE RESTRAINING NOTICE IS FLAWED

Additionally, Ekman's analysis concerning the perfection of the Restraining Notice is flawed.  In particular, while CPLR § 5222 provides for three bases for a restraining notice to be effective, the only relevant basis *sub judice* is whether Graphic Paper was in possession or custody of property in which it "knew or had reason to believe" the judgment debtor or obligator had an interest in.  CPLR § 5222(b).  This is because Graphic Paper has never asserted that it "owes a debt to the judgment debtor" or that there was a "specified debt."  Thus, much of Ekman's analysis in its motion is irrelevant to the issue at hand, and many of its arguments are merely straw men.

The only relevant issue is what Graphic Paper "knew or had reason to believe" about the relationship between Ekman and Paper Max.  In this regard, the Interpleader Complaint is clear and has not been contradicted by Ekman through affidavit or otherwise.  "Graphic Paper is concerned that either or both of Paper Max or Ekman may be an agent for one or more of the

10

Judgment Debtors because Graphic Paper believes that the ultimate source of the product in issue is one or more of the Judgment Debtors." (Interpleader Complaint ¶ 20) At no point in time does Ekman actually deny (or even explain) Paper Max's involvement in the transaction, or deny that it has any relationship to any of the Judgment Debtor's. Instead, it attempts to attack the procedure of the restraining notice and not the substance, a tactic that will not only delay a resolution of this case on the merits, but an indication that it may be hiding something.[2]

Furthermore, Ekman places considerable emphasis on its belief that the money Graphic Paper owed to Ekman was a "debt" and not "property." However, while there is no question that the money owed is now currently past due, Ekman provides no evidence that it was in fact past due at the time the restraining notice was served. Thus, for purposes of this motion, the Court must only accept the allegations contained in the Interpleader Complaint as true in a light most favorable to the non-moving party, meaning without any evidence the Court must accept that the money was not yet due. Moreover, even if later proven to be a debt, Graphic Paper still had a "good faith" belief as to the enforceability of the Restraining Notice.

### V.  GRAPHIC PAPER HAS ALREADY DEPOSITED THE INTERPLEADER STAKE INTO THE COURT'S REGISTRY

In its Motion, Ekman asserts that the instant action must be dismissed because the Court lacks subject matter jurisdiction because Graphic Paper has failed to deposit the interpleader stake into the Court's registry. This simply is not the case and is false. As is documented by the Court's docket report, Graphic Paper wire transferred $1,905,885.33 into an interest bearing account with the Clerk of the Court on December 10, 2010. While some of the confusion by

---

[2] In fact, even if there was a defect in the Restraining Notice, nothing would seem to prevent U.S. Bank from simply amending the document; thus, putting the parties back in the same position and delaying a final determination on the merits.

11

Ekman might stem from the fact that the wire transfer was performed on the same day it filed its motion to dismiss, the fact remains that Graphic Paper had requested an Order of Court to deposit the money into an interest bearing account, and that Order had only been entered two days prior on December 8, 2010, after the Court and parties conducted a preliminary conference by telephone.  It was during this preliminary conference that Graphic Paper stated its intent to deposit the money with the Court once the Order was entered, which Graphic Paper did two days later.

Furthermore, and perhaps irrelevant now because the money has already been deposited, but Graphic Paper's Complaint asserts interpleader pursuant to Fed. R. Civ. P. 22 as well as 28 U.S.C.A. § 1335.  This is important because while statutory interpleader requires that the interpleader stake be deposited with the Court, Rule 22 interpleader contains no such requirement.  Thus, even if Graphic Paper had not deposited the money with the Court's registry, which it did, the Court would still maintain jurisdiction over Graphic's Rule 22 interpleader action.

## VI.    THE COURT SHOULD NOT DISMISS THE CPLR § 5239 CLAIM

CPLR § 5239 grants a court the authority to determine a party's right to property that has been encumbered by a restraining notice.  It has been pled by Graphic Paper as an alternative basis by which the Court could release Graphic Paper from the Restraining Notice.  *See generally*, *Weininger v. Castro*, 462 F. Supp. 2d 457, 494 (S.D.N.Y. 2006) (bringing an action pursuant to both Fed. R. Civ. P. 22 and CPLR § 5239).  Despite U.S. Bank's sarcasm about whether Graphic Paper "has taken on the duties of sheriff," CPLR § 5239 does not require the property to have been levied.  In fact, the provision merely provides that "*prior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment*, any interested

12

person may commence a special proceeding against the judgment creditor." CPLR § 5239.

(emphasis added)

## **CONCLUSION**

For all of the reasons set forth herein, it is respectfully submitted that this Court deny the motion to dismiss filed by Interpleader Defendant Ekman & Co. AB pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: Garden City, New York
      January 10, 2011

                                    ETTELMAN & HOCHHEISER, P.C.

                                    By:    s/ Gary Ettelman
                                          Gary Ettelman (GE-9315)
                                          Joshua S. Stern
                                  Attorneys for Interpleader Plaintiff
                                  100 Quentin Roosevelt Blvd., Suite 401
                                  Garden City, New York 11530
                                  (516) 227-6300

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 10, 2011, he caused a copy of the following Memorandum in Opposition to be electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send electronic notification of the filing to the following CM/ECF participants.  Parties may access this filing through the Court's system.

| | |
|---|---|
| **Anthony J. Costantini**<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036 | **Jessica Taran**<br> Wilk Auslander LLP<br>675 Third Avenue<br>New York, NY 10017 |

Dated:  Garden City, New York
         January 10, 2011

                    ETTELMAN & HOCHHEISER, P.C.


            By:     s/ Gary Ettelman            
                   Gary Ettelman (GE-9315)
            Attorneys for Interpleader Plaintiff
            100 Quentin Roosevelt Blvd., Suite 401
            Garden City, New York 11530
            (516) 227-6300