UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

EKMAN & CO AB.,                                    ECF Case

                              Plaintiff,           Case No. 10 CV 8110 (JGK)

        -against -

GRAPHIC PAPER, INC.,

                              Defendant.

---------------------------------------------------------------x

GRAPHIC PAPER, INC.,

                        Interpleader Plaintiff,

        -against -

EKMAN & CO AB. and
U.S. BANK NATIONAL ASSOCIATION,

                        Interpleader Defendants.

---------------------------------------------------------------x


**MEMORANDUM OF U.S. BANK NATIONAL ASSOCIATION IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT BY GRAPHIC PAPER, INC.**


Joseph Zelmanovitz, *Of Counsel*
Jessica Taran
WILK AUSLANDER LLP
1515 Broadway, 43rd Floor
New York, New York 10036
(212) 981-2300

*Attorneys for Interpleader Defendant*
*U.S. Bank National Association*

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................. 1

THE FACTS ............................................................................................................... 4

GRAPHIC COUNSEL'S ADMISSIONS AT HIS DEPOSITION ............................... 7

ARGUMENT ............................................................................................................. 8

POINT I: GRAPHIC'S MOTION FOR SUMMARY JUDGMENT FOR
INDEMNIFICATION FAILS AS A MATTER OF LAW .............................................. 8

    A.    A Legitimate Use and Enforcement of a Restraining Notice Does Not Give
          Rise to a Claim for Tortious Interference ........................................................ 9

    B.    U.S. Bank Had Economic Justification for Acting as It Did ......................... 10

    C.    Any Breach of Contract by Graphic Was Incidental to U.S. Bank's Lawful
          Service of the Restraining Notice .................................................................. 11

    D.    U.S. Bank Did Not Proximately Cause Graphic to Breach its Contract with
          Ekman ......................................................................................................... 11

    E.    There is No Right to Common Law Indemnification under the Circumstances
          Here ........................................................................................................... 13

POINT II: THERE ARE MATERIAL FACTS IN DISPUTE THAT PRECLUDE
SUMMARY JUDGMENT IN FAVOR OF GRAPHIC ................................................ 16

    A.    The Parties Dispute whether the Restraining Notice is "Overbroad" ............ 16

    B.    Graphic Mischaracterizes the Statements of Counsel for U.S. Bank ............ 18

CONCLUSION ........................................................................................................ 19

Table of Authorities

Page

**Cases**

*Adams v. Banc of America Securities, LLC*
  7 Misc. 3d 1023A, 801 N.Y.S.2d 229 (Sup. Ct., N.Y. Co., 2005) .......................................... 12

*AIG v. Choice Logistics*
  2009 NY Slip Op. 31967U (Sup. Ct., N.Y. Co., Aug. 17, 2009) ........................................... 14

*Amusement Industry, Inc. v. Stern*
  786 F. Supp. 2d 789 (S.D.N.Y. 2011) (same), *adopted by 2011* U.S. Dist. LEXIS 25201
  (S.D.N.Y. March 11, 2011) ......................................................................................... 15

*Broyhill Furniture Indus., Inc. v. Hudson Furniture Galleries, LLC*
  2008 NY Slip Op 30636U (Sup. Ct., N.Y. Co., Feb. 28, 2008) ............................................. 13

*Burrowes v. Combs*
  25 A.D.3d 370, 808 N.Y.S.2d 50 (1st Dep't 2006) .................................................................. 12

*Caplan v. Tofel*
  65 A.D.3d 1180, 886 N.Y.S.2d 182 (2d Dep't 2009) .............................................................. 9

*Caribbean Construction Services & Associates, Inc. v. Zurich Ins. Co.*
  267 A.D.2d 81, 700 N.Y.S.2d 129 (1st Dep't 1999) ................................................................ 9

*Celotex Corp. v. Catrett*
  477 U.S. 317, 106 S. Ct. 2548 (1986)...................................................................................... 8

*E.F. Hutton Int'l Assocs. v. Shearson Lehman Bros. Holdings, Inc.*
  281 A.D.2d 362, 723 N.Y.S.2d 161 (1st Dep't 2001)............................................................. 10

*Fagan v. AmerisourceBergen Corp.*
  356 F. Supp. 2d 198 (E.D.N.Y. 2004) .................................................................................... 15

*Finley v. Giacobe*
  79 F.3d 1285 (2d Cir. 1996) ................................................................................................... 9

*Gallo v. Prudential Residential Servs., Ltd. P'ship*
  22 F.3d 1219 (2d Cir. 1994) ................................................................................................... 8

*George v. Marshalls of MA, Inc.*
  61 A.D.3d 925, 878 N.Y.S.2d 143 (2d Dep't 2009)................................................................ 14

*Harris v. Town of Fort Ann*
  35 A.D.3d 928, 825 N.Y.S.2d 804 (3d Dep't 2006)................................................................ 11

*Highland Holding; Dora Homes, Inc. v. Epperson*
  344 F. Supp. 2d 875 (E.D.N.Y. 2004) .................................................................................... 14

*Highland Holdings v. Century/ML Cable Venture*
  2007 U.S. Dist. LEXIS 62178 (S.D.N.Y. Aug. 24, 2007)....................................................... 13

*Imtrac Indus. v. Glassexport Co.*
  1996 U.S. Dist. LEXIS 1022 (S.D.N.Y. Feb. 1, 1996)............................................................ 10

ii

Table of Authorities

Page

*Krys v. Sugrue*
  2011 U.S. Dist. LEXIS 142291 (S.D.N.Y. Oct. 21, 2010) ...................................... 11

