DEPOSITION OF PERSON MOST KNOWLEDGEABLE

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EKMAN & CO. AB.,

    Plaintiff,

vs.   CASE NO. 10 CV 8110

GRAPHIC PAPER, INC.,

    Defendants.

---

GRAPHIC PAPER, INC.,

    Interpleader Plaintiff,

vs.

EKMAN & CO. AB, and
U.S. BANK NATIONAL ASSOCIATION,

    Interpleader Defendants.

---

DEPOSITION OF PERSON MOST KNOWLEDGEABLE
OF PAPER MAX, INC., TIM SUNG
LONG BEACH, CALIFORNIA
TUESDAY, SEPTEMBER 13, 2011

Reported By: Susan L. Cleveland
C.S.R. No. 10502

---

DEPOSITION OF PERSON MOST KNOWLEDGEABLE OF PAPER MAX, INC., TIM SUNG, taken on behalf of Defendant/Interpleader Plaintiff, U.S. Bank National Association, at Prindle, Amaro, Goetz, Hillyard & Barnes, 310 Golden Shore, Fourth Floor, Long Beach, California, at 9:19 a.m., Tuesday, September 13, 2011, before Susan L. Cleveland, C.S.R. 10502, a Certified Shorthand Reporter for the State of California.

APPEARANCES OF COUNSEL:

FOR THE WITNESS:
    GREENBERG & BASS, LLP
    BY: JAMES R. FELTON, ESQ.
    16000 Ventura Boulevard
    Suite 1000
    Encino, California 91436
    (818) 382-6200

FOR THE INTERPLEADER DEFENDANT, U.S. BANK NATIONAL ASSOCIATION:
    WILK AUSLANDER, LLP
    BY: JOSEPH ZELMANOVITZ, OF COUNSEL
    1515 Broadway
    43rd Floor
    New York, New York 10036
    (212) 981-2300

FOR THE PLAINTIFF/INTERPLEADER DEFENDANT, EKMAN & CO. AB:
    DUANE MORRIS, LLP
    BY: ANTHONY J. COSTANTINI, ESQ.
        KEITH GREENBERG, ESQ.
    1540 Broadway
    New York, New York 10036-4086
    (212) 692-1032
    (Telephonic appearance)

---

APPEARANCES OF COUNSEL (CONTINUED):

FOR THE DEFENDANT/INTERPLEADER PLAINTIFF, GRAPHIC PAPER INC. (NO APPEARANCE):

    ETTELMAN & HOCHHEISER P.C.
    100 Quentin Roosevelt Boulevard
    Suite 401
    Garden City, New York 11530
    (516) 227-6300

---

I N D E X

| EXAMINATION BY: | PAGE |
|---|---|
| Mr. Zelmanovitz | 6 |
| Mr. Costantini | 149 |

EXHIBITS

Paper Max

| No. | Description | Page |
|---|---|---|
| 1 | Subpoena to Appear and Testify at Hearing or Trial in a Civil Action | 15 |
| 2 | Agreement between Great Champ Trading and Paper Max, Inc. | 41 |
| 3 | Amendment to Agreement between Great Champ Trading and Paper Max, Inc. | 43 |
| 4 | Resolutions by Unanimous Written Consent of Board of Directors of Paper Max, Inc. | 76 |
| 5 | Affidavit of Tim Sung | 78 |
| 6 | U.S. International Trade Commission, Publication 4192, November 2010 | 88 |
| 7 | Cost Sheet | 103 |
| 8 | Generalized System of Preferences, Certificate of Origin | 109 |
| 9 | Ekman State of Account as of 8/17/2010 | 110 |
| 10 | Paper Max, Inc. Invoice 25000372 | 111 |
| 11 | Paper Max, Inc. Invoice 1803; 25000382; 25000404; 25000405; 25000412; 25000425; 25000426; and 25000448 | 113 |

