UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

EKMAN & CO AB.,                                    ECF Case

                        Plaintiff,         Case No. 10 CV 8110 (JGK)

   -against -

GRAPHIC PAPER, INC.,

                        Defendant.
----------------------------------------------------------------x

GRAPHIC PAPER, INC.,

                  Interpleader Plaintiff,

   -against -

EKMAN & CO AB. and
U.S. BANK NATIONAL ASSOCIATION,

                  Interpleader Defendants.
----------------------------------------------------------------x

**RESPONSE OF INTERPLEADER DEFENDANT U.S. BANK NATIONAL ASSOCIATION TO THE STATEMENT OF MATERIAL FACTS OF DEFENDANT/INTERPLEADER PLAINTIFF GRAPHIC PAPER INC., <u>PURSUANT TO LOCAL RULE 56.1</u>**

Interpleader defendant U.S. Bank National Association ("U.S. Bank") respectfully submits this response to the statement of material facts filed by defendant/interpleader plaintiff Graphic Paper, Inc. ("Graphic"), pursuant to Local Rule 56.1, as to which Graphic contends there are no genuine issues to be tried:

586567v2

**Statement No. 1**

Graphic is a New York Company that is in the business of buying and selling paper to commercial printing companies in the New York tri-state and New England areas. (Deposition of Len Aronica, at 8, 10).

**Response to Statement No. 1.**

U.S. Bank does not dispute this statement.

**Statement No. 2**

Beginning in or around October 2009, Graphic purchased paper manufactured by APP from Ekman (Dkt # 1 at 38, Deposition of Len Aronica at 124).

**Response to Statement No. 2**

U.S. Bank disputes this statement because the evidence adduced in discovery including, without limitation the deposition testimony of Len Aronica, on behalf of Graphic, and the invoices issued by Ekman to Graphic, demonstrates that the paper purchased by Graphic from Ekman was manufactured by various entities affiliated with judgment debtor Asia Pulp & Paper Co., Ltd. ("APP") including (i) judgment debtor P.T. Indah Kiat Pulp & Paper Corp. ("PTIK"), (ii) PT Parbik Kertas Tjiwi Kimia; and (iii) PT Pindo Deli Pulp & Paper Mills. (*See* deposition transcript of Len Aronica, at p. 124-128, attached as Exhibit A to the moving declaration of Gary Ettelman, counsel for Graphic, dated January 18, 2012 (the "Ettelman Decl."), and Exhibit 20 marked at the deposition of Mr. Aronica, attached to the accompanying declaration of Jessica Taran, dated February 15, 2012 (the "Taran Decl.") as Exhibit B.)

**Statement No. 3**

In acquiring this paper, Graphic would negotiate and place all its orders with Paper Max. (Deposition of Len Aronica at 50-52) Paper Max would then direct Graphic to place its order

with Ekman.  (Deposition of Len Aronica at 92, 195)  The price paid for the paper would be set by Paper Max and not Ekman.  (Deposition of Rosanne Guterro at 152)

**Response to Statement No. 3**

U.S. Bank disputes the statement that "[t]he price for the papers would be set by Paper Max and not Ekman."  As Tim Sung testified on behalf of Paper Max, Inc. ("Paper Max"), Great Champ Trading Ltd. ("Great Champ") provided the pricing for the goods purchased by Graphic from Ekman.  (*See* deposition transcript of Tim Sung, at p. 60, attached to the Taran Decl., as Exhibit C.)

**Statement No. 4**

In order to fill the Graphic order, Ekman would then place its own purchase order with Paper Max, who then would forward the Ekman order to an Asian company by the name of Great Champ.  (Deposition of Rosanne Guterro at 50)  Paper Max and Great Champ, with no involvement from Ekman, would negotiate the buying price of the paper.  (Deposition of Rosanne Guterro at 152)

**Response to Statement No. 4**

U.S. Bank does not dispute that in order to purchase the paper for resale to Graphic, Ekman placed its own purchase orders with Great Champ through Paper Max.  U.S. Bank does dispute the statement that "Paper Max and Great Champ, with no involvement from Ekman, would negotiate the buying price of the paper."  Contrary to Graphic's citation to Mr. Guterro's testimony in support of this statement, Ms. Guterro did not testify that Ekman had no involvement in setting the price of the paper sold to Graphic.  (*See* deposition transcript of Rosanne Guterro, at 152, Ettelman Decl., Exhibit B.)

