UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK,
-------------------------------------------------------------------x
EKMAN & CO AB,

                               Plaintiff,

  –against –

GRAPHIC PAPER, INC.,

                               Defendant.
-------------------------------------------------------------------x
GRAPHIC PAPER, INC.,

                               Interpleader Plaintiff,

  -against-

EKMAN & CO AB, and
U.S. BANK NATIONAL ASSOCIATION,

                               Interpleader Defendants.
-------------------------------------------------------------------x

Case No. 10 CV 8110 (JGK)

**<u>PLAINTIFF-INTERPLEADER DEFENDANT EKMAN & CO AB'S RESPONSE TO
GRAPHIC PAPER, INC.'S STATEMENT PURSUANT TO
LOCAL RULE 56.1 AND STATEMENT OF ADDITIONAL MATERIAL FACTS</u>**

      Plaintiff-Interpleader Defendant Ekman & Co AB ("Ekman AB") respectfully responds to Defendant-Interpleader Plaintiff Graphic Paper's Statement Pursuant To Local Rule 56.1, and submits additional material facts raised thereby, as follows:

<u>RESPONSE TO GRAPHIC'S STATEMENT PURSUANT TO LOCAL RULE 56.1</u>

    1.    Agreed.

    2.    Ekman AB agrees that Graphic Paper, Inc. ("Graphic") purchased paper from Ekman AB, but avers that such purchases began in 2008. [Declaration of Anthony J. Costantini

-2-

Submitted In Support Of Plaintiff-Interpleader Defendant Ekman & Co AB's Motion For Partial Summary Judgment ("Decl. of Anthony J. Costantini"), Ex. H (Dep. of James Peiffer, p. 32 ln. 24-25, p. 17, ln. 7-20), Ex. K (Dep. of Hans Tidebrant, p. 33 ln. 17-23)]. Ekman AB has no knowledge of the manufacturers' affiliation with APP. [Decl. of Keith D. Greenberg, Ex. I (Dep. of Hans Tidebrant, p. 21 ln. 9-15), Ex. H (Dep. of Johanna Margareta Segerberg, p. 14 ln. 23-25)].

3. Ekman AB agrees that Graphic would negotiate preliminary pricing on these orders with Paper Max, but avers that orders were placed with Ekman AB and no price was final until accepted by Ekman AB after its review. [Decl. of Anthony J. Costantini, Ex. G (Dep. of Rosane Guterro, p. 115 ln. 20 – p. 116 ln. 23; p. 37 ln. 25 – p. 38 ln. 5)].

4. Ekman AB agrees that Ekman AB would place purchase orders, but avers that such purchase orders were placed with Great Champ and not Paper Max. [Decl. of Anthony J. Costantini, Ex. G (Dep. of Rosane Guterro, p. 38 ln. 3-5; p. 45 ln. 16 – p. 46 ln. 16)]. Ekman AB further avers that Great Champ made the final decision as to the price at which it would sell to Ekman AB. [Decl. of Anthony J. Costantini, Ex. G (Dep. of Rosane Guterro, p. 152 ln. 8-17)].

5. Ekman AB disputes the statement made in this paragraph and avers that throughout the parties' relationship, Graphic regularly and frequently corresponded with Ekman AB regarding delivery and sale of the paper Graphic had purchased. [Decl. of Keith D. Greenberg, Ex. E (Dep. of Rosane Guterro, Ex. 69, 70, 75, 81)].

6. Ekman AB agrees that Paper Max was listed on the applicable bills of lading as the "Notify Party/Intermediate Consignee," and avers that such designation was for purposes of allowing Paper Max to clear customs on Ekman AB's behalf. [Decl. of Anthony J. Costantini, Ex. G (Dep. of Rosane Guterro, p. 77 ln. 21 – p. 78 ln. 23, p. 122 ln. 21-22)].

7. Agreed that the $1,905,885.33 worth of paper had been delivered to Graphic by Ekman by August 10, 2010 and this amount had not been paid.

