UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK,
-------------------------------------------------------------------x
EKMAN & CO. AB.,

                                     ECF Case
                  Plaintiff,          Case No. 10 CV 8110 (JGK)


      –against –


GRAPHIC PAPER, INC.,


                  Defendant.
-------------------------------------------------------------------x
GRAPHIC PAPER, INC.,

                  Interpleader Plaintiff,


     -against-


EKMAN & CO. AB., and
U.S. BANK NATIONALASSOCIATION,


                  Interpleader Defendants.
-------------------------------------------------------------------x

### GRAPHIC PAPER'S RESPONSE TO PLAINTIFF U.S. BANK'S STATEMENT PURSUANT TO LOCAL RULE 56.1

       Defendant/Interpleader Plaintiff Graphic Paper, Inc. ("Graphic") hereby submits the following response to Interpleader Defendant U.S. Bank National Association's ("U.S. Bank") statement pursuant to Local Rule 56.1, stating as follows:

### GRAPHIC'S RESPONSE TO U.S. BANK'S STATEMENTS

      1.      On or about March 10, 2005, a judgment in an amount in excess of $851 million (the "Judgment") was entered in favor of U.S. Bank against APP International Finance Company B.V.; P.T. Lontar Papyrus Pulp & Paper Industry; Asia Pulp & Paper Company Ltd.; Indah Kiat

International Finance Company B.V.; and P.T. Indah Kiat Pulp & Paper Corporation ( the "Judgment Debtors").   Declaration of Joseph Zelmanovitz, dated January 18, 2012 ("Zelmanovitz Dec."), ¶ 2 and Exhibit A thereto.

**RESPONSE:** Graphic admits this statement.

2.      On or about August 5, 2010, U.S. Bank served on defendant/interpleader plaintiff Graphic Paper, Inc. ("Graphic") a *subpoena duces tecum* and Restraining Notice the ("Restraining Notice"), restraining Graphic from making any sale, assignment or transfer of, or interfering with any property of the Judgment Debtors, its affiliates and/or its agents, or paying over or otherwise disposing of any debt owed to Judgment Debtors, its affiliates and/or agents, restraining all property in which the Judgment Debtors, its affiliates and/or agents, have an interest that is in Graphic's possession or custody and restraining all debts coming due from Graphic to the Judgment Debtors, its affiliates and/or agents.  Zelmanovitz Dec. ¶ 3 and Exhibit B thereto.

**RESPONSE:** Graphic admits that on or about that date it was served with a Restraining Notice, but states the exact wording and legal effects of the Restraining Notice speaks for itself.

3.      On August 20 and 23, 2010, Joel L. Morgenthau, Esq., counsel for Graphic, and Jessica Taran, Esq., counsel for U.S. Bank, spoke by telephone concerning the Restraining Notice.  During these telephone conversations, Mr. Morgenthau expressed concern on the part of Graphic that the funds being withheld by Graphic and not paid to plaintiff/interpleader defendant Ekman & Co AB. ("Ekman") might be subject to the Restraining Notice.  Declaration of Jessica Taran, dated January 18, 2012 ("Taran Dec."), ¶¶ 2-4.

**RESPONSE:** Graphic admits that Joel Morgenthau, Esq. had conversations with counsel for U.S. Bank on or about those dates and that the subject of the Restraining Notices was

discussed.  The contents of that discussion were later memorialized in a series of emails between the parties as referenced in the next statement submitted by U.S. Bank.

4.     By email dated August 24, 2010, Mr. Morgenthau wrote to Ms. Taran, that during the above-referenced telephone conversations, Ms. Taran had advised him that the Restraining Notice is applicable only to property or debts owed to the Judgment Debtors and is not applicable to any such property of or debts owed to the Judgment Debtors and is not applicable to any such property of or debts owed to affiliates of the Judgment Debtors.  Zelmanovitz Dec. ¶ N; transcript of the October 5, 2011 deposition of Joel L. Morgenthau, at 19-20 (attached as Exhibit M to the Zelmanovitz Dec.).

