UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK,
-------------------------------------------------------------------x
EKMAN & CO. AB.,

                                                          Case No. 10 CV 8110 (JGK)

                        Plaintiff,


             –against –


GRAPHIC PAPER, INC.,


                          Defendant.
-------------------------------------------------------------------x
GRAPHIC PAPER, INC.,

                          Interpleader Plaintiff,


             -against-


EKMAN & CO. AB., and
U.S. BANK NATIONALASSOCIATION,


                         Interpleader Defendants.
-------------------------------------------------------------------x


## MEMORANDUM OF LAW BY DEFENDANT/INTERPLEADER PLAINTIFF GRAPHIC PAPER IN OPPOSITION TO THE PARTIAL MOTION FOR SUMMARY JUDGMENT FILED BY INTERPLEADER DEFENDANT U.S. BANK NATIONAL ASSOCIATION


                                        Ettelman & Hochheiser P.C.
                                        Attorneys for Defendant/Interpleader
                                        Plaintiff Graphic Paper, Inc.
                                        Garden City Center
                                        100 Quentin Roosevelt Blvd.
                                        Suite 401
                                        Garden City, New York 11530
                                        516-227-6300

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................3

    I.  GRAPHIC'S PURCHASE OF PAPER FROM EKMAN.......................................3

    II.  THE RESTRAINING NOTICE ...........................................................................4

    III.  GRAPHIC'S NEGOTATION WITH EKMAN AND PAPER MAX ....................5

    IV.  EKMAN FILES SUIT AGAINST GRAPHIC ......................................................8

ARGUMENT.......................................................................................................................9

    I.  STANDARD OF LAW FOR SUMMARY JUDGMENT .....................................9

    II.  GRAPHIC IS ENTITLED TO INDEMNIFCATION
        FROM U.S. BANK IF IT IS HELD LIABLE TO EKMAN ................................10

    III.  U.S. BANK'S MISTATEMENTS OF LAW
        CONCERNING TORTIOUS INTERFERENCE ..................................................14

    IV.  U.S. BANK WAS NOT A CREDITOR AND NOT
        ENTITLED TO THE AFFIRMATIVE DEFENSE
        OF ECONOMIC JUSTIFICATION .....................................................................16

    V.  U.S. BANK MISTATES THE LAW REGARDING
        INDEMNIFICATION............................................................................................17

CONCLUSION..................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................9

*Caplan v. Tofel*,
    65 A.D.3d 1180, 886 N.Y.S.2d 182 (2d Dep't 2009) ........................................15

*Caribbean Const. Services & Associates, Inc. v. Zurich Ins. Co.*,
    267 A.D.2d 81, 700 N.Y.S.2d 129 (1st Dep't 1999) ........................................15

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
    504 U.S. 451 (1992).................................................................................................9

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
    310 F.Supp.2d 569 (S.D.N.Y. 2004)...................................................................9

*George v. Marshalls of MA, Inc.*,
    61 A.D.3d 925, 878 N.Y.S.2d 143 (2009) ...................................................10, 18

*Hoag v. Chancellor, Inc.*,
    246 A.D.2d 224, 677 N.Y.S.2d 531 (1998) .........................................................11

*Hunt v. Cromartie*,
    526 U.S. 541 (1999).................................................................................................9

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*,
    296 A.D.2d 103, 744 N.Y.S.2d 384 (1st Dep't 2002) ...................................10, 15

*Mas v. Two Bridges Associates by Nat. Kinney Corp.*,
    75 N.Y.2d 680, 554 N.E.2d 1257 (1990)......................................................10, 18

*McDermott v. City of New York*,
    50 N.Y.2d 211, 406 N.E.2d 460 (1980)........................................................10, 18

*Medtech Products Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008).................................................................11

*Mitchell v. Kurtz*,
    10 Misc. 3d 1063(A), 814 N.Y.S.2d 562 (Sup. Ct. N.Y. Co. 2005)....................15

*Morris v. Blume*,
    55 N.Y.S.2d 196 (Sup. Ct. 1945) ........................................................................11

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*,
    87 N.Y.2d 614, 664 N.E.2d 492 (1996).........................................................11, 15

ii

*Raquet v. Braun*,
  90 N.Y.2d 177, 681 N.E.2d 404 (1997)..................................................................10, 17, 18

*Scotto v. Almenas,*
  143 F.3d 105 (2d Cir. 1998)..............................................................................................9

*W. World Ins. Co. v. Stack Oil, Inc.,*
  922 F.2d 118 (2d Cir. 1990)..............................................................................................9

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
  460 F.3d 281 (2d Cir. 2006)............................................................................................16

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
  8 N.Y.3d 422, 867 N.E.2d 381 (2007)........................................................................14, 16

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ...............................................................................................................9

Fed.R.Civ.P. 56(e) ..................................................................................................................9

Local Rule 67.1 ........................................................................................................................8

