UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
EKMAN & CO AB.,                                                  :   ECF Case
                                                                 :
                              Plaintiff.                         :   Case No. 10 CV 8110 (JGK)
                                                                 :
        -against-                                                :
                                                                 :
GRAPHIC PAPER, INC.,                                             :
                                                                 :
                              Defendant.                         :
                                                                 :
---------------------------------------------------------------- X
GRAPHIC PAPER, INC.,                                             :
                                                                 :
                              Interpleader Plaintiff.            :
                                                                 :
        vs.                                                      :
                                                                 :
EKMAN & CO AB. and  U.S. BANK NATIONAL                           :
ASSOCIATION                                                      :
                                                                 :
                              Interpleader Defendants.           :
                                                                 :
---------------------------------------------------------------- X


**REPLY MEMORANDUM OF U.S. BANK NATIONAL ASSOCIATION
IN FURTHER SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT DISMISSING THE CROSS-CLAIM OF
<u>DEFENDANT/INTERPLEADER PLAINTIFF GRAPHIC PAPER, INC.</u>**


                                         Joseph Zelmanovitz, *Of Counsel*
                                         Jessica Taran
                                         WILK AUSLANDER LLP
                                         1515 Broadway, 43rd Floor
                                         New York, New York 10036
                                         (212) 981-2300

                                         *Attorneys for Interpleader Defendant
                                         U.S. Bank National Association*

589606v2

Table of Contents

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| THE FACTS | 1 |
| ARGUMENT | 4 |
|     POINT I. GRAPHIC IS NOT ENTITLED TO INDEMNIFICATION FROM U.S. BANK AS A MATTER OF LAW | 4 |
|     POINT II. U.S. BANK SET FORTH THE CORRECT LEGAL PRINCIPLES GOVERNING TORTIOUS INTERFERENCE WITH CONTRACT AS APPLICABLE TO THIS CASE | 9 |
|     POINT III. THERE CAN BE NO GENUINE DISPUTE THAT U.S. BANK HAD ECONOMIC JUSTIFICATION FOR SERVING THE RESTRAINING NOTICE | 10 |
| CONCLUSION | 11 |

Table of Authorities

Page

**CASES**

*Caplan v. Tofel*
   65 A.D.3d 1180, 886 N.Y.S.2d 182 (2d Dep't 2009) .................................................................. 9

*Caribbean Construction Services & Associates, Inc. v. Zurich Ins. Co.*
   267 A.D.2d 81, 700 N.Y.S.2d 129 (1st Dep't 1999) ................................................................... 9

*Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd., et. al.*,
   Case No. 03 Civ. 08554 .............................................................................................................. 8

*George v. Marshalls of MA, Inc.*
   61 A.D.3d 925, 878 N.Y.S.2d 143 (2d Dep't 2009) ................................................................... 6

*Mas v. Two Bridges Assoc.*
   75 N.Y.2d 680, 555 N.Y.S.2d 669 (1990) ............................................................................. 4, 5

*McDermott v. City of New York*
   50 N.Y.2d 211, 428 N.Y.S.2d 643 (1980) ................................................................................. 6

*Mitchell v. Kurtz*
   10 Misc. 3d 1063A, 814 N.Y.S.2d 562 (Sup. Ct., N.Y. Co., 2005).................................... 9, 10

*O'Neill v. Ithaca College O'Neill v. Ithaca College*
   18 Misc. 3d 1113A, 856 N.Y.S.2d 500 (Sup. Ct., Tomkins Co., 2007) .................................. 5

*Raquet v. Braun*
   90 N.Y.2d 177, 659 N.Y.S.2d 237 (1997) ................................................................................. 5

*Rosado v. Proctor & Schwartz, Inc.*
   66 N.Y.2d 21, 494 N.Y.S.2d 851 (1985) ................................................................................... 5

*Sommer v. Federal Signal Corp.*
   79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992) ................................................................................. 6

*White Plains Coat & Apron Co. v. Cintas Corp.*
   8 N.Y.3d 422, 835 N.Y.S.2d 530 (2007) ............................................................................ 7, 11