*Lana & Samer, Inc. v. Goldfine*
  7 A.D.3d 300, 776 N.Y.S.2d 66 (1st Dep't 2005) ................................................. 11

*Mas v. Two Bridges Assoc.*
  75 N.Y.2d 680 (1990) ........................................................................................... 13

*Masefield AG v. Colonial Oil Indus.*
  2006 U.S. Dist. LEXIS 5792 (S.D.N.Y. Feb. 14, 2006)......................................... 10

*McDermott v. City of New York*
  50 N.Y.2d 211 (1980) ........................................................................................... 14

*Mitchell v. Kurtz*
  10 Misc. 3d 1063A, 814 N.Y.S.2d 913 (Sup. Ct., N.Y. Co., 2005) .......................... 9

*Mohamed v. Metropolitan Life Ins. Co.*
  2012 WL 315868 (S.D.N.Y. Feb. 2, 2012)............................................................... 8

*Monaghan v. SZS 33 Assocs., L.P.*
  73 F.3d 1276 (2d Cir. 1996) ................................................................................... 15

*Montano v. City of Watervliet*
  47 A.D.3d 1106, 850 N.Y.S.2d 273 (3d Dep't 2008).............................................. 11

*Mountbatten Surety Co., Inc. v. Oriska Ins. Co.*
  2008 NY Slip Op. 32627U (Sup. Ct., N.Y. Co., Sept. 30, 2008) ........................... 14

*Perkins Eastman Architects, P. C. v. Thor Engineers, P.A.*
  769 F. Supp. 2d 322 (S.D.N.Y. 2011) ................................................................... 14

*Raquet v. Braun*
  90 N.Y. 2d 177 (1997) ........................................................................................... 13

*Schukman Realty v. Marine Midland Bank, N.A.*
  244 A.D.2d 400, 664 N.Y.S.2d 73 (2d Dep't 1997)............................................... 12

*Ultramar Energy v Chase Manhattan Bank*
  179 A.D.2d 592, 579 N.Y.S.2d 353 (1st Dep't 1992) ............................................ 11

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*
  8 N.Y.3d 422 (2007) .............................................................................................. 10

*Wilmington Trust Co. v. Burger King Corp.*
  34 A.D.3d 401, 826 N.Y.S.2d 205 (1st Dep't 2006) .............................................. 10

**Rules**
C.P.L.R. § 5222...........................................................................................*passim*

Fed. R. Civ. P. 56(a) ................................................................................................ 8

iii

This memorandum of law is respectfully submitted on behalf of interpleader defendant U.S. Bank National Association ("U.S. Bank") in opposition to the motion by defendant/interpleader plaintiff Graphic Paper, Inc. ("Graphic") seeking summary judgment on its cross-claim against U.S. Bank for indemnification (the "Cross-claim").[1]

## PRELIMINARY STATEMENT

On February 14, 2012, the parties participated in a telephone conference with the Court, to discuss the settlement between U.S. Bank and plaintiff/interpleader defendant Ekman & Co. AB ("Ekman").  Per the settlement agreement, the settlement is contingent upon the Court's entry of the consent order, a revised draft of which is being submitted to the Court in accordance with its directive during the February 14 conference.  The entry of the consent order and the settlement between U.S. Bank and Ekman does not implicate Graphic's motion for summary judgment, which U.S. Bank opposes below.

The recitation of the facts, the evidence, and some of the arguments set forth below also appears, in substantially the same form, in U.S. Bank's motion for summary judgment [Docket No. 76] filed to dismiss (i) the cross-claim asserted by Ekman -- now rendered moot by the settlement between U.S. Bank and Ekman  and (ii) Graphic's Cross-claim -- which unfortunately survives.  This repetition is necessary given that the facts, evidence, and law that support the granting of U.S. Bank's motion for summary judgment against Graphic also support the denial of Graphic's motion for summary judgment.

The Cross-claim is premised on Graphic's argument, unsupported by any law, that U.S. Bank, by enforcing its creditor rights through service and enforcement of a valid restraining

---

[1] U.S. Bank does not respond to that part of Graphic's motion that seeks summary judgment on its request for attorneys' fees, because (i) Graphic's "Amended Answer, Interpleader Complaint, and Cross-Claim," dated August 2, 2011 [Docket No. 49] does not contain a request of its attorneys fees from U.S. Bank and (ii) in Graphic's motion, Graphic requests that its reasonable attorneys' fees be deducted from the "Interpleader Stake."

notice, somehow tortiously interfered with Graphic's contract with Ekman and, thus, should be liable to Graphic for any damages assessed against it in favor of Ekman.  Graphic is careful not to assert that U.S. Bank ever threatened it with litigation.  Nor can it do so in good faith, given that its own counsel testified at his deposition that no representative of, or counsel for, U.S. Bank ever threatened Graphic with a lawsuit.[2]  All that Graphic can muster is the novel argument that U.S. Bank's service of a restraining notice on Graphic, pursuant to C.P.L.R. § 5222 (the "Restraining Notice"), and enforcement of its creditor rights (including its claim to the funds at issue (the "Interpleader Stake")), constitute "unjustified procurement of a breach of contract." ("Defendant/Interpleader Plaintiff Graphic Paper's Memorandum of Law in Support of its Motion for Summary Judgment," dated January 18, 2012 (the "Moving Brief") [Docket No. 77], at p. 21).[3]

As we show, in Point I, below, Graphic's motion fails as a matter of law for several reasons.  First, legitimate use and enforcement of a valid restraining notice, as here, does not give rise to a claim for tortious interference with contract.  Second, as a judgment creditor, U.S. Bank had economic justification for acting as it did.  Third, any breach of contract by Graphic was incidental to U.S. Bank's lawful service of the Restraining Notice.  Fourth, any claim for tortious

---

[2] A copy of the transcript of the deposition of Joel Morgenthau, Esq., counsel to Graphic, is attached as Exhibit M to the moving declaration of Joseph Zelmanovitz, dated January 18, 2012, submitted in support of U.S. Bank's motion for summary judgment to dismiss the cross-claims against it by Ekman and Graphic (the "Zelmanovitz Decl.") [Docket No. 74].