LEX REPORTING (310) 831-DEPO

DEPOSITION OF PERSON MOST KNOWLEDGEABLE

```
 1                EXHIBITS (Continued)
 2   Paper Max
     No.         Description                        Page
 3
     12    E-mail from Henry Sjarif to David Huskey, 114
 4         David Sung and Melody Lucas dated 1/6/10
 5   13    Paper Max, Inc. Invoice 1250              140
 6   14    Paper Max, Inc. Invoice 1262              141
 7   15    Paper Max, Inc. Invoice 1274              142
 8   16    Paper Max, Inc. Invoice 1294              143
 9   17    Paper Max, Inc. Invoice 1297              144
10
11
12              UNANSWERED QUESTIONS
13              Page           Line
14               96             9
15
16
17
              INFORMATION REQUESTED
18
                   (None.)
```

page 5

```
 1     LONG BEACH, CALIFORNIA, TUESDAY, SEPTEMBER 13, 2011
 2                       9:19 A.M.
 3                        -oOo-
 4
 5                       TIM SUNG,
 6              having been first duly sworn,
 7              was examined and testified as follows:
 8
 9                      EXAMINATION
10   BY MR. ZELMANOVITZ:
11      Q   Good morning, Mr. Sung. My name is Joseph
12   Zelmanovitz. I'm of counsel to Wilk Auslander. We
13   represent U.S. Bank, and we'll be taking your deposition
14   today.
15      Now, just to clear up some of the technical
16   points that we have for this deposition, counsel for
17   Ekman & Co. AB is appearing here by telephone from their
18   offices in New York via telephone conference.
19      You want to identify yourself, Mr. Costantini?
20      MR. COSTANTINI: It's Tony Costantini of Duane
21   Morris, and with me is Keith Greenberg of our office,
22   who -- and we will both be in on this deposition.
23      MR. ZELMANOVITZ: Okay. And for the record,
24   Joshua Stern who represents Graphic Paper
25   sent me an e-mail, 7:32 a.m. today, to let everyone know
```

page 6

```
 1   that he had a family issue that had come up, so he won't
 2   be on the phone for the deposition. So we'll just
 3   proceed without him.
 4   BY MR. ZELMANOVITZ:
 5      Q   Could you state your full name and address for
 6   the record, please.
 7      A   Tim, Tim, Sun, S-u-n-g. And address?
 8      Q   Address, please.
 9      MR. FELTON: The business address.
10      THE WITNESS: 222 South Harbor Boulevard, Suite
11   900, Anaheim, California 92805.
12   BY MR. ZELMANOVITZ:
13      Q   Are you --
14      MR. COSTANTINI: I can barely hear the witness.
15   I don't know if there's anything that could be done to
16   help that. We hear you, Joe.
17      MR. ZELMANOVITZ: Okay. We'll just ask if the
18   witness could just raise his voice a drop.
19      THE WITNESS: All right.
20   BY MR. ZELMANOVITZ:
21      Q   Mr. Sung, that was your business address;
22   right?
23      A   Correct.
24      Q   And are you a permanent resident of the state
25   of California?
```

page 7

```
 1      A   Yes.
 2      Q   At which city are you a resident of?
 3      A   Brea.
 4      Q   And how do you spell that?
 5      A   B-r-e-a.
 6      Q   And could you give me your residence address,
 7   please.
 8      MR. FELTON: Counsel, I don't believe that's
 9   necessary. You're more than happy to serve him at our
10   office.
11      MR. ZELMANOVITZ: Okay. If you're saying that
12   you'll accept service on his behalf at your office, I
13   have no problem.
14      MR. FELTON: Great. I accept service. We'll
15   accept service.
16   BY MR. ZELMANOVITZ:
17      Q   Okay. What is your present position, your
18   employment?
19      A   Vice president of sales.
20      Q   Which company?
21      A   Paper Max.
22      Q   Can you give me the full name of Paper Max,
23   please.
24      A   Paper Max.
25      Q   Is there a corporation at the end, a Corp., an
```