3

**Statement No. 5**

Throughout the parties' relationship, most if not all of Graphic's contact concerning delivery and sale was with Paper Max. (Deposition of Len Aronica at 210; Deposition of Rosanne Guterro at 19-20)

**Response to Statement No. 5**

U.S. Bank does not dispute this statement.

**Statement No. 6**

Paper Max was listed on the bill of lading as the "Notify Party/Intermediate Consignee." (Deposition of Len Aronica at 195; Exhibit 80 to Guterro Deposition)

**Response to Statement No. 6**

U.S. Bank does not dispute this statement.

**Statement No. 7**

As of August 2010, Graphic had $1,905,885.33 worth of paper that had been delivered from Ekman, which it had not paid for. (Dkt #1 at 38)

**Response to Statement No. 7**

U.S. Bank disputes this statement because, as evinced by the bill of lading relating to the transaction at issue, the paper purchased by Graphic was delivered from judgment debtor PTIK, which is identified as the "shipper" on the bill of lading. (*See* deposition transcript of Rosanne Guterro, Exhibit 80, Ettelman Decl., Exhibit D.)

**Statement No. 8**

In early August 2010, Graphic Paper was served with a combined Subpoena and Restraining Notice from U.S. Bank ("Restraining Notice"). (Deposition of Len Aronica at 36; Deposition of Joel Morgenthau at 8; Exhibit 2 to the Morgenthau Deposition).

586567v2

**Response to Statement No. 8**

U.S. Bank does not dispute this statement.

**Statement No. 9**

The Restraining Notice concerned the entry of a March 5, 2005, judgment obtained by U.S. Bank in the amount of $851 Million against various defendants including (1) APP International Finance Company B.V.; (2) P.T. Lontar papyrus Pulp & Paper Industry; (3) **Asia Pulp & Paper Company, Ltd.**; (4) Indah Kiat International Finance Company B.V.; and (5) P.T. Indah Kiat Pulp & Paper Company (collectively, "Judgment Debtors").  (Exhibit 2 to Morgenthau Deposition) (Emphasis added)

**Response to Statement No. 9**

U.S. Bank disputes this statement because the Restraining Notice was served in connection with a judgment entered by the Supreme Court of the State of New York, County of New York on March 10, 2005, not March 5, 2005, as Graphic contends.  (*See* deposition transcript of Joel Morgenthau, Esq., Exhibit 2, Ettelman Decl., Exhibit 6.)

**Statement No. 10**

The Restraining Notice stated that "you are forbidden to make or suffer any sale, assignment or transfer of, or interfere with any property of the Judgment Debtors or pay over or otherwise dispose of any debt owed to the Judgment Debtors … **[and] also covers all property in which the Judgment Debtors have an interest**…" (Exhibit 2 to the Morgenthau Deposition) (Emphasis added)

**Response to Statement No. 10**

U.S. Bank does not dispute this statement.