8. Agreed.

9. Agreed.

10. Agreed.

11. Agreed.

12. Ekman AB disputes the statements made in this paragraph and avers that the Restraining Notice did not define an "Affiliate," [Decl. of Anthony J. Costantini, Ex. L (Dkt. No. 1, Ex. A)], and further avers that the attached subpoena does define an "Affiliate" as "any person or entity contracted by, under common control with, or controlling any Judgment Debtor…," and that Paper Max was named in the subpoena as an affiliate of the Judgment Debtors.  Ekman AB further avers that Paper Max has represented that it is not an alter ego of APP.  [Decl. of Anthony J. Costantini, Ex. L (Dkt. No. 1, Ex. A), Ex. F (Dep. of Tim Sung, p. 79 ln. 10-23), Ex. N (Aff. of Tim Sung)].

13. Ekman AB disputes the statements made in this paragraph and avers that Graphic expressed concern regarding double liability under the Restraining Notice if Graphic made payment to Ekman AB because of Graphic's belief that some of the paper had been manufactured by an APP affiliate, [Decl. of Keith D. Greenberg, Ex. D (Dep. of Joel Morgenthau, Ex. M-21)], and further avers that Graphic did not mention any known connection between Paper Max and the Judgment Debtors or of Paper Max's "heavy involvement" in the transactions between Graphic and Ekman AB. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau); Ex. F (Dep. of Tim Sung); Ex. G (Dep. of Rosane Guterro); Ex. H (Dep. of James Peiffer); Ex. I (Dep. of Johanna Segerberg); Ex. J (Dep. of Leonard Aronica); Ex. K (Dep. of Hans Tidebrant)].  Ekman AB does not understand the term "circuitous nature" and avers

further that it was Graphic that asked that Ekman AB be inserted into the transactions in question because Graphic was unwilling or unable to meet Great Champ's payment terms. [Decl. of Anthony J. Costantini, Ex. H (Dep. of James Peiffer, p. 32 ln. 24-25, p. 17 ln. 7-20), Ex. J (Dep. of Leonard Aronica, p. 21 ln. 14 – p. 22 ln. 2)].

14. Agreed.

15. Ekman AB refused to provide the requested indemnification prior to August 25, 2010. [Decl. of Keith D. Greenberg, Ex. B (Dkt. No. 31, p. 6 ln. 20 – p. 8 ln. 25), Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Ex. M-11)]. Otherwise, Ekman AB agrees with the statement made in this paragraph and avers that Ekman AB subsequently offered Graphic a loss indemnification as to the $1,905,885.33 debt owed to Ekman as well as to any of the remaining paper which had not been delivered to Graphic. [Decl. of Anthony J. Costantini,¶ 2].

16. Agreed.

17. Agreed.

18. Agreed, and avers that Graphic knew that Ekman AB had refused to vacate the Restraining Notice because of its obvious inapplicability and the inappropriateness of the action suggested. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Ex. M-4, M-5, M-7, M-9, M-12)].

19. Ekman AB disputes the statements made in this paragraph and avers that by September 2, 2010, Graphic had secured acceptable language from Ekman AB that Graphic's own counsel had drafted. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Exs. M-48, M-51)]. Ekman AB further avers that Paper Max provided Graphic with acceptable language and an acceptable corporate resolution (again drafted by Graphic's counsel) by October 12, 2010. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Exs. M-48, M-51,

-4-

M-73, M-81)].

20. Ekman AB disputes the statements made in this paragraph and avers that Graphic's counsel in fact specified the requisite information to be contained in the Paper Max Affidavit but initially balked when Paper Max offered an employee, Tim Sung, as the proposed affiant. [(Decl. of Keith D. Greenberg, Ex. D (Dep. of Joel Morgenthau, Ex. M-15, M-38)]. Ekman AB avers that from September 24, 2010 onward, the circulated drafts of the Paper Max Affidavit contain no such restriction regarding disclosure to a third party or court. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Ex. M-59)]. Moreover, Graphic itself was the cause of significant confusion and delay when, after its counsel represented on September 27, 2010 that the proposed Paper Max corporate resolution was acceptable to Graphic, Graphic's principals expressed new concerns directly to Paper Max regarding the "approved" resolution on October 1, 2010. [Decl. of Keith D. Greenberg, Ex. D (Dep. of Joel Morgenthau, Exs. M-63, M-65)].