**RESPONSE:** Graphic admits that on August 24, 2010, Mr. Morgenthau wrote to Ms. Taran.  Graphic denies the remainder of the statement because it mischaracterizes the email, the content of which speaks for itself.  In fact, Mr. Morgenthau wrote that he was seeking confirmation regarding what Ms. Taran had said.  Instead of confirming the statement, Ms. Taran subsequently corrected Mr. Morgenthau by quoting from the exact language contained in the Restraining Notice.   Ms. Taran's response is contained in the subsequent statement submitted by U.S. Bank.

5.     On August 24, 2010, Ms. Taran replied by email to Mr. Morgenthau, as follows:

> Given that our clients are in somewhat of an adversarial relationship to each other, I would not characterize my statements to you as "advice."  Nevertheless, I am confirming our position (as stated during our telephone conversations) that the restraining notice that we served on Graphic Paper, Inc. ("Graphic") restrains only (i) any asset owed by Graphic to any judgment debtor in this action ("Judgment Debtor"); (ii) any asset of any Judgment Debtor in the possession, custody or control of Graphic; or (iii) any asset of any Judgment Debtor to which Graphic is entitled.

Morgenthau Dep. 23-24; Zelmanovitz Dec. ¶ 17 and Exhibit O thereto; Taran Dec. ¶ 3.

**RESPONSE:** Graphic admits this statement.

6.      By complaint filed in this action on October 25, 2010, Ekman brought suit against Graphic alleging, *inter alia,* that it had sold paper to Graphic, that Graphic owes Ekman $1,905,885.33, that Graphic was withholding payment because, as allegedly stated by Graphic's counsel, "he was concerned because an Indonesian paper will, which was an affiliate of one of the Judgment Debtors, was the original manufacturer of the paper sold by Ekman to Graphic," and he was also concerned that Paper Max, Inc., another affiliate of the Judgment Debtors, "was involved in the discussions that led to the placement of orders by Graphic with Ekman." Complaint (DKT # 1), ¶¶ 9, 11, attached as Exhibit C to the Zelmanovitz Declaration.

**RESPONSE:** Graphic admits on that date Ekman filed suit against Graphic, but denies the remainder of the statement because the content of the court document speaks for itself.

7.      Graphic filed its original answer to Ekman's complaint and an interpleader complaint on or about November 18, 2010.  In the interpleader complaint, Graphic alleges, *inter alia*;

> 16.  After receiving the Restraining Notice Graphic Paper duly notified Ekman of its concern that payments due to Ekman might be subject to the Restraining Notice.
>
> *****
>
> 19.  Upon receipt of the Affidavit, Graphic Paper contacted the Judgment Creditor, U.S. Bank, and attempted to obtain the Judgment Creditor's consent to the payment by Graphic Paper of the Ekman invoices.  However, despite the Affidavit, U.S. Bank stated that "[d]espite Mr. Tidebrant's affidavit, at this point in the proceedings, we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors (nor does he state so in his affidavit)…I suggest that you consider the filing on an interpleader action…"
>
> 20.  Graphic Paper is concerned that either or both of Paper Max or Ekman maybe an agent for one of more of the Judgment

> Debtors because Graphic Paper believes that the ultimate source of
> the product in issue is one or more of the Judgment Debtors. …

Interpleader Complaint (DKT # 6), ¶¶ 16, 19-20, Zelmanovitz Dec. Exhibit D.

**RESPONSE:** Graphic admits on that date it filed its original answer, but denies the remainder of the statement because the content of the court document speaks for itself.

8.     On or about December 7, 2010 Graphic filed an amended answer and interpleader complaint.  This amended pleading repeats the substantive allegations of the original answer and interpleader complaint, including ¶¶ 16, 19-20 quoted above.  DKT # 12, Zelmanovitz Dec. Exhibit E.

**RESPONSE:** Graphic admits on that date it filed its amended answer, but denies the remainder of the statement because the content of the court document speaks for itself.

9.     On or about January 10, 2011, U.S. Bank answered the interpleader complaint and asserted a counterclaim against Graphic and a cross-claim against Ekman.   DKT #21, Zelmanovitz Dec. Exhibit F.