## PRELIMINARY STATEMENT

Sometimes a legal brief is more telling for what it doesn't say, then for what it does.  In this case, Interpleader Defendant U.S. Bank National Association ("U.S. Bank") has omitted the most relevant and important fact of the case; namely, that even after Interpleader Plaintiff Graphic Paper, Inc. ("Graphic") tendered an affidavit submitted by co-Interpleader Defendant Ekman & Co. AB ("Ekman") regarding the lack of any relationship with the judgment debtors, informed U.S. Bank of Graphic's relationship with Ekman, and informed U.S. Bank that Ekman was threatening Graphic with litigation, the attorneys for U.S. Bank committed tortious interference with contract by telling Graphic that it "cannot conclude that Ekman is not acting on behalf of the Judgment Debtors (nor does he state in his affidavit)," and also "I suggest that you consider the option of filing an interpleader action to the extent that you desire to protect yourself against any suit threatened by Ekman."  Obviously, an interpleader action would only be possible, *sub judice*, if U.S. Bank was making a claim for the money that Graphic owed Ekman,[1] which it was ostensibly doing.  In fact, U.S. Bank did just that, answering the instant interpleader action in the affirmative by alleging that Ekman was an agent of APP, that the debt owed to Ekman was properly restrained, and that U.S. Bank is entitled to the Interpleader Stake.

Now that Graphic has filed an indemnification claim against U.S. Bank based on its tortious interference with contract between Graphic and Ekman, U.S. Bank would have this Court believe that all it did was "legitimately" serve a notice of restraint ("Restraining Notice") on Graphic and nothing else.  However, this is not true and belies the actual facts in this case,

---

[1] In its brief, U.S. Bank argues that it did not "threaten" Graphic.  Regardless of whether such a statement is relevant, as this Court has stated on previous occasions, there are threats, and then there *are threats*.  In this case, U.S. Bank's service of the Restraining Notice and then its statement that Graphic should file an "interpleader action," is clearly a threat that it was ostensibly making a claim to the funds and that if Graphic did not comply, it could be sued.

1

which include not only the above statements by U.S. Bank's attorneys after it received the Ekman affidavit, but also its service of an overly broad Restraining Notice that defined judgment debtors as including certain "affiliates," one of which was "Paper Max."[2]  The fact is that before U.S. Bank served the Restraining Notice, it was required to have evidence that Graphic owed a debt to the judgment debtors; otherwise, it never should have served the Restraining Notice, which is akin to an injunction.  Moreover, the fact is that before U.S. Bank rejected the Ekman affidavit and told Graphic that it should file an interpleader action, it was required to have evidence that the judgment debtors had an interest in the Interpleader Stake; otherwise it should have permitted payment and not engaged in saber rattling.  Furthermore, the fact is that before U.S. Bank submitted its answer to the interpleader complaint and stated that Ekman was an agent of one of the judgment debtors, it was required to have evidence that Ekman was actually an agent of one of the judgment debtors; otherwise it never should have made a claim for the Interpleader Stake or submitted an unsubstantiated pleading to the Court.

Indeed, even after 8 months of discovery, U.S. Bank still has no evidence that Ekman is an agent of one of the judgment debtors or that it ever had a right to the Interpleader Stake.  U.S. Bank produced no evidence substantiating such claims during discovery and it has now reluctantly agreed to dismiss its claims against Ekman and permit Ekman to receive the Interpleader Stake.  Simply stated, in pursuing its collection efforts of a massive judgment, U.S. Bank was not permitted to use Graphic and Ekman as pawns in its larger endeavor of obtaining information and trying to decipher the judgment debtor's purported shell games.

---

[2] Indeed, in his affidavit, U.S Bank attorney Joseph Zelmanovitz admits that the Restraining Notice "restrain[ed] all debts coming due from Graphic to the Judgment Debtors, **its affiliates and/or agents**."  (Dkt # 74, Declaration of Joseph Zelmanovitz ¶ 3) (Emphasis added).

Accordingly, as will be described in more detail below, if this Court rejects Graphic's defenses to the claims asserted by Ekman against it (which is the subject of Graphic's motion for summary judgment against Ekman), then U.S. Bank must indemnify Graphic for the above actions, which constituted an improper interference with the relationship between Graphic and Ekman and caused Graphic to withhold payment to Ekman.