*White Plains Coat & Apron Co., v. Cintas Corp.*
   460 F.3d 281 (2d Cir. 2006) ..................................................................................................... 10

**RULES**

New York Civil Practice Law and Rules § 5222 ............................................................... 1, 9, 10

This memorandum is respectfully submitted on behalf of interpleader defendant U.S. Bank National Association ("U.S. Bank") in reply to the opposition of defendant/interpleader plaintiff Graphic Paper, Inc. ("Graphic") to U.S. Bank's motion for summary judgment dismissing Graphic's cross-claim for indemnification, and in further support of U.S. Bank's motion.

## PRELIMINARY STATEMENT

Graphic cannot avoid the well-established principle that the legitimate use of a restraining notice under C.P.L.R. § 5222 cannot serve as the basis for any tort claim, whether denominated as abuse of process or tortious interference.  Nor can Graphic avoid the well-established principle that a claim for common-law indemnification will not lie where no duty is owed to either the indemnitee (Graphic) or the plaintiff (Ekman & Co AB. ("Ekman")).  U.S. Bank was eminently justified in serving the "Restraining Notice"[1] under the circumstances, and the propriety of its actions was confirmed when Graphic itself expressed its concerns to Ekman and U.S. Bank that the Restraining Notice might apply to the funds at issue.

Accordingly, Graphic's cross-claim for indemnification should be dismissed.

## THE FACTS

The relevant facts have previously been set forth at length in the moving papers and in the "Memorandum of U.S. Bank National Association in Opposition to Motion for Summary Judgment by Graphic Paper, Inc.," dated February 15, 2012, to which the Court is respectfully referred.  The following addresses some of the misstatements contained in Graphic's

---

[1] Defined terms in this memorandum have the same definitions as set forth in the "Memorandum of U.S. Bank National Association in support of its Motion for Summary Judgment Dismissing Cross-Claims," dated January 18, 2012 (the "moving papers"), unless otherwise stated.

589606v2

memorandum in opposition to U.S. Bank's motion ("Graphic Mem."), as well as some of the points Graphic concedes that support the granting of U.S. Bank's motion.

Graphic misleads the Court when it suggests that "U.S. Bank admits that under the terms of the Restraining Notice Graphic Paper would have been enjoined from paying Paper Max (or any other affiliate or agent of Asia Pulp & Paper, Ltd.)."  (Graphic Mem. at 5).  That is false.  Graphic's support for this so-called admission is paragraph 3 of the moving declaration of Joseph Zelmanovitz, U.S. Bank's attorney.  As made very clear from that paragraph in the Zelmanovitz Declaration,[2] the phrase "Restraining Notice" as used in that paragraph is a defined term: it is defined to include both the Restraining Notice and the subpoena *duces tecum* (the "Subpoena") served concurrently with it.  It is improper for Graphic to repeatedly refer to that paragraph of the Zelmanovitz Declaration and label the statement there an admission made by U.S. Bank without even once informing the Court that the subject paragraph refers to the definition in the Subpoena (which is included as part of the defined term "Restraining Notice").

Indeed, as set forth in Response No. 11 of U.S. Bank's response to Graphic's statement pursuant to Local Rule 56.1, Graphic misreads the actual Restraining Notice.  "Judgment Debtors" is defined in the Restraining Notice as including the judgment debtor entities *only*.  It also cannot be disputed that this was explained by U.S. Bank's counsel to Graphic's counsel before the lawsuit was commenced.  (*See* Zelmanovitz Declaration, Exh. N.)  Graphic confuses (deliberately or innocently) the definitions that appear in the "Definitions" section of the Subpoena with the definition of "Judgment Debtors" that appears in the Restraining Notice.

---

[2]  References to the "Zelmanovitz Declaration" or "Zelmanovitz Dec." are to the "Declaration of Joseph Zelmanovitz in Support of Interpleader Defendant U.S. Bank National Association's Motion for Summary Judgment," dated January 18, 2012.