[3] Graphic's argument that "because U.S. Bank is unable to offer any evidence to support its claim for the Interpleader Stake … its interference with Graphic and Ekman's relationship … was, by definition, improper and tortious… " (Moving Brief, at p. 3-4) is entirely circular.  Moreover, it is refuted by Graphic's repeated admissions that, upon receipt of the Restraining Notice, Graphic became concerned that the funds it owed to Ekman were subject to the Restraining Notice. (*See* Defendant/Interpleader Plaintiff Graphic Paper's Statement Pursuant to Local Rule 56.1, dated January 19, 2012, No. 13.)  Thus, Graphic's own admission of its "concerns" is evidence that supports U.S. Bank's claim to the Interpleader Stake.  Furthermore, Graphic conspicuously fails to provide any legal authority for its meritless argument that a restraining notice is "improper and tortious" where the party serving it cannot prove -- at the time of service -- that the party to be restrained is in possession of assets belonging to or a debt owed to the judgment debtor.

interference suffers from the absence of proximate cause:  given that Graphic had its own "concerns" regarding Ekman's right to the Interpleader Stake, Graphic cannot prove that U.S. Bank's conduct was the sole reason for Graphic's breach of the contract with Ekman.  Fifth, there is no right to common law indemnification under the circumstances here.

As we show in Point II, below, Graphic's motion for summary judgment also fails because, at best, there are material facts in dispute relating to U.S. Bank's enforcement of the Restraining Notice, which Graphic incorrectly and conclusorily describes as "overbroad" (Moving Brief, at p. 21).  Moreover, as set forth below, Graphic mischaracterizes the statements made by U.S. Bank's counsel before the Court as an admission of Graphic's tortious interference.

Indeed, the facts of this case refute any argument that U.S. Bank's conduct was other than appropriate for a creditor seeking to enforce a judgment in excess of $851 million.  In its efforts to enforce that judgment -- which, with interest, now exceeds $1.2 billion -- U.S. Bank served the Restraining Notice on Graphic, because it had reason to believe that Graphic was engaging in commercial transactions with the judgment debtors, as a result of which it owed a debt to the judgment debtors (or was in the possession or custody of property in which it had reason to believe the judgment debtors had an interest).  U.S. Bank's reasonable belief that Graphic was in possession of funds owed to the judgment debtors was subsequently confirmed by *Graphic itself*: It was Graphic that contacted U.S. Bank (as well as Ekman) about its concern that the debt it owed to Ekman might be subject to the Restraining Notice.  Given Graphic's representations to U.S. Bank of its concerns, U.S. Bank acted reasonably in seeking to enforce the Restraining Notice.

Graphic's motion -- indeed, its claim for indemnification -- is entirely without merit and is a transparent effort to cast blame for its own conduct on U.S. Bank -- which acted wholly within its rights.

## THE FACTS

On or about March 10, 2005, a judgment in an amount in excess of $851 million (the "Judgment") was entered, collectively, against APP International Finance Company B.V.; P.T. Lonter Papyrus Pulp & Paper Industry; Asia Pulp & Paper Company Ltd.; Indah Kiat International Finance Company B.V.; and P.T. Indah Kiat Pulp & Paper Corporation (the "Judgment Debtors"). (*See* Zelmanovitz Decl., Exhibit A.)[4]

On or about August 5, 2010, U.S. Bank served on Graphic a "Subpoena *Duces Tecum* and *Ad Testficandum* with a Restraining Notice." The Restraining Notice forbids Graphic to "make or suffer any sale, assignment or transfer of, or interfere with any property of the Judgment Debtors or pay over or otherwise dispose of any debt owed to Judgment Debtors." (*See* Zelmanovitz Decl., Exhibit B.)

By complaint filed in this action on October 25, 2010, Ekman brought suit against Graphic alleging that it had sold paper to Graphic, that Graphic owes Ekman $1,905,885.33, that Graphic was withholding payment because, as allegedly stated by Graphic's counsel, "he was concerned because an Indonesian paper mill, which was an affiliate of one of the Judgment Debtors, was the original manufacturer of the paper sold by Ekman to Graphic," and he was also concerned that Paper Max, Inc. ("Paper Max"), another affiliate of the Judgment Debtors, "was

---

[4] All references to "Zelmanovitz Decl." are to the moving declaration of Joseph Zelmanovitz, dated January 18, 2012, submitted in support of U.S. Bank's motion for summary judgment to dismiss the cross-claims against it by Ekman and Graphic [Docket No. 74], which is incorporated herein by reference.

involved in the discussions that led to the placement of orders by Graphic with Ekman." (*See* Zelmanovitz Decl., Exhibit C, Complaint, ¶¶ 9, 11.)

Graphic filed its original answer to Ekman's complaint and an interpleader complaint on or about November 18, 2010.  (*See* Zelmanovitz Decl., Exhibit D.)