page 8

```
 1   Q   Paper Max?
 2   A   Well, it depends.
 3   Q   What does it depend on?
 4   A   Depending on whoever has the better
 5  transportation costs.
 6   Q   When you say who has the better transportation
 7  costs, meaning whether Paper Max has the better one or
 8  who?
 9   A   If we have better ones or Great Champ has
10  better, we check to see whoever has the better freight
11  cost, and we use whoever has the better freight cost.
12   Q   Are there any particular freight forwarding
13  companies that -- you know, a list of freight forwarding
14  companies that Paper Max would select from?
15   A   We work with about three freight forwarding
16  companies that we check prices with.
17   Q   And what companies are they?
18   A   We work with Port Alliance, USI, and DHL.
19   Q   Does Paper Max use the services of a customs
20  broker?
21   A   Yes.
22   Q   And who is that?
23   A   FedEx.
24   Q   And is FedEx the same customs broker that Paper
25  Max always uses?
```
                                                        57

```
 1   A   Yes.
 2   Q   Do you deal with -- withdrawn.
 3       Is there any particular individual with whom
 4  you personally deal with at the customs broker?
 5   A   Yeah. I forgot the name.
 6   Q   Now, when you have paper ordered by Graphic
 7  Paper financed by Ekman, do you have any communications
 8  with Ekman, and I'm using Ekman broadly, because there
 9  are several, you know, Ekman companies, but, generally,
10  you will have communication with an Ekman company?
11   A   Yes.
12   Q   And would it be the Ekman AB in Sweden or would
13  it be Ekman company that's located in Florida?
14   A   The Ekman in Florida.
15   Q   Is there a person or persons in Florida that
16  have you dealt with since 2009 -- and why don't I make
17  it clear, in 2009 and 2010?
18   A   We deal with Rosanna at Ekman.
19   Q   Would that be Rosanna Gutierrez?
20   A   Yes.
21   Q   Anyone else?
22   A   Xiomara.
23   Q   What's the name?
24   A   Xiomara.
25   Q   Xiomara, okay.
```
                                                        58

```
 1   A   Blanco.
 2   Q   Xiomara Blanco?
 3   A   Uh-huh.
 4   Q   Anybody else?
 5   A   Those are the two.
 6   Q   Did you ever deal --
 7       MR. COSTANTINI: I want to correct you, Joe. I
 8  think that's Rosanna Gataro that you mentioned.
 9       MR. ZELMANOVITZ: Oh, I'm sorry. You're right.
10  You are right. Rosanna Gataro, yes.
11  BY MR. ZELMANOVITZ:
12   Q   And Xiomara Blanco; right?
13   A   Yes.
14   Q   Anyone at Ekman AB in Sweden that you deal
15  with?
16   A   No.
17   Q   Does there come a point in time during this
18  process of the ordering and the supply of the paper to
19  Graphic Paper that Paper Max takes title of the goods?
20   A   We don't take title of the goods.
21   Q   Never?
22   A   What we do is there is times where Ekman will
23  reconsign the product to us for the purpose of Paper Max
24  clearing the customs, because we have an import bond
25  where we can import -- where we could clear customs on
```
                                                        59

```
 1  that. But we don't have the title to the goods. They
 2  just reconsign the goods for us for the purpose of
 3  clearing customs.
 4   Q   So only for the purpose of clearing customs?
 5   A   Correct.
 6   Q   And after it clears customs, are the goods then
 7  reconsigned back to anyone?
 8   A   Reconsigned, no. I mean, once we clear the
 9  customs, then Ekman has all the bills of lading and the
10  original documents, where they could -- which they have
11  the possession of the goods. We don't have the original
12  documents so, you know, we can't -- we don't have the
13  title to the goods. It's Ekman's products.
14   Q   Now, let's talk about the price for the goods.
15  When goods are ordered by Graphic Paper, who determines
16  the price for which those goods will be at?
17   A   Great Champ will provide pricing and -- a
18  monthly pricing, and typically we'll give to Graphic and
19  letting him know what the pricing for that month is.
20   Q   How do you receive the monthly pricing from
21  Great Champ, in what form is it?
22   A   It could be e-mail or it could be phone calls.
23   Q   And who at Great Champ issues the monthly
24  pricing?
25   A   I don't remember. I forgot her name.
```
                                                        60