**Statement No. 11**

The Restraining Notice defined Judgment Debtors as the above referenced Judgment Defendants [sic], along with "their principals, officers, directors, employees, agents, and all other persons acting or purporting to act on their behalf, whether individually or collectively." (Exhibit 2 to Morgenthau Deposition, at 6) (Emphasis added) [sic]

**Response to Statement No. 11**

U.S. Bank disputes this statement because, as clearly set forth on the first page of the Restraining Notice, the definition of "Judgment Debtors" includes only the judgment debtor entities, APP International Finance Company B.V., P.T. Lontar Papyrus Pulp & Paper Industry, Asia Pulp & Paper Company, Ltd., Indah Kiat International Finance Company B.V., and P.T. Indah Kiat Pulp & Paper Company.  (*See* deposition transcript of Joel Morgenthau, Esq., Exhibit 2, Ettelman Decl, Exhibit E., page 1.)  The definition of "Judgment Debtors" to which Graphic apparently refers appears in the "Definitions" portion of the subpoena *duces tecum* and *ad testificandum* (the "Subpoena") served on Graphic in conjunction with the Restraining  Notice. (*See* deposition transcript of Joel Morgenthau, Esq., Exhibit 2, Ettelman Decl, Exhibit E.) Moreover, U.S. Bank's counsel explained this to Graphic's counsel before the lawsuit was commenced.  (S*ee* the moving declaration of Joseph Zelmanovitz, dated January 18, 2012, submitted in support of U.S. Bank's motion for summary judgment, Exhibit N.)

**Statement No. 12**

The restraining Notice defined an "Affiliate" as "any person or entity contracted by, under common control with, or controlling any Judgment Debtor…" Moreover, Paper Max was specifically named as an affiliate of the Judgment Debtors. (Exhibit 2 to Morgenthau Deposition, at 7)

6

**Response to Statement No. 12**

U.S. Bank disputes this statement because the definition of "Affiliate" appears in the "Definitions" portion of the Subpoena, not in the Restraining Notice, as Graphic contends. (*See* deposition transcript of Joel Morgenthau, Esq., Exhibit 2, Ettelman Decl, Exhibit E.)

**Statement No. 13**

Due to the broad definition of the term Judgment Debtors contained in the Restraining Notice, the fact that Paper Max was heavily involvement [sic] in the transactions with Ekman, the fact that Paper Max had a known connection with one of the Judgment Debtors, and also due to the circuitous nature of the transaction, Graphic became concerned that it might be subject to double liability under the Restraining Notice if it made payment to Ekman. (Exhibit A to the Ettleman Aff., at 199-201)

**Response to Statement No. 13**

U.S. Bank disputes this statement to the extent that it mischaracterizes the definition of "Judgment Debtors" set forth in the Restraining Notice as "broad." In fact, as set forth above, the definition of "Judgment Debtors" set forth on the first page of the Restraining Notice includes only the judgment debtor entities. (*See* deposition transcript of Joel Morgenthau, Esq., Exhibit 2, Ettelman Decl, Exhibit E.)

**Statement No. 14**

On August 13, 2010, Graphic forwarded the Restraining Notice to Ekman and sought an indemnification regarding its payment of the $1.9 Million. (Exhibit 1 to the Morgenthau Deposition)

**Response to Statement No. 14**

U.S. Bank does not dispute this statement.

7

**Statement No. 15**

Despite the fact that Ekman insisted that none of the Judgment Debtors had an interest in the owed amount, on August 25, 2010, Ekman refused to provide the indemnification.  As an alternative, Ekman's counsel proposed "[i]f it would enable you to resume payments, my client is willing to affirm the representations I have previously given you.  If you want to pursue this alternative, please let me know as soon as possible…" (Exhibit 11 to Morgenthau Deposition)

**Response to Statement No. 15**

U.S. Bank does not dispute this statement.

**Statement No. 16**

In response, Graphic [sic] counsel accepted this alternative proposed by Ekman, stating that "[a]ssuming that Ekman and Paper Max sign affidavits that are acceptable to Graphic Paper, Graphic Paper will resume making payments to Ekman."  (Exhibit 12 to Morgenthau Deposition)

**Response to Statement No. 16**

U.S. Bank does not dispute this statement.