21. Ekman AB disputes the statements made in this paragraph and avers that Graphic originally sought an affidavit from Paper Max without requiring that the affiant be an officer of Paper Max. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Ex. M-15)]. Ekman AB further avers that, upon representations from Paper Max that a non-officer employee, Tim Sung, was the only representative of Paper Max who possessed sufficient personal knowledge as to the facts in the affidavit drafted by Graphic's counsel, Graphic did not insist that the Paper Max affiant be an officer, and subsequently indicated its willingness to accept the combination of an executed affidavit from Tim Sung and an authorizing resolution issued by the Paper Max Board of Directors (but drafted by Graphic's counsel). [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Exs. M-5, M-12, M-29, M-48, M-59, M-68, M-69)].

22. Ekman AB agrees that Graphic contacted U.S. Bank on October 7, 2010 and

provided U.S. Bank a copy of the affidavit of Ekman AB's representative, Hans Tidebrant (the "Tidebrant Affidavit"). Ekman AB avers that it did not give permission for the Tidebrant Affidavit to be submitted to U.S. Bank so that U.S. Bank could determine whether the Restraining Notice permitted Graphic's payment to Ekman AB. Ekman AB further avers that Graphic received an executed affidavit from Tim Sung and an accompanying resolution from the Board of Directors of Paper Max which provided precisely that information which Graphic's counsel had requested that Paper Max provide. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Exs. M-73, M-75, M-81)].

23. Agreed.

24. Agreed.

25. Ekman AB disputes the statements made in this paragraph and avers that U.S. Bank did not claim an interest in Graphic's debt to Ekman AB prior to U.S. Bank's first submission in this action. Ekman AB avers that negotiations over the language of the Ekman AB had ceased by September 2, 2010 and that negotiations about the Paper Max affidavit and corporate resolution had ceased some two weeks prior to the October 15, 2010 date identified by Graphic. [Decl. of Keith D. Greenberg, Ex. D (Dep. of Joel Morgenthau, Ex. M-63); Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Ex. M-51)]. Ekman AB further avers that, prior to Graphic's October 15, 2010 unequivocal statement of October 15, 2010 that "Graphic Paper does not intend to make payment to Ekman," Graphic had received, from both Ekman AB and Paper Max, affidavits and a Paper Max corporate resolution containing that information which Graphic's counsel had drafted. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Exs. M-13, M-17, M-18, M-19, M-22, M-23, M-27, M-29, M-30, M-40, M-64)].

26. Agreed, except that the damages sought were for the cancellation of the

contracted for deliveries.

27. Agreed.

28. Agreed.

29. Agreed.

30. Agreed.

31. Agreed.

### EKMAN AB'S STATEMENT OF ADDITIONAL MATERIAL FACTS

32. Graphic asked U.S. Bank to advise whether based on the circumstances along with the Affidavit provided by Ekman AB, U.S. Bank agreed that the Restraining Notice did not prohibit Graphic's payment of Ekman AB's invoices. [Decl. of Anthony J. Costantini, Ex. D (Dep. of Joel Morgenthau, Ex. M-67)].

33. U.S. Bank explained to Graphic that it could not provide Graphic with legal advice on the matter and suggested that Graphic interplead Ekman AB if Graphic had any grounds for concern about potential liability. [Decl. of Anthony J. Costantini, Ex. D (Dep. of Joel Morgenthau, Ex. M-67)].

34. U.S. Bank's counsel explained that the onus was on Graphic to decide whether the Restraining Notice covered Ekman AB, and that U.S. Bank would not approve or prohibit the payment. [Decl. of Anthony J. Costantini, Ex. D (Dep. of Joel Morgenthau, Ex. M-67)].

35. No evidence reflects that U.S. Bank ever suggested to Graphic that Ekman AB was a Judgment Debtor or affiliated therewith. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau); Ex. F (Dep. of Tim Sung); Ex. G (Dep. of Rosane Guterro); Ex. H (Dep. of James Peiffer); Ex. I (Dep. of Johanna Segerberg); Ex. J (Dep. of Leonard Aronica); Ex. K (Dep. of Hans Tidebrant)].

36.     Similarly, no evidence suggests that a cash or advance payment by Graphic to Ekman AB on the future deliveries would make Graphic liable to U.S. Bank.  [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau); Ex. F (Dep. of Tim Sung); Ex. G (Dep. of Rosane Guterro); Ex. H (Dep. of James Peiffer); Ex. I (Dep. of Johanna Segerberg); Ex. J (Dep. of Leonard Aronica); Ex. K (Dep. of Hans Tidebrant)].