**RESPONSE:** Graphic admits on that date U.S. Bank filed its amended answer, but denies the remainder of the statement because the content of the court document speaks for itself.

10.     On or about April 18, 2011, Ekman filed its answer to U.S. Bank's cross-claims, and asserted its own cross-claim for tortuous interference with contract against U.S. Bank.  In its cross-claim, Ekman alleges, *inter alia:*

> 10.  Graphic's counsel has admitted he does not know or have
> reason to believe that any Judgment Debtor has an interest
> in the Graphic Debt.  However, Graphic notified Ekman
> AB  that it was concerned that payments due to Ekman
> AB might be subject to the Restraining Notice.
>
> 11.  Specifically, Graphic's counsel stated that he was
> concerned that Paper Max, Inc. ("Paper Max"), an alleged
> affiliated of the Judgment Debtors, was involved in the

5

> discussions that led to the placement of orders by Graphic
> with Ekman AB. …

Ekman Cross-claim (DKT # 30), ¶¶ 10-11, Zelmanovitz Dec. Exhibit I.

**RESPONSE:** Graphic admits on that date Ekman filed the above document, but denies

the remainder of the statement because the content of the court document speaks for itself.

11.   In its cross-claim against U.S. Bank, Ekman sets forth its factual predicate for its

tortuous interference claim against U.S. Bank, as follows:

> 16.  On information and belief, upon receipt of the Affidavit,
> Graphic contacted the Judgment Creditor, U.S. Bank, and
> attempted to obtain the Judgment Creditor's consent to the
> payment by Graphic of the Ekman AB invoices.  However,
> despite the Affidavit, U.S. Bank refused to consent and
> suggested that it would sue Graphic if payment were made
> to Ekman AB.

Ekman Cross-claim (DKT # 30), ¶ 16, Zelmanovitz Dec. Exhibit I.

**RESPONSE:** Graphic admits that the court document filed by U.S. Bank contains the

quoted language, but denies the remainder of the statement because the content of the court

document speaks for itself.

12.   U.S. Bank answered Ekman's cross-claim on or about May 18, 2011, denying its

substantive allegations. DKT # 35, Zelmanovitz Dec. Exhibit J.

**RESPONSE:** Graphic admits that on that date U.S. Bank filed the above document, but

denies the remainder of the statement because the content of the court document speaks for itself.

13.   In an Amended Answer, Interpleader Complaint, and Cross-claim, filed August 2,

2011, Graphic repeated the allegations it made previously in its interpleader complaint, that it

had notified Ekman of its "concern that payments due to Ekman might be subject to the

Restraining Notice," and that "either or both of Paper Max or Ekman may be an agent for one or

more of the Judgment Debtors…." Interpleader Complaint (DKT # 49) ¶¶ 16, 20, Zelmanovitz

Dec. Exhibit K.

**RESPONSE:** Graphic admits that on that date Graphic filed the above document, but

denies the remainder of the statement because the content of the court document speaks for itself.

14.      Graphic also asserted a cross-claim against U.S. Bank for indemnification in the

event the Restraining Notice is determined to be improper.   In its cross-claim, Graphic alleges,

*inter alia:*

> 17.  Graphic Paper denies that it is liable to Ekman for the
> Inventory Claims and the Interest Claims because the Restraining
> Notice served by U.S. Bank prohibited Graphic Paper from making
> payment to Ekman.
>
> 18.  If liability against Graphic Paper for the Inventory Claims
> and Interest Claims exist, which Graphic Paper denies, it would
> exist solely, and would be proximately caused, by reason of U.S.
> Bank serving an improper or invalid Restraining Notice in
> violation of C.P.L.R. § 5222.
>
> 19.  Moreover, if the Restraining Notice served by U.S. Bank is
> adjudicated to have been improper or invalid, this would constitute
> tortuous [sic] interference of contract by U.S. Bank against
> Graphic Paper for improperly interfering with Graphic Paper's
> relationship with Ekman.