## STATEMENT OF FACTS

### I.    GRAPHIC'S PURCHASE OF PAPER FROM EKMAN

Graphic is a New York company that is in the business of buying and selling paper to commercial printing companies in the New York tri-state and New England areas. (Exhibit A to Ettelman Aff.[3] at 8-10).  Beginning in or around October 2009, Graphic purchased paper manufactured by APP from Ekman (Dkt # 1 at 38; Exhibit A to Ettelman Aff. at 124). In acquiring this paper, Graphic would negotiate and place all of its orders with Paper Max. (Exhibit A to Ettelman Aff. at 50-52)  Paper Max would then direct Graphic to place its order with Ekman. (Exhibit A to Ettelman Aff. at 92, 195)  The price paid for the paper would be set by Paper Max and not Ekman. (Exhibit B to Ettelman Aff. at 152)  In order to fill the Graphic order, Ekman would then place its own purchase order with Paper Max, who then would forward the Ekman order to an Asian company by the name of Great Champ.  (Exhibit B to Ettelman Aff. at 50)  Paper Max and Great Champ, with no involvement from Ekman, would negotiate the buying price of the paper.  (Exhibit B to Ettelman Aff. at 152)  Throughout the parties' relationship, most if not all of Graphic's contact concerning delivery and sale was with Paper Max.  (Exhibit A to Ettelman Aff. at 210; Exhibit B to Ettelman Aff. at 19-20)  In fact, Paper Max was even listed on the bill of lading as the "Notify Party/Intermediate Consignee."

---

[3] The following refers to the Affirmation of Gary Ettelman dated February 15, 2012, submitted in opposition to the motions for summary judgment filed by U.S. Bank and Ekman.

(Exhibit A to Ettelman Aff. at 195; Exhibit D to Ettelman Aff.)  As of August 2010, Graphic

had $1,905,885.33 worth of paper that had been delivered from Ekman, which it had not paid

for.  (Dkt # 1 at 38)  Moreover, Graphic had also ordered approximately $560,000 worth of

paper from Ekman that had not yet been delivered.

## II.      THE RESTRAINING NOTICE

In early August 2010, Graphic Paper was served with a combined Subpoena and

Restraining Notice from U.S. Bank ("Restraining Notice").  (Exhibit A to Ettelman Aff. at 36;

Exhibit C to Ettelman Aff. at 8; Exhibit E to Ettelman Aff.)  The Restraining Notice concerned

the entry of a March 5, 2005, judgment obtained by U.S. Bank in the amount of $851 Million

against various defendants including (1) APP International Finance Company B.V.; (2) P.T.

Lontar Papyrus Pulp & Paper Industry; (3) **Asia Pulp & Paper Company, Ltd**.; (4) Indah Kiat

International Finance Company B.V.; and (5) P.T. Indah Kiat Pulp & Paper Company

(collectively, "Judgment Defendants").  (Exhibit E to Ettelman Aff.) (Emphasis added)

The Restraining Notice stated that "you are forbidden to make or suffer any sale,

assignment or transfer of, or interfere with any property of the Judgment Debtors or pay over or

otherwise dispose of any debt owed to the Judgment Debtors….**[and] also covers all property

in which the Judgment Debtors have an interest**…" (Exhibit E to Ettelman Aff.) (Emphasis

added)  The Restraining Notice defined Judgment Debtors as the above referenced Judgment

Defendants, along with "their principals, officers, directors, employees, agents, **and all other

persons acting or purporting to act on their behalf**, whether individually or collectively."

(Exhibit E to Ettelman Aff., at p. 6) (Emphasis added)  Additionally, the Restraining Notice

defined an "Affiliate" as "any person or entity contracted by, under common control with, or

controlling any Judgment Debtor…" (Exhibit E to Ettelman Aff., at p. 7)  Thus, under both

definitions, a defined Affiliate could also be a Judgment Debtor (i.e. as an agent or other person acting or purporting to act on their behalf). This is important because one of the 97 entities specified listed as affiliates in the Restraining Notice was Paper Max; the entity with whom Graphic dealt directly pertaining to the purchase orders with Ekman. In fact, U.S. Bank admits that under the terms of the Restraining Notice Graphic Paper would have been enjoined from paying Paper Max (or any other affiliate or agent of APP). In his affidavit submitted in support of the present motion, U.S. Bank attorney Joseph Zelmanovitz admits that the Restraining Notice restrained "all debts coming due from Graphic to the Judgment Debtors, **its affiliates and/or agents**." [Dkt # 74, Affidavit of Joseph Zelmanovitz ¶ 3]

## III.    GRAPHIC'S NEGOTIATION WITH EKMAN AND PAPER MAX

Due to (i) the overly broad definition contained in the Restraining Notice which elevated Paper Max to the status of Judgment Debtor, (ii) the fact that Paper Max was heavily involved in the transaction with Ekman, (iii) the fact that Paper Max had a known connection with APP, and (iv) to the circuitous nature of the transaction, Graphic became concerned that it might be subject to double liability under the Restraining Notice if it made payment to Ekman. (Exhibit A to Ettelman Aff. at 199-201)

As a result, on August 13, 2010, Graphic forwarded the Restraining Notice to Ekman and sought an indemnification regarding its payment of the $1.9 Million. (Exhibit F to Ettelman Aff.) Despite the fact that Ekman insisted that none of the Judgment Debtors had an interest in the owed amount, on August 25, 2010, Ekman refused to provide the indemnification. As an alternative, Ekman's counsel proposed "[i]f it would enable you to resume payments, my client is willing to affirm the representations I have previously given you. If you want to pursue this alternative, please let me know as soon as possible…" (Exhibit G to Ettelman Aff.) In response,

5

Graphic counsel accepted this alternative proposed by Ekman, stating that "[a]ssuming that

Ekman and Paper Max sign affidavits that are acceptable to Graphic Paper, Graphic Paper will

resume making payments to Ekman."  (Exhibit H to Ettelman Aff.)