589606v2

Graphic's statement of "facts" also highlights a number of concessions on its part that show that Graphic's withholding of payment from Ekman was attributable, to a great extent, to its own concerns that Ekman was acting on behalf of the Judgment Debtors.  Graphic became concerned that it faced exposure as a result of the Restraining Notice, in part, because of "the fact that Paper Max had a known connection with APP"[3] and "the circuitous nature of the transaction."  (Graphic Mem. at 5).  In addition, according to Graphic, Ekman refused to provide indemnification to Graphic, which apparently was problematic for Graphic because that refusal indicated that Ekman may have been complicit with the Judgment Debtors in acting affirmatively to render the Judgment Debtors judgment proof, and avoid having their assets seized in satisfaction of U.S. Bank's Judgment, which now exceeds $1.2 billion.  (Graphic Mem. at 5).  Graphic also points to the "unnecessarily adversarial and secretive dealings of Paper Max" (Graphic Mem. at 6) and that Paper Max was unwilling to have a corporate officer execute an affidavit that would satisfy Graphic.  (Graphic Mem. at 6-7).

Most importantly, by its interpleader complaint, Graphic voiced its concerns that Ekman was acting as an agent for the Judgment Debtors:

> 20. Graphic Paper is concerned that either or both of Paper Max or Ekman may be an agent for one or more of the Judgment Debtors because Graphic Paper believes that the ultimate source of the product in issue is one or more of the Judgment Debtors….

(Zelmanovitz Dec., Exh. D., Interpleader Complaint ¶ 20).

---

[3] "APP" refers to Judgment Debtor Asia Pulp & Paper Co., Ltd.

Graphic also quotes U.S. Bank's correspondence to Graphic's counsel, which makes it very clear that what Graphic decided to do with respect to the Restraining Notice was a matter of its own choosing, based on the advice of its own legal counsel.  (Graphic Mem. at 7).

Finally, Graphic does not dispute the statements made by its own counsel, Joel L. Morgenthau, Esq., at his October 5, 2011 deposition, that U.S. Bank neither threatened Graphic with a lawsuit, nor stated that Ekman was an "affiliate" of the Judgment Debtors.  (Zelmanovitz Dec., Exh. M, at 130-32).

In sum, the facts and the law support the dismissal of Graphic's cross-claim as a matter of law.

## ARGUMENT

### POINT I.

### GRAPHIC IS NOT ENTITLED TO INDEMNIFICATION FROM U.S. BANK AS A MATTER OF LAW

In U.S. Bank's memoranda in support of its motion for summary judgment and in opposition to Graphic's motion for summary judgment, we demonstrate that Graphic has no claim for indemnification as a matter of law because there is no duty running between U.S. Bank and Graphic or Ekman.  None of the cases cited by Graphic in opposition to U.S. Bank's motion supports a departure from this basic principle.  As we explain below, in each of the cases cited by Graphic, each involving personal injury claims, the indemnitor owed a duty to the indemnitee.

Thus, in *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 555 N.Y.S.2d 669 (1990), cited by Graphic (Graphic Mem. at 10), the plaintiff sustained injuries when she attempted to escape an elevator stuck between floors in her apartment building.  She then commenced an action against the owner and managing agent of the apartment building, as well as the elevator company

contracted by the owner to maintain the elevator.  The Court of Appeals affirmed the trial court's finding that the owner was entitled to indemnification from the elevator company and held, among other things, that "the trial court correctly ruled that [the elevator company] had undertaken the duty to remove the elevator from service if it had a notice of the problem." *Id.* at 688.

In *Raquet v. Braun*, 90 N.Y.2d 177, 659 N.Y.S.2d 237 (1997), cited by Graphic (Graphic Mem. at 10), representatives of a firefighter who was killed and another who was injured by a building's collapse during a fire sued the owner of the building, the tenant, and the contractor who designed and built the addition of the building that collapsed.  In reversing the lower court's order that, among other things, denied the owner's motion to amend his answer to include cross-claims for indemnification against the contractor, the Court of Appeals held expressly that the "key element of a common-law cause of action for indemnification … is a separate duty owed the indemnitee by the indemnitor." *Id.* at 183 (internal quotations omitted).