The interpleader complaint includes the following allegations:

> 16.  After receiving the Restraining Notice Graphic Paper duly notified Ekman of its concern that payments due to Ekman might be subject to the Restraining Notice.
>
> * * * *
>
> 19.  Upon receipt of the Affidavit, Graphic Paper contacted the Judgment Creditor, U.S. Bank, and attempted to obtain the Judgment Creditor's consent to the payment by Graphic Paper of the Ekman invoices.  However, despite the Affidavit, U.S. Bank stated that "[d]espite Mr. Tidebrant's affidavit, at this point in the proceedings, we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors (nor does he state so in his affidavit)…I suggest that you consider the filing on an interpleader action…"
>
> 20. Graphic Paper is concerned that either or both of Paper Max or Ekman may be an agent for one of more of the Judgment Debtors because Graphic Paper believes that the ultimate source of the product in issue is one or more of the Judgment Debtors. …

(*See* Zelmanovitz Decl., Exhibit D, Interpleader Complaint, ¶¶ 16, 19, 20.)

Thus, Graphic itself is the party that raised "concerns" that Ekman was an agent acting on behalf of Judgment Debtors.

On or about December 7, 2010, Graphic filed an amended answer and interpleader complaint.  (*See* Zelmanovitz Decl., Exhibit E.)   This amended answer repeats the substantive allegations of the original answer and interpleader complaint, including ¶¶ 16, 19-20 quoted above.

On or about January 10, 2011, U.S. Bank answered the interpleader complaint and asserted a counterclaim against Graphic and a cross-claim against Ekman, seeking declaratory judgment that it is entitled to the funds being withheld by Graphic.  (*See* Zelmanovitz Decl., Exhibit F.)

Graphic answered U.S. Bank's counterclaim on February 4, 2011.  (*See* Zelmanovitz Decl., Exhibit G.)

By Amended Answer, Interpleader Complaint, and Cross-Claim, filed August 2, 2011, Graphic repeated the allegations it made previously in its interpleader complaint, that it had notified Ekman of its "concern that payments due to Ekman might be subject to the Restraining Notice," and that "either or both of Paper Max or Ekman may be an agent for one of more of the Judgment Debtors. …" (*See* Zelmanovitz Decl., Exhibit K, Interpleader Complaint, ¶¶ 16, 20.) Graphic asserted a cross-claim against U.S. Bank for indemnification in the event the Restraining Notice is determined to be improper:

> 17.   Graphic Paper denies that it is liable to Ekman for the Inventory Claims and the Interest Claims because the Restraining Notice served by U.S. Bank prohibited Graphic Paper from making payment to Ekman.

> 18.   If liability against Graphic Paper for the Inventory Claims and Interest Claims exist, which Graphic Paper denies, it would exist solely, and would be proximately caused, by reason of U.S. Bank serving an improper or invalid Restraining Notice in violation of C.P.L.R. § 5222.

> 19.   Moreover, if the Restraining Notice served by U.S. Bank is adjudicated to have been improper or invalid, this would constitute tortuous [sic] interference of contract by U.S. Bank against Graphic Paper for improperly interfering with Graphic Paper's relationship with Ekman.

(*See* Zelmanovitz Decl., Exhibit K, Cross-claim.)

U.S. Bank answered Graphic's interpleader complaint and cross-claim on August 3, 2011. (*See* Zelmanovitz Decl., Exhibit L.)

## GRAPHIC COUNSEL'S ADMISSIONS AT HIS DEPOSITION

At his deposition taken on October 5, 2011, Joel L. Morgenthau, Esq., Graphic's counsel, authenticated an email that he had sent to U.S. Bank's counsel, Jessica Taran, on August 24, 2010. The email recites that during his telephone conversations with Ms. Taran on August 20 and 23, 2010, she advised him that the Restraining Notice is applicable only to property or debts owed to the Judgment Debtors and is not applicable to any such property of or debts owed to affiliates of the Judgment Debtors. (*See* Zelmanovitz Decl., Exhibit N.)

At his deposition, Morgenthau disproved any claim that U.S. Bank had threatened Graphic with a lawsuit:

> Q.   Did any representative of U.S. Bank, including Ms. Taran who's the attorney for U.S. Bank, ever tell you that U.S. Bank would sue Graphic Paper?
>
> ******
>
> A.   No.
>
> ******
>
> Q.   Did any representative of U.S. Bank ever tell you that it was U.S. Bank's position that Ekman was an affiliate of Judgment debtor?
>
> ******
>
> A.   I don't recall that Ms. Taran ever mentioned Ekman as an affiliate. I believe that she did indicate that U.S. Bank was looking into the relationship of Ekman to the judgment debtors, and I believe she mentioned it in an email to me.

(*See* Zelmanovitz Decl., Exhibit M, 130-32).

## ARGUMENT

A court should not grant summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). As the moving party, Graphic has the initial burden of "informing the district court of the basis for its motion" and specifying what "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mohamed v. Metropolitan Life Ins*. Co., 2012 WL 315868 (S.D.N.Y. Feb. 2, 2012) (internal citations omitted). "The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, granting summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Id.*, at *7 (internal citations omitted).

As we show below, Graphic's claim for indemnification fails as a matter of law. In addition, based on the facts adduced in discovery and the governing law, a reasonable trier of fact could -- and should -- find in favor of U.S. Bank. Thus, Graphic's motion for summary judgment should be denied.