**Statement No. 17**

On multiple occasions, Graphic also repeatedly informed Ekman that it was ready, willing and able to make payment to Ekman. For instance on September 13, 2010, Graphic's counsel informed Ekman that "if Graphic receives an acceptable affidavit from Paper Max, Graphic Paper will continue to attempt to resolve this matter [sic] Ekman … If Graphic does not receive such affidavit from Paper Max, then it is unlikely that Graphic will move forward towards [sic] an amicable resolution of this matter with Ekman, **without receiving an indemnification agreement with Ekman."**  (Exhibit 26 to Morgenthau Deposition, at EKM-GRA 00310)

**Response to Statement No. 17**

U.S. Bank does not dispute this statement.

**Statement No. 18**

In another email dated September 3, 2010, in which Graphic approved the payment of invoices (subject to resolving the matter), Graphic stated the following:

> If Ekman and/or Paper Max believe that the restraining notice served on Graphic Paper is not valid, as an alternative to repeatedly threatening Graphic with legal action, wither or both parties can provide Graphic Paper with an indemnification, which they have refused to do, provide Graphic Paper with acceptable affidavits, which to date they have not done, or seek to vacate the restraining notice. (Exhibit 33 to Morgenthau Deposition)

**Response to Statement No. 18**

U.S. Bank does not dispute this statement.

**Statement No. 19**

During the months of September and October 2010, Graphic attempted to negotiate acceptable language from both Ekman and Paper Max.  (See Exhibits 33, 36, 58, 73 of Morgenthau Deposition)

**Response to Statement No. 19**

U.S. Bank does not dispute this statement.

**Statement No. 20**

However, negotiations were slow, particularly because of the "unnecessarily adversarial and secretive" dealings of Paper Max.  For instance, Paper Max refused to permit Graphic to disclose the proposed affidavit to a third party or to court without its express permission.  This would have meant that if Graphic was sued by U.S. Bank, it would have been prohibited from using the Paper Max affidavit. (Exhibit 33 to Morgenthau Deposition)

9

**Response to Statement No. 20**

U.S. Bank does not dispute this statement.

**Statement No. 21**

Moreover, although the Paper Max affidavit was initially suppose [sic] to be executed by an officer with knowledge of the company's inner working Paper Max, was unwilling to execute such an affidavit. (Exhibit 59 to Morgenthau Deposition)

**Response to Statement No. 21**

U.S. Bank does not dispute this statement.

**Statement No. 22**

Thus, as a result of being unable to finalize an acceptable affidavit with Paper Max, and with Ekman's permission, on October 7, 2010, Graphic provided U.S. Bank a copy of the affidavit of Ekman's representative Hans Tidebrant ("Tidebrant Affidavit"). (Exhibit 67 to Morgenthau Deposition)

**Response to Statement No. 22**

U.S. Bank does not dispute this statement.

**Statement No. 23**

In its correspondence to U.S. Bank, Graphic stated that [sic]affidavit was being provided as part of Graphic's "due diligence" concerning the Restraining Notice. Additionally, Graphic informed U.S. Bank that it purchases paper from Ekman, that Graphic currently owed Ekman approximately $1.9 Million, and that Ekman had threatened Graphic with a lawsuit if it did not make payment to Ekman. Graphic requested that U.S. Bank "advise [it] whether based on the facts summarized in this email and Mr. Tidebrant's affidavit, you agree that that the Restraining

Notice does not prohibit Graphic Paper's payment of Ekman's invoices." (Exhibit 67 to Morgenthau Deposition) (Exhibit B to Dkt #1).

**Response to Statement No. 23**

U.S. Bank does not dispute this statement.

**Statement No. 24**

On October 7, 2010, U.S. Bank responded to Graphic and the Tidebrant Affidavit and stated the following:

> Unfortunately, we cannot advise you as to whether your are bound by the restraining notice, as that depends on whether Graphic Paper is, in fact, holding (directly or indirectly) money that belongs to the Judgment Debtors or someone acting on their behalf. Despite Mr. Tidebrant's affidavit, at this point in the proceedings, we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors (nor does he state so in his affidavit). It is our hope that our investigation and discovery, with the cooperation of the witnesses, can be concluded expeditiously. **However, given the reality of the discovery process, and without offering you any legal advice, I suggest that you consider the option of filing an interpleader action to the extent you desire to protect yourself against any suit threatened by Ekman.** (Exhibit 67 to Morgenthau Deposition)

**Response to Statement No. 24**

U.S. Bank does not dispute this statement.