37.     U.S. Bank served similar restraining notices to Ekman AB's other customers, and the applicable restraining notices did not prevent them from paying for the paper they received from Ekman AB.  To the contrary, Ekman AB's other customers paid on time and performed under their contracts without indemnification.  [Decl. of Keith D. Greenberg, Ex. B (Dkt. No. 31, p. 7 ln. 8-12)].

38.     Nevertheless, Graphic refused to pay Ekman AB.  In an email to Ekman AB's counsel dated October 15, 2010, Graphic's counsel stated "Graphic Paper does not intend to make payment to Ekman."  [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Ex. M-73)].

39.     After Graphic refused to pay for the Diverted Goods, Ekman AB enlisted the assistance of Xiomara Blanco, an employee of Ekman & Co., Inc., to assist in the resale of the Diverted Goods because it believed that the resale process would be more efficient if conducted from Ms. Blanco's location in the United States, where the Diverted Goods had been stored. [Decl. of Keith D. Greenberg, Ex. A (Aff. of Xiomara Blanco, ¶¶ 2, 5)].

40.     The Diverted Goods were resold in arm's length transactions for as high a price as possible so as to mitigate Ekman AB's damages and minimize incidental damages that were accruing, such as storage, insurance costs and interest.  [Decl. of Keith D. Greenberg, Ex. A (Aff. of Xiomara Blanco, ¶¶ 6-8), Ex. C].

41.     To avoid a "fire sale" and preserve their value, Ekman AB sold the Diverted

Goods in piecemeal fashion over a period of eleven months. [Decl. of Keith D. Greenberg, Ex. A (Aff. of Xiomara Blanco, ¶¶ 6-8), Ex. F].

42. The Diverted Goods were resold at commercially reasonable prices to purchasers within North America and South America. [Decl. of Keith D. Greenberg, Ex. A (Aff. of Xiomara Blanco, ¶ 9)].

43. Prior to the Restraining Notice's expiration, Graphic offered to purchase the remaining paper from Ekman AB on terms of advance or simultaneous payment. By this time, another customer had already provided a verbal commitment to purchase the paper. Given this verbal commitment, Ekman AB felt unable to pursue Graphic's offer unless the existing deal fell through, which it did not. [Decl. of Keith D. Greenberg, Ex. A (Aff. of Xiomara Blanco, ¶ 10)].

44. After Ekman AB concluded its resale of the Diverted Goods, Ekman AB offered Graphic the opportunity to conduct a limited deposition of Xiomara Blanco regarding the resale of the Diverted Goods. Graphic never responded to this offer. [Decl. of Keith D. Greenberg, Ex. G].

45. Graphic continues to dispute its liability for the pre-escrow interest owed on Graphic's $1,905,885.33 debt to Ekman AB, which Ekman AB asserts is properly part of the interpleader stake. [Dkt. No. 41; Defendant/Interpleader Plaintiff Graphic Paper's Memorandum Of Law In Support Of Its Motion For Summary Judgment at 14-18].

Dated: February 15, 2012
New York, New York

**DUANE MORRIS LLP**

By: /s/Anthony J. Costantini
Anthony J. Costantini, Esq.
ajcostantini@duanemorris.com
Mairi V. Luce, Esq.
luce@duanemorris.com
Keith D. Greenberg, Esq.
kdgreenberg@duanemorris.com
1540 Broadway
New York, NY 10036
(212) 692-1000
*Attorneys for Plaintiff-Interpleader*
*Defendant Ekman & Co AB*

TO:   Gary Ettelman, Esq.
Joshua Stern, Esq.
Ettelman & Hochheiser, P.C.
Suite 401
100 Quentin Roosevelt Boulevard
Garden City NY  11530
*Counsel for Defendant-Interpleader*
*Plaintiff Graphic Paper, Inc.*

Joseph Zelmanovitz, Esq.
Jessica Taran, Esq.
Wilk Auslander LLP
1515 Broadway
43rd Floor
New York, NY 10036
*Counsel for Interpleader Defendant*
*U.S. Bank, N.A.*