Graphic Cross-claim (DKT # 49) ¶¶ 17-19, Zelmanovitz Dec. Exhibit K.

**RESPONSE:** Graphic admits that it filed a cross-claim against U.S. Bank, but denies the

remainder of the statement because the content of the court document speaks for itself.

15.      U.S. Bank answered Graphic's cross-claim on August 3, 2011.   DKT # 50,

Zelmanovitz Dec. Exhibit L.

**RESPONSE:** Graphic admits that U.S. Bank filed the above document on that date, but

denies the remainder of the statement because the content of the court document speaks for itself.

16.     No representative of U.S. Bank ever told Graphic's counsel that it would bring suit against Graphic if payment were made to Ekman.  Morgenthau Dep. 130-32.

**RESPONSE:** Graphic denies this statement.  In fact, in open court, U.S. Bank told the Court and Graphic's counsel who was present that it was "quite possible" that U.S. Bank would file suit against Graphic if it made payment to Ekman.     (Tr. dated April 13, 2011, at 20-21) (Annexed as Exhibit B to Dkt #42)  Further, in its October 7, 2010, correspondence to Graphic, counsel for U.S. Bank implied that an action would be brought against Graphic when they refused to permit Graphic to pay Ekman.

### GRAPHIC'S STATEMENT OF
### ADDITIONAL UNDISPUTED MATERIAL FACTS

17.     Graphic is a New York company that is in the business of buying and selling paper to commercial printing companies in the New York tri-state and New England areas. (Deposition of Len Aronica, at 8, 10)

18.     Beginning in or around October 2009, Graphic purchased paper manufactured by APP from Ekman (Dkt # 1 at 38; Deposition of Len Aronica at 124).

19.     In acquiring this paper, Graphic would negotiate and place all of its orders with Paper Max.  (Deposition of Len Aronica at 50-52)  Paper Max would then direct Graphic to place its order with Ekman. (Deposition of Len Aronica at 92, 195)  The price paid for the paper would be set by Paper Max and not Ekman. (Deposition of Rosane Guterro at 152)

20.     In order to fill the Graphic order, Ekman would then place its own purchase order with Paper Max, who then would forward the Ekman order to an Asian company by the name of Great Champ.  (Deposition of Rosane Guterro at 50)  Paper Max and Great Champ, with no involvement from Ekman, would negotiate the buying price of the paper.  (Deposition of Rosane Guterro at 152)

21.     Throughout the parties' relationship, most if not all of Graphic's contact

concerning delivery and sale was with Paper Max.  (Deposition of Len Aronica at 210;

Deposition of Rosane Guterro at 19-20)

22.     Paper Max was listed on the bill of lading as the "Notify Party/Intermediate

Consignee."  (Deposition of Len Aronica at 195; Exhibit 80 to Guterro Deposition)

23.     As of August 2010, Graphic had $1,905,885.33 worth of paper that had been

delivered from Ekman, which it had not paid for.  (Dkt # 1 at 38)

24.     In early August 2010, Graphic Paper was served with a combined Subpoena and

Restraining Notice from U.S. Bank ("Restraining Notice").  (Deposition of Len Aronica at 36;

Deposition of Joel Morgenthau at 8; Exhibit 2 to Morgenthau Deposition)

25.     The Restraining Notice concerned the entry of a March 5, 2005, judgment

obtained by U.S. Bank in the amount of $851 Million against various defendants including (1)

APP International Finance Company B.V.; (2) P.T. Lontar Papyrus Pulp & Paper Industry; (3)

**Asia Pulp & Paper Company, Ltd**.; (4) Indah Kiat International Finance Company B.V.; and

(5) P.T. Indah Kiat Pulp & Paper Company (collectively, "Judgment Defendants").  (Exhibit 2 to

Morgenthau Deposition) (Emphasis added)

26.     The Restraining Notice stated that "you are forbidden to make or suffer any sale,

assignment or transfer of, or interfere with any property of the Judgment Debtors or pay over or

otherwise dispose of any debt owed to the Judgment Debtors….**[and] also covers all property**