Moreover, on multiple occasions, Graphic also repeatedly informed Ekman that it was

ready, willing and able to make payment to Ekman.  For instance on September 1, 2010,

Graphic's counsel informed Ekman that "if Graphic receives an acceptable affidavit from Paper

Max, Graphic Paper will continue to attempt to resolve this matter with Ekman…If Graphic does

not receive such affidavit from Paper Max, then it is unlikely that Graphic will move forward

towards[sic] an amicable resolution of this matter with Ekman, **without receiving an**

**indemnification agreement with Ekman."**  (Exhibit I to Ettelman Aff.)  In addition, in another

email dated September 3, 2010, in which Graphic approved the payment of invoices (subject to

resolving the matter), Graphic also stated the following:

> If Ekman and/or Paper Max believe that the restraining notice
> served on Graphic Paper is not valid, as an alternative to repeatedly
> threatening Graphic with legal action, either or both parties can
> provide Graphic Paper with an indemnification, which they have
> refused to do, provide Graphic Paper with acceptable affidavits,
> which to date they have not done, or seek to vacate the restraining
> notice.   (Exhibit J to Ettelman Aff.)

During the next two months of September and October 2010, Graphic attempted to

negotiate acceptable language from both Ekman and Paper Max.  (*See* Exhibits J, K, L, M to

Ettelman Aff.)  However, negotiations were slow, particularly because of the "unnecessarily

adversarial and secretive" dealings of Paper Max.  For instance, Paper Max refused to permit

Graphic to disclose the proposed affidavit to a third party or to a court without its express

permission.  This would have meant that if Graphic was sued by U.S. Bank, it would have been

prohibited from using the Paper Max affidavit.  (Exhibit J to Ettelman Aff.) Moreover, although

the Paper Max affidavit was initially supposed to be executed by an officer with knowledge of the company's inner working, Paper Max was unwilling to execute such an affidavit. (Exhibit N to Ettelman Aff.)

Thus, as a result of being unable to finalize an acceptable affidavit with Paper Max, and with Ekman's permission, on October 7, 2010, Graphic provided U.S. Bank a copy of the affidavit of Ekman's representative Hans Tidebrant ("Tidebrant Affidavit"). (Exhibit O to Ettelman Aff.) In its correspondence to U.S. Bank, Graphic stated that affidavit was being provided as part of Graphic's "due diligence" concerning the Restraining Notice. Additionally, Graphic informed U.S. Bank that it purchases paper from Ekman, that Graphic currently owed Ekman approximately $1.9 Million, and that Ekman had threatened Graphic with a lawsuit if it did not make payment to Ekman. Graphic requested that U.S. Bank "advise [it] whether based on the facts summarized in this email and Mr. Tidebrant's affidavit, you agree that the Restraining Notice does not prohibit Graphic Paper's payment of Ekman's invoices." (Exhibit O to Ettelman Aff.) (Exhibit B to Dkt # 1)

On October 7, 2010, U.S. Bank responded to Graphic and the Tidebrant Affidavit and stated the following:

> Unfortunately, we cannot advise you as to whether you are bound by the restraining notice, as that depends on whether Graphic Paper is, in fact, holding (directly or indirectly) money that belongs to the Judgment Debtors or someone acting on their behalf. Despite Mr. Tidebrant's affidavit, at this point in the proceedings, we cannot conclude that Ekman is not acting on behalf of the Judgment Debtors (nor does he state so in his affidavit). It is our hope that our investigation and discovery, with the cooperation of the witnesses can be concluded expeditiously. **However, given the reality of the discovery process and without offering you any legal advice, I suggest that you consider the option of filing an interpleader action to the extent that you desire to protect yourself against any suit threatened by Ekman.** (Exhibit O to Ettelman Aff.)

Thereafter, as a result of the U.S. Bank's response, on or about October 15, 2010, negotiations

between Graphic, Ekman, and Paper Max concerning acceptable language for an affidavit ceased

because U.S. Bank was now claiming an interest in the $1.9 Million.  (Exhibit M to Ettelman

Aff.)

### IV.    EKMAN FILES SUIT AGAINST GRAPHIC

On October 25, 2010, Ekman filed suit against Graphic seeking payment of the $1.9

Million, and for damages associated with its cancellation of the Inventory.  (Dkt # 1) In

response, on November 18, 2010, Graphic filed its answer and a counterclaim for interpleader

against U.S. Bank and Ekman.  (Dkt # 6) On November 24, 2010, Ekman's counsel requested

that the Interpleader stake be deposited into an interest bearing account in the Court's registry.