As later clarified by the court in *O'Neill v. Ithaca College*, *Raquet* does not create an automatic duty running from the indemnitor to the indemnitee; "it merely holds that a claim of contribution [which claim is not asserted by Graphic][4] may be asserted when a duty running from the contributor to the defendant who has been held liable exists."  *O'Neill v. Ithaca College*, 18 Misc. 3d 1113A, 856 N.Y.S.2d 500 (Sup. Ct., Tomkins Co., 2007).  If the duty violated was not one owed directly to the injured person, "an independent obligation [must] be found on the part of a concurrent wrongdoer to prevent foreseeable harm" for that wrongdoer to be held responsible for that part of the damage attributable to his negligence.  *Sommer v. Federal*

---

[4]  By its cross-claim in our case, Graphic does not seek "contribution," which is a request to allocate fault among tortfeasors and have joint tortfeasors "pay a proportionate share of the loss to one who has discharged their joint liability… ." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 853 (1985).  Instead, Graphic seeks "indemnification," which is an attempt to shift its entire "loss to another," here U.S. Bank. *Id.*

589606v2

*Signal Corp.*, 79 N.Y.2d 540, 559, 583 N.Y.S.2d 957, 966 (1992).  There is no such "independent obligation" in our case as a matter of law.

In *George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 878 N.Y.S.2d 143 (2d Dep't 2009), cited by Graphic (Graphic Mem. at 10), the plaintiff slipped and fell on a wet floor as she was entering a store.  She then commenced an action to recover damages for personal injury against the store and the store's cleaning contractor and subcontractor.  Although there appeared to be a duty running to the store from its contractors, the Appellate Division held, among other things, that the store was not entitled to summary judgment on its cross-claims for indemnification against its contractor and subcontractor and noted that to succeed on its cross-claims for indemnification, the store would have to show that the contractor and subcontractor were "responsible for the negligence that contributed to the accident."  *Id.* at 930 (internal citation omitted).

And, in *McDermott v. City of New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643 (1980), cited by Graphic (Graphic Mem. at 10), the plaintiff, an employee of the City of New York, sued the City after his arm was severed by a sanitation truck.  The city brought a third party action, seeking indemnification against the manufacturer of the body and the hopper of the truck on the grounds of products liability.  The Court of Appeals reversed the dismissal of the third party action, which had been ordered by the trial court on the basis of the expiration of the statute of limitations.

In attempting to fashion an unprecedented claim for indemnification against U.S. Bank based on tortious interference with contract, Graphic contends, without any support in the law, that "U.S. Bank was required to possess evidence before it served a restraining notice," and that because U.S. Bank was allegedly unable to demonstrate that it has a rightful claim to the

Interpleader Stake, its acts were "unjustified" for purposes of tortious interference with contract. (Graphic Mem. at 12).  Graphic's contention is incorrect both on the law and in light of the undisputed facts.

First, U.S. Bank was economically justified in serving the Restraining Notice, because it is a creditor holding a billion-plus-dollar Judgment against Judgment Debtors who transacted business with Ekman, indirectly if not directly.  As stated by the New York Court of Appeals, in response to a claim for tortious interference "a defendant may raise the economic interest defense – that it acted to protect its own legal or financial stake in the breaching party's business." *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426, 835 N.Y.S.2d 530, 532 (2007).

Second, it was Graphic itself which raised concerns to U.S. Bank and to Ekman about Ekman's acting on behalf of the Judgment Debtors.