## POINT I

## GRAPHIC'S MOTION FOR SUMMARY JUDGMENT FOR INDEMNIFICATION FAILS AS A MATTER OF LAW

The predicate for Graphic's claim for indemnification is its contention that U.S. Bank tortiously interfered with Graphic's contract with Ekman. However, Graphic cannot satisfy all of the elements of a claim for tortious interference with contractual relations, which are: (i) the

existence of a valid contract; (ii) the defendant's knowledge of that contract; (iii) the defendant's intentional procurement of the third party's breach of that contract *without justification*; and (iv) damages. *Finley v. Giacobe*, 79 F.3d 1285, 1294 (2d Cir. 1996). Specifically, Graphic cannot satisfy the third and fourth elements of this claim. Therefore, Graphic's motion should be denied and the Cross-claim should be dismissed.

### A.   A Legitimate Use and Enforcement of a Restraining Notice Does Not Give Rise to a Claim for Tortious Interference

It is well-established that the legitimate use of a restraining notice under C.P.L.R. § 5222 cannot give rise to a claim for tortious interference with contract under New York law. *Caplan v. Tofel*, 65 A.D.3d 1180, 886 N.Y.S.2d 182 (2d Dep't 2009) (dismissing claim for tortious interference with contract based on service of restraining notice because "[t]he defendants' 'legitimate us of a collection tool did not constitute a tort'"), *quoting Caribbean Construction Services & Associates, Inc. v. Zurich Ins. Co.*, 267 A.D.2d 81, 700 N.Y.S.2d 129 (1st Dep't 1999) (denying leave to amend complaint to add a variety of torts based on use of a restraining notice because use of collection tool is not a tort); *Mitchell v. Kurtz*, 10 Misc. 3d 1063A, 814 N.Y.S.2d 913 (Sup. Ct., N.Y. Co., 2005) (sanctioning attorney and dismissing claim for abuse of process and denying motion to amend to add claim for defamation based on defendant's used of a restraining notice because legitimate service of restraining notice is not tortious); 72 N.Y. Jur. 2d. *Interference* § 50 ("use of restraining notices and other legitimate collection tools does not constitute the tort of intentional interference with business relations").

It is noteworthy that in *Mitchell*, the court found that the use of the restraining notice was not tortious even when the restraining notice did not comply with the service requirements of the C.P.L.R. In our case, the Restraining Notice complies with each and every element of C.P.L.R. § 5222: (i) it names all of the parties to the action; (ii) it identifies the judgment creditor and the

judgment debtors; (iii) it provides the amount of the judgment; (iv) it provides the unsatisfied amount; (v) it recites subdivision (b) of C.P.L.R. § 5222; (vi) it advises that disobedience will constitute contempt of court; and (vii) it was personally served in accordance with C.P.L.R. § 5222(a).[5]

### B.   U.S. Bank Had Economic Justification for Acting as It Did

U.S. Bank's service of the restraining notice is not actionable as tortious interference with contract, because U.S. Bank was economically justified in serving it.  *Imtrac Indus. v. Glassexport Co.,* 1996 U.S. Dist. LEXIS 1022 (S.D.N.Y. Feb. 1, 1996) (granting summary judgment dismissing claim for tortious interference because "one with a financial interest in the business that is subject to the contract is privileged to interfere with the contract in order to protect that self-interest"); *White Plains Coat & Apron Co., Inc. v. Cintas Corp.,* 8 N.Y.3d 422, 426 (2007) (in response to a claim for tortious interference "a defendant may raise the economic interest defense--that it acted to protect its own legal or financial stake in the breaching party's business.").[6]

---

[5] Ekman had moved the Court on December 10, 2010, to dismiss the interpleader complaint for lack of jurisdiction. [Docket No. 5].  Argument on the motion was heard by the Court on April 13, 2011, at which time the Court denied the motion except as to Count III of the interpleader complaint.  (*See* Order entered April 14, 2011 [Docket No. 28].) At oral argument on April 13, 2011, the Court rejected Ekman's argument that the Restraining Notice was invalid because it did not specify the debt U.S. Bank sought to restrain.  (A copy of the transcript of the oral argument held on April 13, 2011, is attached to the accompanying declaration of Jessica Taran, dated February 15, 2012 (the "Taran Decl."), as Exhibit A; see p. 5.)  *See also Digitrex v. Johnson,* 491 F. Supp. 66, 69 (S.D.NY. 1980) (expressly holding that although a restraining notice may specifically identify the property to be attached, NY C.P.L.R § 5222(b) does not require such specificity.

[6] The only limit to the "economic justification" defense is that the defendant cannot employ illegal or malicious means to interfere with the third party's contract. *Masefield AG v. Colonial Oil Indus.*, 2006 U.S. Dist. LEXIS 5792 (S.D.N.Y. Feb. 14, 2006) (dismissing claim for tortious interference because defendant was economically justified and plaintiff did not allege any facts constituting malice or illegal activity); *E.F. Hutton Int'l Assocs. v. Shearson Lehman Bros. Holdings, Inc.,* 281 A.D.2d 362, 723 N.Y.S.2d 161 (1st Dep't 2001) (granting summary judgment dismissing tortious interference claim because evidence showed that defendant was justified in interfering with the contract and there was no evidence that it acted maliciously or illegally).  There is no allegation here that U.S. Bank acted illegally or maliciously.

The courts have consistently held that a creditor's actions in seeking to collect a debt or secure its collateral are "justified" and, therefore, cannot form the basis of a claim for tortious interference with contract. *Wilmington Trust Co. v. Burger King Corp.,* 34 A.D.3d 401, 826 N.Y.S.2d 205 (1st Dep't 2006) (granting summary judgment because as a creditor, defendant had an economic justification for interfering with plaintiff's contract); *Ultramar Energy* v *Chase Manhattan Bank,* 179 A.D.2d 592, 592-93, 579 N.Y.S.2d 353 (1st Dep't 1992) (same).