**Statement No. 25**

Thereafter, as a result of the [sic] U.S. Bank's response, on or about October 15, 2010, negotiations between Graphic, Ekman, and Paper Max concerning acceptable language for an affidavit ceased because U.S. Bank was now claiming an interest in the $1.9 Million. (Exhibit 73 to Morgenthau Deposition)

11

**Response to Statement No. 25**

U.S. Bank disputes this statement given that there is no evidence (and Graphic fails to cite to any) that Graphic's negotiations with "Ekman and Paper Max concerning acceptable language for an affidavit ceased because U.S. Bank was now claiming an interest in the $1.9 million." In fact, the e-mail to which Graphic cites above, demonstrates that Graphic ceased negotiations concerning acceptable language for an affidavit to be provided by Paper Max because (i) Paper Max refused to provide "an affidavit from an officer of Paper Max," as it had agreed to do and (ii) refused to provide "the affidavit from Tin Sung and the requested board resolution." (*See* deposition transcript of Joel Morgenthau, Esq., Exhibit 73, Ettelman Decl, Exhibit M.)

**Statement No. 26**

On October 25, 2010, Ekman filed suit against Graphic seeking payment of the $1.9 Million, and for damages associated with its cancellation of certain inventory. (Dkt #1)

**Response to Statement No. 26**

U.S. Bank does not dispute this statement.

**Statement No. 27**

In response, on November 18, 2010, Graphic filed its answer and a counterclaim for interpleader against U.S. Bank and Ekman. (Dkt # 6)

**Response to Statement No. 27**

U.S. Bank does not dispute this statement.

**Statement No. 28**

On November 24, 2010, Ekman's counsel requested that the Interpleader stake be deposited into an interest bearing account in the Court's registry. (Exhibit P to the Affirmation of Gary Ettelman)

**Response to Statement No. 28**

U.S. Bank does not dispute this statement.

**Statement No. 29**

On December 2, 2010, Graphic's counsel circulated a proposed order pursuant to Local Rule 67.1 to deposit the $1,905,885.33 (the "Interpleader Stake") into an interest bearing account in the Court's registry. (Exhibit Q to Affirmation of Gary Ettelman)

**Response to Statement No. 29**

U.S. Bank does not dispute this statement.

**Statement No. 30**

On December 8, 2010, the Court entered an order permitting Graphic to deposit the Interpleader Stake into an interest bearing account in the Court registry. (Dkt# 14) On December 10, 2010, Graphic deposited $1,905,885.33 into an interest bearing account in the Court's registry.

**Response to Statement No. 30**

U.S. Bank does not dispute this statement.

**Statement No. 31**

Thereafter, on January 10, 2011, U.S. Bank filed a counterclaim against Graphic and a cross-claim against Ekman in which U.S. Bank stated without qualification that "Ekman is an agent of the Judgment Debtors" and that "the debt Graphic Paper owes to Ekman as agent of the

Judgment Debtors is properly restrained pursuant to the Restraining Notice." (Dkt #21, ¶¶ 30-31.)

**Response to Statement No. 31**

  U.S. Bank does not dispute this statement.

Dated:  New York, New York       WILK AUSLANDER LLP
    February 15, 2012

                 By: /s/ Jessica Taran
                   Jessica Taran (JT-1978)
                   jtaran@wilkauslander.com
                   Joseph Zelmanovitz (JZ-0085), *Of Counsel*
                   jzelmanovitz@wilkauslander.com
                675 Third Avenue
                New York, New York 10017
                (212) 421-2233

                *Attorneys for Interpleader Defendant*
                *U.S. Bank National Association*