**in which the Judgment Debtors have an interest**…" (Exhibit 2 to Morgenthau Deposition)

(Emphasis added)

27.     The Restraining Notice defined Judgment Debtors as the above referenced

Judgment Defendants, along with "their principals, officers, directors, employees, agents, and all

other persons acting or purporting to act on their behalf, whether individually or collectively."
(Exhibit 2 to Morgenthau Deposition, at 6) (Emphasis added)

28.     The Restraining Notice defined an "Affiliate" as "any person or entity contracted
by, under common control with, or controlling any Judgment Debtor…" Moreover, Paper Max
was specifically named as an affiliate of the Judgment Debtors.  (Exhibit 2 to Morgenthau
Deposition, at 7)

29.     Due to the broad definition of the term Judgment Debtors contained in the
Restraining Notice, the fact that Paper Max was heavily involvement in the transaction with
Ekman, the fact that Paper Max had a known connection with one of the Judgment Debtors, and
also due to the circuitous nature of the transaction, Graphic became concerned that it might be
subject to double liability under the Restraining Notice if it made payment to Ekman.  (Exhibit A
to Ettelman Aff. at 199-201)

30.     On August 13, 2010, Graphic forwarded the Restraining Notice to Ekman and
sought an indemnification regarding its payment of the $1.9 Million.  (Exhibit 1 to Morgenthau
Deposition)

31.     Despite the fact that Ekman insisted that none of the Judgment Debtors had an
interest in the owed amount, on August 25, 2010, Ekman refused to provide the indemnification.
As an alternative, Ekman's counsel proposed "[i]f it would enable you to resume payments, my
client is willing to affirm the representations I have previously given you.  If you want to pursue
this alternative, please let me know as soon as possible…"  (Exhibit 11 to Morgenthau
Deposition)

32.     In response, Graphic counsel accepted this alternative proposed by Ekman, stating
that "[a]ssuming that Ekman and Paper Max sign affidavits that are acceptable to Graphic Paper,
Graphic Paper will resume making payments to Ekman."  (Exhibit 12 to Morgenthau Deposition)

10

33.     On multiple occasions, Graphic also repeatedly informed Ekman that it was ready, willing and able to make payment to Ekman.  For instance on September 1, 2010, Graphic's counsel informed Ekman that "if Graphic receives an acceptable affidavit from Paper Max, Graphic Paper will continue to attempt to resolve this matter Ekman…If Graphic does not receive such affidavit from Paper Max, then it is unlikely that Graphic will move forward towards[sic] an amicable resolution of this matter with Ekman, **without receiving an indemnification agreement with Ekman."**  (Exhibit 26 to Morgenthau Deposition, at EKM-GRA 000310)

34.     In another email dated September 3, 2010, in which Graphic approved the payment of invoices (subject to resolving the matter), Graphic stated the following:

> If Ekman and/or Paper Max believe that the restraining notice served on Graphic Paper is not valid, as an alternative to repeatedly threatening Graphic with legal action, either or both parties can provide Graphic Paper with an indemnification, which they have refused to do, provide Graphic Paper with acceptable affidavits, which to date they have not done, or seek to vacate the restraining notice.   (Exhibit 33 to Morgenthau Deposition)

35.     During the months of September and October 2010, Graphic attempted to negotiate acceptable language from both Ekman and Paper Max.  (See Exhibits 33, 36, 58, 73 of Morgenthau Deposition)

36.     However, negotiations were slow, particularly because of the "unnecessarily adversarial and secretive" dealings of Paper Max.  For instance, Paper Max refused to permit Graphic to disclose the proposed affidavit to a third party or to a court without its express permission.  This would have meant that if Graphic was sued by U.S. Bank, it would have been prohibited from using the Paper Max affidavit.  (Exhibit 33 to Morgenthau Deposition)

37.    Moreover, although the Paper Max affidavit was initially suppose to be executed by an officer with knowledge of the company's inner working, Paper Max was unwilling to execute such an affidavit.  (Exhibit 59 to Morgenthau Deposition)