(Exhibit P to Ettelman Aff.)  On December 2, 2010, Graphic's counsel circulated a proposed

order pursuant to Local Rule 67.1 to deposit the $1,905,885.33 (the "Interpleader Stake") into

an interest bearing account in the Court's registry.  (Exhibit Q to Ettelman Aff.)  On December

8, 2010, the Court entered an order permitting Graphic to deposit the Interpleader Stake into an

interest bearing account in the Court registry.  (Dkt #14) On December 10, 2010, Graphic

deposited $1,905,885.33 into an interest bearing account in the Court's registry.   Thereafter,

on January 10, 2011, U.S. Bank filed a counterclaim against Graphic and a cross-claim against

Ekman in which U.S. Bank stated without qualification that "Ekman is an agent of the

Judgment Debtors" and that "the debt Graphic Paper owes to Ekman as agent of the Judgment

Debtors is properly restrained pursuant to the Restraining Notice."  (Dkt # 21, ¶¶ 30-31) On

June 21, 2011, Graphic was discharged from the Interpleader action.  (Dkt # 41)

## ARGUMENT

### I.        STANDARD OF LAW FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  However, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in favor of the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Moreover, the moving party bears the burden of establishing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party has met this burden, then the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Rather, the nonmovant can create a genuine issue of material fact only by citing competent, admissible evidence. *Galasso v. Eisman, Zucker, Klein & Ruttenberg,* 310 F.Supp.2d 569, 574 (S.D.N.Y.2004) (citing *Sarno v. Douglas Elliman–Gibbons & Ives,* 183 F.3d 155, 160 (2d Cir.1999)).

## II.      GRAPHIC IS ENTITLED TO INDEMNIFACTION
            FROM U.S. BANK IF IT IS HELD LIABLE TO EKMAN

If the Court determines that Ekman is entitled to the Interpleader Stake and that Graphic is also liable to Ekman as a result of damages suffered by reason of the Inventory Claims or for interest associated with the Interpleader Stake, then Graphic is entitled to receive indemnification from U.S. Bank as a result of U.S. Bank's tortious interference with contract, which was the direct cause of Graphic withholding payment to Ekman, and thus, any damages suffered by Ekman. *Mas v. Two Bridges Associates by Nat. Kinney Corp.*, 75 N.Y.2d 680, 690, 554 N.E.2d 1257, 1262 (1990) ("Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other."); *Raquet v. Braun*, 90 N.Y.2d 177, 183, 681 N.E.2d 404, 407 (1997) ("The duty that forms the basis for the liability arises from the principle that every one is responsible for the consequences of his own negligence, and if another person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him."); *George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 929-30, 878 N.Y.S.2d 143, 148 (2009) ("The principle of common-law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party"); *McDermott v. City of New York*, 50 N.Y.2d 211, 217, 406 N.E.2d 460, 462 (1980) (To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs.")

Under New York law, the elements of a tortious interference of contract claim are: 1) the existence of a contract, enforceable by the plaintiff, 2) the defendant's knowledge of the existence of that contract, 3) the intentional procurement by the defendant of the breach of the contract, and 4) resultant damages to the plaintiff. *Joan Hansen & Co., Inc. v. Everlast World's*

10

*Boxing Headquarters Corp.*, 296 A.D.2d 103, 111, 744 N.Y.S.2d 384, 391 (1ˢᵗ Dept. 2002); .

*Hoag v. Chancellor, Inc.*, 246 A.D.2d 224, 228, 677 N.Y.S.2d 531, 533 (1998).  Moreover,

"where there is an existing, enforceable contract and a defendant's deliberate interference results

in a breach of that contract, a plaintiff may recover damages for tortious interference with

contractual relations even if the defendant was engaged in lawful behavior.  Where there has

been no breach of an existing contract, but only interference with prospective contract rights,

however, plaintiff must show more culpable conduct on the part of the defendant."  *NBT*

*Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 621, 664 N.E.2d 492, 495-96

(1996).  In fact, a plaintiff attempting to prove tortious interference with an existing contract is

not required to demonstrate "malice," rather only that "procurement of the breach was without

justification." *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 798 (S.D.N.Y. 2008);

*Morris v. Blume*, 55 N.Y.S.2d 196, 199 (Sup. Ct. 1945) *aff'd,* 269 A.D. 832, 56 N.Y.S.2d 414

(App. Div. 1945) ("An unlawful interference with a person in the performance of his contract

with a third party is just as much a legal wrong as is an unlawful inducement of a breach of that

contract by the third party. It is not necessary that the wrongdoer be shown to be guilty of any

actual malice or ill will; it is sufficient that the wrongdoer has intentionally committed the wrong

without legal or social justification.")