Third, the fact that U.S. Bank and Ekman decided to settle their claims does not mean that there is no evidence that the "Interpleader Stake" may be subject to the Restraining Notice. Indeed, Graphic itself points out some of this evidence: the "circuitous" nature of the transactions (i.e., shipments from Great Champ Trading, Ltd., a Hong Kong entity ("Great Champ"), of paper obtained from the Judgment Debtors to Judgment Debtors' affiliate, Paper Max) and that Paper Max was listed on the Ekman-Graphic bills of lading as the "Notify Party/Intermediate Consignee."  (*See* Graphic Mem. at 3.)  The record is replete with additional "evidence," such as: (i) the deposition testimony of Ekman's officer, James Peiffer, who testified to the effect that there must be a relationship between Paper Max and Great Champ and between Paper Max and Judgment Debtor APP[5]; (ii) the findings of the United States International Trade

---

[5] A copy of the relevant excerpt from the transcript of the deposition of James Peiffer is attached to the accompanying Reply Declaration of Joseph Zelmanovitz dated February 29, 2012 ("Zelmanovitz  Reply Dec." or "Zelmanovitz Reply Declaration"), as Exhibit A.

-7-

Commission that Paper Max is an affiliate of APP[6]; and (iii) the order of Judge Pogue in *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd., et. al.*, (Case No. 03 Civ. 08554), dated January 19, 2010, that money owed to a trading company operating similarly to Great Champ here is essentially money owed to the judgment debtors (specifically, in that case, Tjiwi Kimia, one of the paper manufacturers under the APP umbrella of companies) and thereby subject to the reach of judgment creditors.[7]  Indeed, the very fact that no one at Ekman could testify as to how its business relationship with Great Champ even began -- despite millions of dollars in transactions -- suggests that Great Champ, like Galaxy International Trading, Ltd. in the case before Judge Pogue, is an alter ego of the Judgment Debtors.

Of course, there should be no need to address this evidence given the settlement between Ekman and U.S. Bank.  Indeed, what Graphic seeks, unfairly, is for Ekman and U.S. Bank to adjudicate the effect of the evidence, despite their settlement.  Graphic argues, without any supporting legal authority, that in order to render the Restraining Notice valid, "evidence" was required that the subject funds belonged to the Judgment Debtors.  Not only is Graphic's premise unsupported, but in addition, we know of no legal authority that requires such a "mini-trial" in order to assess whether a creditor's restraining notice is proper.

Graphic also mischaracterizes U.S. Bank's counsel's statement to the Court, describing it as an "admission" that U.S. Bank's conduct was "intentional and undertaken with the purpose of preventing Graphic from making payment to Ekman." (Graphic Mem. at 13).  Those statements were made after the action had already been commenced and do not bear on whether service of

---

[6]  A copy of the pertinent excerpt from the report of the United States International Trade Commission is attached to the Zelmanovitz  Reply Declaration as Exhibit B.

[7]  A copy of the January 19, 2010 order of Judge Pogue is attached to the Zelmanovitz  Reply Declaration as Exhibit C.

-8-

the Restraining Notice was justified.[8]  Moreover, it cannot be disputed that U.S. Bank's counsel stated expressly to all parties that U.S. Bank was seeking to restrain payments subject to the Restraining Notice.  (*See* Taran Decl., Exh. A., p. 20.)

### POINT II.

### U.S. BANK SET FORTH THE CORRECT LEGAL PRINCIPLES GOVERNING TORTIOUS INTERFERENCE WITH CONTRACT AS APPLICABLE TO THIS CASE

Graphic attempts, unsuccessfully, to distinguish the case law cited by U.S. Bank in its moving papers, which holds that the legitimate use of a restraining notice under C.P.L.R. § 5222 cannot give rise to a claim for tortious interference with contract under New York law: *Caplan v. Tofel*, 65 A.D.3d 1180, 886 N.Y.S.2d 182 (2d Dep't 2009); *Caribbean Construction Services & Associates, Inc. v. Zurich Ins. Co.*, 267 A.D.2d 81, 700 N.Y.S.2d 129 (1st Dep't 1999); and *Mitchell v. Kurtz*, 10 Misc. 3d 1063A, 814 N.Y.S.2d 562 (Sup. Ct., N.Y. Co., 2005).  Graphic's argument, that the holding in *Caplan* and *Caribbean* should not apply because they dealt with a claim for tortious interference with prospective economic advantage and other torts, as opposed to interference with contract (Graphic Mem. at 15), misses the point.  As stated expressly by the Court: the "legitimate use of a collection tool *did not constitute a tort.*"  *Caplan*, 65 A.D.3d at 1181, 886 N.Y.S.2d at 183 (quoting *Caribbean Construction Services*, 267 A.D.2d at 83, 700 N.Y.S.2d at 129) (emphasis added).  The courts make no distinction as between torts; simply put, the legitimate use of a restraining notice pursuant to C.P.L.R. § 5222 cannot and does not create liability under a tort theory.