### C.     Any Breach of Contract by Graphic Was Incidental to U.S. Bank's Lawful Service of the Restraining Notice

Even assuming, *arguendo,* that use of the Restraining Notice was somehow "tortious," it cannot serve as the basis of a claim for tortious interference with contract because any breach of contract between third parties was incidental to U.S. Bank's lawful service of the Restraining Notice. *See, e.g., Krys v. Sugrue,* 2011 U.S. Dist. LEXIS 142291 (S.D.N.Y. Oct. 21, 2010) (dismissing tortious interference claim because "[a]t best any breach of the terms of the IMA was a collateral effect of Chase's alleged actions. That is insufficient to show intentional inducement of the breach of contract"), *adopted by* 2011 U.S. Dist. LEXIS 141232 (S.D.N.Y. Dec. 7, 2010); *Montano v. City of Watervliet,* 47 A.D.3d 1106, 850 N.Y.S.2d 273 (3d Dep't 2008) (granting summary judgment because there was no evidence that defendant's tortious interference was not incidental to its official duties); *Harris v. Town of Fort Ann,* 35 A.D.3d 928, 825 N.Y.S.2d 804 (3d Dep't 2006) (claim for tortious interference is "not satisfied by conduct that is 'merely negligent or incidental to some other, lawful, purpose'").

### D.     U.S. Bank Did Not Proximately Cause Graphic to Breach its Contract with Ekman

Graphic's Cross-claim also fails because Graphic cannot show that U.S. Bank proximately caused Graphic to breach its contract with Ekman.  As part of the intentional element of a cause of action for tortious interference, the plaintiff must allege that "but for" the

intentional interference, the third party would not have breached the contract.  *Lana & Samer, Inc. v. Goldfine,* 7 A.D.3d 300, 776 N.Y.S.2d 66 (1st Dep't 2005) ("[i]n order to prevail on a claim for tortious interference with a contract, it must be proven, among other things, that the contract would not have been breached but for the defendant's conduct").  Failure to allege "but for" causation is grounds for dismissal.  *Burrowes v. Combs,* 25 A.D.3d 370, 808 N.Y.S.2d 50 (1st Dep't 2006) (dismissing complaint because "plaintiff has failed to allege that but for defendants' actions Ms. Blige would have continued her contract with plaintiff"); *Schukman Realty v. Marine Midland Bank, N.A.,* 244 A.D.2d 400, 664 N.Y.S.2d 73 (2d Dep't 1997) (dismissing claim for tortious interference because plaintiff did not allege "that the 'contract would not have been breached "but for" the defendant's conduct'"); *Adams v. Banc of America Securities, LLC,* 7 Misc. 3d 1023A, 801 N.Y.S.2d 229 (Sup. Ct., N.Y. Co., 2005) ("the element of intentional procurement of the third party's breach requires a showing that, but for defendants' acts, the agreement would not have been breached... [p]laintiffs fail to allege that, but for the attorney's acts, the agreement would not have been breached") (citation omitted).

Here, Graphic allegedly breached its contract with Ekman -- not because of any threat of litigation, but rather -- because of Graphic's own "concerns" that "the payments due to Ekman might be subject to the Restraining Notice" (Interpleader Complaint, ¶ 16), and that Ekman "may be an agent for one or more of the Judgment Debtors because Graphic Paper believes that the ultimate source of the product in issue is one or more of the Judgment Debtors" (Interpleader Complaint, ¶ 20).  Even in its Moving Brief, Graphic admits that it became concerned that the debt to Ekman may be subject to the Restraining Notice, (i) because Paper Max was heavily involved in the transaction with Ekman, (ii) because "Paper Max had a known connection with one of the Judgment Debtors" and (iii) "due to the circuitous nature of the transaction."  (Moving

Brief, at p. 6).  Given these statements, Graphic cannot, in good faith, contend that U.S. Bank caused it to breach its contract with Ekman.

The absence of proximate causation is fatal to Graphic's Cross-claim.[7]

### E.    There Is No Right to Common Law Indemnification under the Circumstances Here

Finally, Graphic cannot maintain a claim for indemnification as a matter of law because there is no right to common law indemnification under the circumstances here.  "In New York, '[a] cause of action for common-law indemnification can be sustained only if: (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them.'" *Highland Holdings v. Century/ML Cable Venture,* 2007 U.S. Dist. LEXIS 62178 (S.D.N.Y. Aug. 24, 2007) (dismissing implied indemnification claim because" Highland fails to allege that Debtor owed it any independent duty separate and apart from Debtor's contractual obligations under the Recap Agreement. Therefore, Highland has not sufficiently alleged a claim for common-law indemnification."); *Broyhill Furniture Indus., Inc. v. Hudson Furniture Galleries, LLC,* 2008 NY Slip Op 30636U (Sup. Ct., N.Y. Co., Feb. 28, 2008) (stating that the "classic case" of implied indemnification is when a party is vicariously liable for another's tortious acts) (citing cases).