38.    Thus, as a result of being unable to finalize an acceptable affidavit with Paper Max, and with Ekman's permission, on October 7, 2010, Graphic provided U.S. Bank a copy of the affidavit of Ekman's representative Hans Tidebrant ("Tidebrant Affidavit").  (Exhibit 67 to Morgenthau Deposition)

39.    In its correspondence to U.S. Bank, Graphic stated that affidavit was being provided as part of Graphic's "due diligence" concerning the Restraining Notice.  Additionally, Graphic informed U.S. Bank that it purchases paper from Ekman, that Graphic currently owed Ekman approximately $1.9 Million, and that Ekman had threatened Graphic with a lawsuit if it did not make payment to Ekman.  Graphic requested that U.S. Bank "advise [it] whether based on the facts summarized in this email and Mr. Tidebrant's affidavit, you agree that the Restraining Notice does not prohibit Graphic Paper's payment of Ekman's invoices." (Exhibit 67 to Morgenthau Deposition) (Exhibit B to Dkt # 1)

40.    On October 7, 2010, U.S. Bank responded to Graphic and the Tidebrant Affidavit and stated the following:

> Unfortunately, we cannot advise you as to whether you are bound by the restraining notice, as that depends on whether Graphic Paper is, in fact, holding (directly or indirectly) money that belongs to the Judgment Debtors or someone acting on their behalf. Despite Mr. Tidebrant's affidavit, at this point in the proceedings, we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors (nor does he state so in his affidavit).  It is our hope that our investigation and discovery, with the cooperation of the witnesses can be concluded expeditiously.  **However, given the reality of the discovery process and without offering you any legal advice, I suggest that you consider the option of filing an interpleader action to the extent that you desire to protect yourself against any suit threatened by Ekman.**  (Exhibit 67 to

12

Morgenthau Deposition)

41.     Thereafter, as a result of the U.S. Bank's response, on or about October 15, 2010, negotiations between Graphic, Ekman, and Paper Max concerning acceptable language for an affidavit ceased because U.S. Bank was now claiming an interest in the $1.9 Million.  (Exhibit 73 to Morgenthau Deposition)

42.     On October 25, 2010, Ekman filed suit against Graphic seeking payment of the $1.9 Million, and for damages associated with its cancellation of certain inventory.  (Dkt # 1)

43.     In response, on November 18, 2010, Graphic filed its answer and a counterclaim for interpleader against U.S. Bank and Ekman.  (Dkt # 6)

44.     On November 24, 2010, Ekman's counsel requested that the Interpleader stake be deposited into an interest bearing account in the Court's registry. (Exhibit P to Affirmation of Gary Ettelman)

45.     On December 2, 2010, Graphic's counsel circulated a proposed order pursuant to Local Rule 67.1 to deposit the $1,905,885.33 (the "Interpleader Stake") into an interest bearing account in the Court's registry.  (Exhibit Q to Affirmation of Gary Ettelman)

46.     On December 8, 2010, the Court entered an order permitting Graphic to deposit the Interpleader Stake into an interest bearing account in the Court registry.  (Dkt #14)  On December 10, 2010, Graphic deposited $1,905,885.33 into an interest bearing account in the Court's registry.

Thereafter, on January 10, 2011, U.S. Bank filed a counterclaim against Graphic and a cross-claim against Ekman in which U.S. Bank stated without qualification that "Ekman is an agent of the Judgment Debtors" and that "the debt Graphic Paper owes to Ekman as agent of the Judgment Debtors is properly restrained pursuant to the Restraining Notice."  (Dkt # 21, ¶¶ 30-31)

13

Dated: Garden City, New York
       February 15, 2012

                                   Respectfully submitted,
                                     ETTELMAN & HOCHHEISER, P.C.

                                     By:_____/s/_____
                                        Gary Ettelman, Esq. (GE 9315)
                                   Attorneys for Graphic Paper, Inc.
                                   100 Quentin Roosevelt Blvd.
                                   Suite 401
                                   Garden City, New York 11530
                                   (516) 227-6300