    Here, Graphic has clearly met its burden that if it is liable to Ekman for damages relating

to the Inventory claim or for the payment of interest, U.S. Bank's tortious interference was the

proximate cause of such damages.  Indeed all four elements for a claim of tortious interference

with contract have been met.  First, it is undisputed that there existed an enforceable contract

between Graphic and Ekman.  This is the contract on which Ekman seeks damages against

Graphic on the interest and inventory claims.

Second, in its correspondence dated October 7, 2010, Graphic specifically informed U.S. Bank as to the existing contract and tried to get U.S. Bank's consent to permit payment to Ekman by providing it with an affidavit from Ekman.  (Exhibit O to Ettelman Aff.)  In fact, U.S. Bank was specifically told that Ekman was threatening Graphic with litigation if it did not make payment.  Despite this, U.S. Bank continued to reaffirm its Restraining Notice and suggested the filing of an interpleader action.

Third, U.S. Bank's actions in serving the overbroad Restraining Notice[4], its subsequent refusal to permit payment once it was informed of the existing contract and provided an affidavit from Ekman and, U.S. Bank's subsequent claim to the Stake, all constitute an unjustified procurement of a breach of contract.  The simple fact is that U.S. Bank was required to possess evidence before it served a restraining notice; it was required to possess evidence before it filed a claim for the Interpleader Stake; and it was required to possess evidence before it proceeded with this litigation and forced the parties to undertake discovery.  If after 8 months of discovery, U.S. Bank is unable to demonstrate that it has a rightful claim to the Interpleader Stake, then its actions were not only reckless, but unjustified.  Such a lack of evidence would also conflict with its allegations in its counterclaims filed on January 10, 2010, which stated without qualification that "Ekman is an agent of the Judgment Debtors" and that "the debt Graphic Paper owes to Ekman as agent of the Judgment Debtors is properly restrained pursuant to the Restraining Notice."  (Dkt # 21, ¶¶ 30-31)

---

[4] As stated earlier, the Restraining Notice was overbroad in that it defined Judgment Debtors as including "their principals, officers, directors, employees, agents, and all other persons acting or purporting to act on their behalf, whether individually or collectively."  Moreover, the Restraining Notice also defined "affiliate," of which Paper Max was one of 97 listed affiliates as "any person or entity contracted by, under common control with, or controlling any Judgment Debtor."  In his affidavit, U.S. Bank attorney Joseph Zelmanovitz admits that the Restraining Notice restrained debts owed to "affiliates."  (Dkt # 74, ¶ 3)

Moreover, U.S. Bank's attorney also admitted to this Court on April 13, 2011, that its
conduct was intentional and undertaken with the purpose of preventing Graphic from making
payment to Ekman.

> MR. ZELMANOVITZ:  Now, we have not made any threats, but
> we have real concern about how the judgment debtors went about
> their business here, which is business as usual, and that's how they
> operate, and they in fact do have an interest in this money.
>
> THE COURT:  That's a very fine line.  You say, and carefully so,
> we have not made any threats.  And it's crystal clear that the reason
> you say that is to attempt to avoid liability should there be no basis
> for what you have been doing.  But what you have been doing is
> plainly attempting to prevent Graphic from paying Ekman.
>
> MR. ZELMANOVITZ:  And the reason –
>
> THE COURT:  Isn't that right?
>
> MR. ZELMANOVITZ:  That's correct, but the reason –
>
> THE COURT:  There is no question you are attempting to prevent
> Graphic from paying Ekman, right?
>
> MR. ZELMANOVITZ:  Yes, your Honor, through a restraining
> order.  They have to make the determination whether this money
> that we are speaking about the judgment debtors have an interest.
>
> THE COURT:  And if they're wrong and they pay Ekman, will you
> sue them?
>
> MR. ZELMANOVITZ:  Quite possibly.  (Tr. dated April 13, 2011,
> at 20-21) (Annexed as Exhibit B to Dkt #42)

Fourth, there can be no doubt Graphic will suffer damages if it is ultimately held liable to
Ekman.  Such damages would only be caused by Graphic Paper's inability to pay Ekman the
$1.9 Million, as a result of U.S. Bank's service of an unsupported and unfounded Restraining
Notice and U.S. Bank's subsequent statements in its October 7, 2010 correspondence to Graphic.

> Unfortunately, we cannot advise you as to whether you are bound
> by the restraining notice, as that depends on whether Graphic

13

Paper is, in fact, holding (directly or indirectly) money that belongs
to the Judgment Debtors or someone acting on their behalf.
Despite Mr. Tidebrant's affidavit, at this point in the proceedings,
we cannot conclude that Ekman is not acting on behalf of the
Judgment Debtors (nor does he state so in his affidavit).  It is our
hope that our investigation and discovery, with the cooperation of
the witnesses can be concluded expeditiously.  However, given the
reality of the discovery process and without offering you any legal
advice, I suggest that you consider the option of filing an
interpleader action to the extent that you desire to protect yourself
against any suit threatened by Ekman.  (Exhibit O to Ettelman
Aff.)