Similarly, in *Mitchell*, which Graphic attempts to distinguish because it involves the tort of abuse of process, the court repeated this point: the legitimate use of a restraining notice is *not*

---

[8]  U.S. Bank's counsel never stated that a lawsuit against Graphic would be commenced.  That, of course, depended on the evidence.  Indeed, had Ekman admitted its complicity with the Judgment Debtors in serving as their "front," Graphic could not contend in good faith that the funds at issue were not properly restrained.

589606v2

*tortious*.  10 Misc. 3d 1063 A, at *5.  In fact, in *Mitchell* the Court ordered a hearing for Plaintiff's counsel to show cause why he should not be sanctioned for, among other things, asserting, on behalf of plaintiff, the frivolous causes of action of abuse of process and defamation, both of which were predicated upon the service of a restraining notice pursuant to C.P.L.R. § 5222.

## POINT III.

### THERE CAN BE NO GENUINE DISPUTE THAT U.S. BANK HAD ECONOMIC JUSTIFICATION FOR SERVING THE RESTRAINING NOTICE

Graphic attempts to add a new requirement to the application of the economic justification defense to a tortious interference claim: that the defendant must have an equal or superior right to the property.  (Graphic Mem. at 16).  None of the cases cited on this point by Graphic go so far as to establish such a requirement.  (Graphic Mem. at 16).  The first case it cites, *White Plains Coat & Apron Co., v. Cintas Corp.*, 460 F.3d 281 (2d Cir. 2006), dealt with a question of law which, according to the Second Circuit, had not been previously addressed sufficiently by the New York courts: whether a generalized economic interest of a competitor soliciting business for profit can constitute a defense to a claim for tortious interference with contract.  The court referred the question to the New York Court of Appeals, but in doing so, indicated that there was no question as to the existence of the economic justification defense, only a question as to whether it applied to a competitor tortiously interfering with its competitor's contract in order to profit from that business.  *Id.* at 286.  In the second case cited by Graphic, the New York Court of Appeals answered the question in the negative, but indicated that the defense applied across a broad spectrum of situations where the protection of the party's economic interest is the key, such as "where defendant was the breaching party's creditor," as opposed to a defendant motivated by a profit-driven purpose.  *White Plains Coat & Apron Co., v.*

-10-

589606v2

*Cintas Corp.*, 8 N.Y.3d 422, 426, 835 N.Y.S.2d 530, 533 (2007).  The logic is plain: a competitor desiring to profit at the expense of its competitor interfering with its competitor's contract cannot use the economic justification defense.  In that instance, the claim for tortious interference with contract may be appropriate.  But a party that acts solely as a creditor protecting its economic interest -- as U.S. Bank has done here -- may not be held liable for tortious interference to the extent that its actions are economically justified.

## CONCLUSION

For the reasons set forth above, U.S. Bank's motion for summary judgment dismissing Graphic's cross-claim should be granted.

Respectfully submitted,

Dated: New York, New York
February 29, 2012

WILK AUSLANDER LLP

By: /s/ Jessica Taran
Jessica Taran (JT-1978)
jtaran@wilkauslander.com
Joseph Zelmanovitz (JZ-0085), *Of Counsel*
jzelmanovitz@wilkauslander.com
1515 Broadway, 43rd Floor
New York, New York 10036
(212) 981-2300

*Attorneys for Interpleader Defendant
U.S. Bank National Association*

-11-

589606v2