Here, Graphic cannot establish either of these two elements: there is absolutely no duty between U.S. Bank and Graphic or Ekman, and, therefore, there can be no claim for implied indemnification.  All of the cases cited by Graphic in support of its argument that it is entitled to

---

[7] This deficiency also impacts the fourth element of a claim for tortious interference with contract: damages. Graphic cannot show that any damages it allegedly sustained were proximately caused by the conduct of U.S. Bank.

indemnification from U.S. Bank are entirely inapposite, because -- unlike here -- in each of those cases, the indemnitor owed a duty to the indemnitee.[8]

Nor does U.S. Bank have a separate duty running directly to Ekman that can form the basis for a claim for indemnification. *Perkins Eastman Architects, P. C. v. Thor Engineers, P.A.,* 769 F. Supp. 2d 322 (S.D.N.Y. 2011) (dismissing claim for implied indemnification because there was no allegation that the third-party defendant had a duty to the plaintiff); *Highland Holding; Dora Homes, Inc. v. Epperson,* 344 F. Supp. 2d 875 (E.D.N.Y. 2004) (granting summary judgment dismissing claim for common law indemnification because third-party defendant did not owe any duty to the plaintiff).

A claim for implied indemnification must be based on the fact that the indemnitee's liability to the initial plaintiff is solely a result of its vicarious liability for the indemnitor's actions. *See, e.g., AIG v. Choice Logistics,* 2009 NY Slip Op. 31967U (Sup. Ct., N.Y. Co., Aug.

---

[8] In *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680 (1990), plaintiff, who sustained injuries when she attempted to escape an elevator stuck between floors in her apartment building, commenced an action against the owner and managing agent of the apartment building, as well as the elevator company contracted by the owner to maintain the elevator. The Court of Appeals affirmed the trial court's finding that the owner was entitled to indemnification from the elevator company and held, among other things, that "the trial court correct ruled that [the elevator company] had undertaken the duty to remove the elevator from service if it had a notice of the problem" and therefore owner's notice of the unsafe condition was irrelevant for purposes of indemnification. *Id.*, at 688. In *Raquet v. Braun*, 90 N.Y. 2d 177 (1997), representatives of a firefighter who was killed and another who was injured by a building's collapse during a fire sued the owner of the building, the tenant, and the contractor who designed and built the addition of the building that collapsed. In reversing the order that, among other things, denied the owner's motion to amend his answer to include cross-claims for indemnification against the contractor, the Court of Appeals expressly held that the "key element of a common-law cause of action for indemnification … is a separate duty owed the indemnitee by the indemnitor." *Id.* at p. 183 (internal quotations omitted). In *George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 878 N.Y.S.2d 143 (2d Dep't 2009), the plaintiff, who slipped and fell on a wet floor as she was entering a store, commenced an action to recover damages for personal injury against the store and the store's cleaning contractor and subcontractor. The Appellate Division held, among other things, that the store was not entitled to summary judgment on its cross-claims for indemnification against its contractor and subcontractor and noted that to succeed on its cross-claims for indemnification, the store would have to show that the contractor and subcontractor were "responsible for the negligence that contributed to the accident." *Id.*, at 930 (internal citation omitted). In *McDermott v. City of New York*, 50 N.Y.2d 211 (1980), the plaintiff, an employee of the City of New York sued the City after his arm was severed by a sanitation truck. The city brought a third party action, seeking indemnification, against the manufacturer of the body and the hopper of the truck on the grounds of products liability. The Court of Appeals reversed the dismissal of the third party action, which was granted by the trial court on the basis of the expiration of the statute of limitations.

17, 2009) (dismissing implied indemnification claim because the proposed indemnitee's losses did not arise solely from any vicarious liability for the indemnitor's wrongful acts); *Mountbatten Surety Co., Inc. v. Oriska Ins. Co.,* 2008 NY Slip Op. 32627U (Sup. Ct., N.Y. Co., Sept. 30, 2008 (same). In other words, Graphic can seek indemnification from U.S. Bank *only* if its liability to Ekman arises *solely* because Graphic is vicariously liable for U.S. Bank's acts. That is not the case here.

Moreover, "common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff." *Monaghan v. SZS 33 Assocs., L.P.,* 73 F.3d 1276 (2d Cir. 1996); *Amusement Industry, Inc. v. Stern,* 786 F. Supp. 2d 789 (S.D.N.Y. 2011) (same), *adopted by 2011* U.S. Dist. LEXIS 25201 (S.D.N.Y. March 11, 2011); *KBL Corp. v Arnouts,* 646 F. Supp. 2d 335 (S.D.N.Y. 2009) (Koeltl, D.J.) (dismissing claim for implied indemnification in copyright infringement claim because proposed indemnitee was also at fault); *Fagan v. AmerisourceBergen Corp.,* 356 F. Supp. 2d 198 (E.D.N.Y. 2004) ("the common law right to indemnification arises only where a party's liability is based upon the wrongdoing of the party from whom indemnification is sought....However, where a party has "itself participated to some degree in the wrongdoing [it] cannot receive the benefit of the [common law indemnity] doctrine").

Here, if Graphic is found liable to Ekman, there can be no question that Graphic is at fault (at least in part) for the breach of its duty to Ekman.  Graphic refused to pay Ekman because of its own "concerns" that Ekman was acting as agent for the Judgment Debtors or that the payments may be subject to the Restraining Notice.  Therefore, regardless of the existence of any duty between U.S. Bank and Ekman or Graphic (which, as set forth above, does not exist), Graphic cannot obtain indemnification from U.S. Bank.