Accordingly, this Court must rule as a matter of law Graphic Paper has met its burden

that Ekman has committed tortious interference and that Graphic is entitled to indemnification

from U.S. Bank if Graphic is determined to be liable to Ekman as a result of the Inventory

Claims.

### III.   U.S. BANK'S MISTATEMENTS OF LAW<br>CONCERNING TORTIOUS INTERFERENCE

U.S. Bank asserts that Graphic's claim for indemnification based on tortious interference

with contract should be dismissed because its "legitimate" use of a collection tool cannot

constitute a tort.  This is a clear misstatement of the law, and in fact all of the cases cited by U.S.

Bank are factually and legally inapposite because they concern claims based on tortious

interference with prospective economic advantage, abuse of process, or defamation, all of which

require an element of illegal or wrongful conduct.  *See White Plains Coat & Apron Co., Inc. v.*

*Cintas Corp.*, 8 N.Y.3d 422, 425-26, 867 N.E.2d 381, 383 (2007) ("While New York law

recognizes the tort of interference with both *prospective* and *existing* contracts, 'greater

protection is accorded an interest in an existing contract (as to which respect for individual

contract rights outweighs the public benefit to be derived from unfettered competition) than to

the less substantive, more speculative interest in a prospective relationship (as to which liability

will be imposed only on proof of more culpable conduct on the part of the interferer).'")

For instance, U.S. Bank cites to the case of *Caplan v. Tofel*, 65 A.D.3d 1180, 1181, 886

N.Y.S.2d 182 (2d Dep't 2009) for the proposition that a claim for tortious interference with

contract cannot be sustained based on the "legitimate use of a collection tool."  However, as is

clearly stated by the Court in the very first line of *Caplan*, the case concerned "abuse of process

and tortious interference with **prospective economic advantage**," and not tortious interference

with existing contract.  *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614,

621, 664 N.E.2d 492, 495-96 (1996)(internal citations omitted) ("Where there has been no

breach of an existing contract, but only interference with prospective contract rights, however,

plaintiff must show more culpable conduct on the part of the defendant."), *also Joan Hansen,*

296 A.D.2d at 111 ("Intentional interference with business relations requires a demonstration

that the individual defendant "intentionally and through wrongful acts prevented a third party

from extending a contractual relationship to the plaintiff.")

Moreover, U.S. Bank also cites to *Caribbean Const. Services & Associates, Inc. v. Zurich

Ins. Co.*, 267 A.D.2d 81, 83, 700 N.Y.S.2d 129 (1st Dep't1999) and M*itchell v. Kurtz*, 10 Misc.

3d 1063(A), 814 N.Y.S.2d 562 (Sup. Ct. N.Y. Co. 2005) for a similar proposition.  However,

*Caribbean Const.* concerned "abuse of process, bad faith, intentional interference with business

relations, prima facie tort and disparagement," all of which are different torts with different

standards that require an element of illegal or wrongful conduct.  *Caribbean Const. Services &

Associates, Inc. v. Zurich Ins. Co.*, 267 A.D.2d 81, 83, 700 N.Y.S.2d 129 (1999).  Similarly, in

*Mitchell*, the issue before the Court was the tort of abuse of process and not tortious interference

with contract, which as stated above, only requires that U.S. Bank's interference be "unjustified."

15

Accordingly, U.S. Bank's position that Graphic was required to demonstrate that U.S. Bank acted wrongfully or illegally to prove tortious interference with contract is simply not supported by the case law.  All that Graphic was required to demonstrate was that U.S. Bank's action were "unjustified."  In this regard, U.S. Bank's actions were clearly unjustified because it had no evidence to support its service of the Restraining Notice and its subsequent refusal to permit Graphic to pay Ekman the Interpleader Stake.

## IV.    US BANK WAS NOT A CREDITOR AND NOT ENTITLED TO THE AFFIRMATIVE DEFENSE OF ECONOMIC JUSTIFICATION

U.S. Bank also wrongly relies on the defense of economic justification for its position that Graphic is required to demonstrate that U.S. Bank acted "maliciously."  "Under this defense, where a third party has an 'economic interest' in an entity and interferes with an existing contractual relationship between the plaintiff and that entity, such interference is considered privileged and the plaintiff must show malice or illegality in order to establish a tortious interference claim."  *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 283 (2d Cir. 2006).  However, in order to constitute an "economic interest" a party must have an "equal or superior right."  *White Plains,* 460 F.3d at 28; *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426, 867 N.E.2d 381, 383-84 (2007) ("The defense has been applied, for example, where defendants were significant stockholders in the breaching party's business; where defendant and the breaching party had a parent-subsidiary relationship; where defendant was the breaching party's creditor; and where the defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff")