## POINT II

## THERE ARE MATERIAL FACTS IN DISPUTE THAT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF GRAPHIC

### A.      The Parties Dispute whether the Restraining Notice is "Overbroad"

Despite their attempts to disguise unfounded argument as undisputed facts,[9] there are material facts in dispute that affect the outcome of the Cross-claim.  In its strained effort to meet the elements for a claim for tortious interference with contract, Graphic wrongly contends that U.S. Bank intentionally procured the breach of the contract between Graphic and Ekman by, among other things, "serving the overbroad Restraining Notice."  (Moving Brief, at p. 21).  That U.S. Bank disagrees with the mischaracterization of the Restraining Notice as "overbroad," itself demonstrates the existence of disputed material facts that preclude summary judgment in favor of Graphic.

Moreover, as set forth in Response No. 11 of U.S. Bank's response to Graphic's statement pursuant to Local Rule 56.1, the basis for Graphic's mischaracterization of the Restraining Notice is an erroneous reading of the Restraining Notice: First, Graphic's assertion that the Restraining Notice defined "Judgment Debtors" to include "their principals, officers, directors, employees, agents, and all other persons acting or purporting to act on their behalf, whether individually or collectively" (Moving Brief, at p. 21), is simply wrong.  As clearly set forth on the first page of the Restraining Notice, the phrase "Judgment Debtors" is defined to include *only* the judgment debtor entities.   And, as set forth above, U.S. Bank's counsel explained this to Graphic's counsel before the lawsuit was commenced.  (S*ee* Zelmanovitz Decl., Exhibit N.)  The definition of "Judgment Debtors" that Graphic incorrectly references, appears in

---

[9] Contrary to Graphic's bold assertions, it is not a "simple fact … that U.S. Bank was required to possess evidence before it served a restraining notice; it was required to possess evidence before it filed a claim for the Interpleader Stake; and it was required to possess evidence before it proceeded with this litigation and forced the parties to undertake discovery."  (Moving Brief, at p. 21).  These statements are not supported by any authority.

the "Definitions" section of the subpoena *duces tecum* that was served in conjunction with the Restraining Notice, and has nothing to do with the Restraining Notice itself. (*See* Zelmanovitz Decl., Exhibit B).

Second, Graphic's statement that the Restraining Notice defines an "Affiliate" as "any person or entity contracted by, under common control with, or controlling any Judgment Debtor…" and expressly includes Paper Max (Graphic's Statement Pursuant to Local Rule 56.1, No. 12), is also wrong. Again, the definition of "Affiliate" to which Graphic apparently refers, appears in the "Definitions" section of the subpoena *duces tecum* and has nothing at all to do with the language of the Restraining Notice that appears on the first three pages of the joint document containing the Restraining Notice and the subpoena. (*See* Zelmanovitz Decl., Exhibit B).

Graphic's misreading of the Restraining Notice is particularly puzzling given that, as set forth above, counsel for U.S. Bank unequivocally stated to counsel for Graphic U.S. Bank's position that the Restraining Notice is applicable only to property or debts owed to the judgment debtor entities, and is not applicable to any such property of or debts owed to any affiliates of the judgment debtor entities. (*See* Zelmanovitz Decl., Exhibit N.) This tortured interpretation of a very clear document appears to be designed to justify Graphic's legitimate "concern" that the funds due to Ekman were subject to the Restraining Notice to the extent that, according to Graphic, the inclusion of Paper Max in the definition of "Affiliate" was one of the factors for its concern. (*See* Moving Brief, at p. 6). But, the legitimacy of Graphic's "concern" does not turn on whether the Restraining Notice references Paper Max. Rather, as set forth in its own motion, Graphic's concerns grew out of its knowledge "that Paper Max was heavily involvement [sic] in the transaction with Ekman, the fact that Paper Max had a known connection with one of the

Judgment Debtors, and also due to the circuitous nature of the transaction." (Moving Brief, at p. 6). Thus, the reference by U.S. Bank to Paper Max in the "Definitions" section of the subpoena is beside the point.

In any event, the language of the Restraining Notice is standard and conforms, in all respects, to C.P.L.R. § 5222.

### B.      Graphic Mischaracterizes the Statements of Counsel for U.S. Bank

Graphic distorts U.S. Bank's counsel's statement that he supposedly "admitted to this Court on April 13, 2011, that its conduct was intentional and undertaken with the purpose of preventing Graphic from making payment to Ekman." (Moving Brief, at p. 22). Graphic wrongfully implies that U.S. Bank's counsel admitted to the Court that U.S. Bank tortiously interfered with Graphic's contract with Ekman. Nothing could be further from the truth: U.S. Bank's counsel expressly stated that U.S. Bank was seeking to restrain the payments due to Ekman "through a restraining order." (*See* Taran Decl., Exhibit A, p. 20.) And, again, as set forth in Section I, above, the legitimate use and enforcement of the Restraining Notice does not give rise to a claim for tortious interference with contract.

Moreover, the statements of U.S Bank's counsel quoted by Graphic were made after the action was already commenced, and are of no import to U.S. Bank's conduct months before, when it served the Restraining Notice on Graphic.

## **CONCLUSION**

For the reasons set forth above, the Court should deny Graphic's motion for summary

judgment on its Cross-claim in its entirety.


Respectfully submitted,

Dated:   New York, New York            WILK AUSLANDER LLP
         February 15, 2012


By:  /s/ Jessica Taran
     Jessica Taran (JT-1978)
     jtaran@wilkauslander.com
     Joseph Zelmanovitz (JZ-0085), *Of Counsel*
     jzelmanovitz@wilkauslander.com
675 Third Avenue
New York, New York 10017
(212) 421-2233


*Attorneys for Interpleader Defendant*
*U.S. Bank National Association*

587048v3                          19