In support, U.S. Bank cites to numerous cases where a creditor was permitted to rely on the defense of "economic justification."  The basis for this rule is that a creditor has "an equal or superior right" to any other creditor.  *See generally White Plains Coat & Apron Co., Inc. v.*

16

*Cintas Corp.*, 8 N.Y.3d 422, 426-27, 867 N.E.2d 381, 384 (2007) ("When the defendant is simply a competitor of the plaintiff seeking prospective customers and plaintiff has a customer under contract for a definite period, **defendant's interest is not equal to that of plaintiff** and would not justify defendant's inducing the customer to breach the existing contract.") (Emphasis added).  However, unlike the cases cited by U.S. Bank, U.S. Bank is not a creditor of either Ekman or Graphic.  Moreover, U.S. Bank also does not have any "economic interest" in Ekman or Graphic.  In fact, if U.S. Bank was a creditor and had an economic interest in either Ekman or Graphic, it would have had the right to claim the Interpleader Stake, which it admittedly relinquished when it settled with Ekman.  Thus, at the time of U.S. Bank's tortious interference it was a legal stranger to both Ekman and Graphic.  Accordingly, U.S. Bank cannot rely on the defense of economic justification because it did not have "equal or superior rights" that it was protecting; it had no rights.

## V.      U.S. BANK MISTATES THE LAW REGARDING INDEMNIFICATION

U.S. Bank asserts that Graphic's claim against it for indemnification cannot be sustained because "U.S. Bank has no separate duty running directly to Ekman that the form the basis of a claim for indemnification."  In support, U.S. Bank not only takes several federal trial court decisions out of context, but also ignores relevant decisions by the New York Court of Appeals. In particular, in *Raquet v. Braun*, 90 N.Y.2d 177, 183, 681 N.E.2d 404, 407 (1997), the New York Court of Appeals stated that "[t]his Court has previously recognized causes of action for contribution or indemnification against parties who were insulated from liability to the injured plaintiff **because of a lack of duty.**"  (Emphasis added).  In fact, in *Raquet*, the Court stated that "[w]e conclude that a third-party action for indemnification or contribution lies in these circumstances, even though the injured firefighter would not have a direct cause of action against

the third-party defendant." *Raquet v. Braun*, 90 N.Y.2d 177, 180-81, 681 N.E.2d 404, 405-06 (1997).  Thus, it is simply wrong for U.S. Bank to assert that Graphic was required to demonstrate that U.S. Bank owed Ekman a duty.

In fact, "[t]he duty that forms the basis for the liability arises from the principle that every one is responsible for the consequences of his own negligence, and if another person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him." *Raquet v. Braun*, 90 N.Y.2d 177, 183, 681 N.E.2d 404, 407 (1997)); *George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 929-30, 878 N.Y.S.2d 143, 148 (2009) ("The principle of common-law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party"); *George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 929-30, 878 N.Y.S.2d 143, 148 (2009); *McDermott v. City of New York*, 50 N.Y.2d 211, 217, 406 N.E.2d 460, 462 (1980).  This is because "[i]mplied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Mas v. Two Bridges Associates by Nat. Kinney Corp.*, 75 N.Y.2d 680, 690, 554 N.E.2d 1257 (1990).

Unable to support its legal contentions that indemnification should be dismissed because of a lack of duty, U.S. Bank next attempts to place blame on the Graphic for not making payment to Ekman.  However, such an argument is simply incredulous.  This is because it has been U.S. Bank's repeated position in this case that in fact the Restraining Notice prevented Graphic from making payment to Ekman. U.S. Bank even filed a cross-claim and counterclaim against Graphic and Ekman seeking declaratory relief that the Restraining Notice properly applied to the Interpleader Stake.   The simple fact is that U.S. Bank served an overly broad Restraining Notice

18

that listed 97 affiliates (including Paper Max) and that restrained "all debts coming due from Graphic to the Judgment Debtors, its affiliates and/or agents," and then followed up that Restraining Notice by refusing to permit Graphic to make payment Ekman and telling Graphic to file an interpleader action.  For U.S. Bank to insist that anyone other than itself is responsible when it served an improper Restraining Notice without necessary evidence to sustain its burden against Ekman is the height of hypocrisy.

Accordingly, Graphic has clearly met its burden that it is entitled to indemnification from U.S. Bank if Graphic is held liable to Ekman, and therefore requests that this Court deny the instant motion.

## CONCLUSION

For all of the reasons set forth herein, it is respectfully submitted that this Court deny the motion for summary judgment filed by U.S. Bank National Association.

Dated: Garden City, New York
February 15, 2012

ETTELMAN & HOCHHEISER, P.C.

By:_____ s/ Gary Ettelman_____
Gary Ettelman
Joshua S. Stern
Attorneys for Interpleader Plaintiff
100 Quentin Roosevelt Blvd., Suite 401
Garden City, New York 11530
(516) 227-6300

19