UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
EKMAN & CO AB,

                Plaintiff,

  –against –

GRAPHIC PAPER, INC.,

                Defendant.
-----------------------------------------------------------------x
GRAPHIC PAPER, INC.,

                Interpleader Plaintiff,

  -against-

EKMAN & CO AB, and
U.S. BANK NATIONAL ASSOCIATION,

                Interpleader Defendants.
-----------------------------------------------------------------x

Case No. 10 CV 8110 (JGK)

**ORAL ARGUMENT
REQUESTED**

**PLAINTIFF-INTERPLEADER DEFENDANT EKMAN & CO AB'S REPLY TO
GRAPHIC PAPER'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION
FOR SUMMARY JUDGMENT FILED BY EKMAN & CO AB**

DM1\3127640.21

**Contents**

**TABLE OF AUTHORITIES** .................................................................................................. iii

**SUMMARY OF ARGUMENT** ..............................................................................................1

I.     **EKMAN AB IS ENTITLED TO RECOVERY FROM GRAPHIC'S BREACH OF CONTRACT** ....................................................................................2

       A.    Graphic Could Have Eliminated Any Damage Claims Against It By Paying Cash For The Diverted Goods Or Requiring A Specification From U.S. Bank. .................................................................................................... 3

       B.    Ekman AB Mitigated Damages, While Graphic Exacerbated Damages. ..................................................................................................... 3

II.    **FEDERAL RULE OF EVIDENCE 408 PERMITS DISCLOSURE OF EKMAN AB'S OFFER OF LOSS INDEMNIFICATION TO GRAPHIC** ..................5

       A.    Ekman AB's Reference To The Counter-Proposal Is Admissible Under the Doctrine of Curative Admissibility Because Graphic Made The Subject Of Indemnification An Issue. ......................................................... 5

       B.    Graphic Waived Any Objection To The Counter-Proposal's Admissibility By Failing To Object To Its Previous Admission ....................... 7

III.   **EKMAN AB OFFERED SUFFICIENT ADMISSIBLE EVIDENCE TO PROVE ITS PRIMA FACIE CASE FOR DAMAGES** ...............................................8

**CONCLUSION** ....................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 997 (2d Cir. 1988) ...................................2

*Bell v. Constr. & Gen. Bldg. Laborers' Local*, No. 04 Civ. 6520, 2011 U.S. Dist. LEXIS 95956 (S.D.N.Y. Aug. 24, 2011) ...................................................................................................6

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919 (2d Cir. 1985) ...........................................................................................................................................10

*Capobianco v. City of New York*, 422 F.3d 47 (2d Cir. 2005) ...................................................6

*D. R. I., Inc. v. Dennis*, 2006 U.S. Dist. LEXIS 85170 (S.D.N.Y. Aug. 3, 2006) .........................8

*ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383 (S.D.N.Y. 1999) ...............6

*Gene Codes Forensics, Inc. v. City of New York*, 2011 U.S. Dist. LEXIS 72130 (S.D.N.Y. June 24, 2011) .........................................................................................................................10

*Hogan v. City of New York*, 396 Fed. App'x. 765 (2d Cir. 2010) ..............................................7

*Krieger v. Gold Bond Bldg. Prods.*, 863 F.2d 1091 (2d Cir. 1988) ............................................7

*Lugran v. J. Arrowsmith Broadway, Inc.*, No. 80 Civ. 0863-CLB, 1981 U.S. Dist. LEXIS 12224 (S.D.N.Y. Mar. 27, 1981) .................................................................................................8

*North American Foreign Trading Corp. v. Unisonic Products Corp.*, 697 F. Supp. 163 (S.D.N.Y. 1988) ............................................................................................................................3

*Orchard Enterprises NY, Inc. v. Megabop Records Ltd.*, 09 Civ. 9607 (GBD)(GWG), 2012 U.S. Dist. LEXIS 3245 (S.D.N.Y. January 9, 2012) ...........................................................8

*Paolitto v. Brown E.&C. Inc.*, 151 F.3d 60 (2d Cir. 1998) .........................................................6

*Pierce v. F.R. Tripler & Co*, 955 F.2d 820 (2d Cir. 1992) .........................................................6

*Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989) ..............9

*United States v. One Star Class Sloop Sailboat*, 546 F.3d 26 (1st Cir. 2008) ...........................7

*United States v. Papadakis*, 510 F.2d 287 (2d Cir. 1975) .........................................................7

*United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) ..................................................................6

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ....................................................................6

**Statutes**

N.Y. U.C.C. § 2-609 ...................................................................................................................2

N.Y. U.C.C. § 2-703 ...................................................................................................................2

N.Y. U.C.C. § 2-706 ...................................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(C)(ii) .....................................................................................................9

Fed. R. Civ. P. 56(d) .................................................................................................................10

Fed. R. Evid. 408 .....................................................................................................................5-7

## SUMMARY OF ARGUMENT

Plaintiff-Interpleader Defendant Ekman & Co AB ("Ekman AB") submits this brief in reply to Defendant-Interpleader Plaintiff Graphic Paper, Inc. ("Graphic")'s Memorandum of Law in Opposition to Ekman's Motion for Summary Judgment ("Graphic's Opposition" or "Gr. Opp."), which, as a reflection of Graphic's desperation, attempts to turn fundamental rules of evidence and contract law on their heads. In its own Memorandum in Support of its Motion for Summary Judgment ("Ekman AB's Moving Brief" or "Ek. Mov. Br." at 20-22) and Opposition to Graphic's Motion for Summary Judgment ("Ekman AB's Opposition" or "Ek. Opp." at 17-19), Ekman AB has already demonstrated that it is entitled to pre-escrow contractual interest at a rate of 12%, and it makes no further argument on this issue here.

In trying to convince this Court that Ekman AB brought its Diverted Goods damages upon itself, Graphic fails to address the fact that it could have paid cash for the Diverted Goods and thus averted damages. Graphic also ignores the fact that it reneged on its agreement to pay Ekman AB if certain affidavits were provided when keeping its word would have also eliminated damages. It also ignores the fact that Graphic could have demanded a specification from U.S. Bank which would have protected Graphic *and* Ekman AB. Instead, it emphasizes Ekman AB's rejection of Graphic's original indemnification proposal (which was offered as an alternative to the affidavits) and asks the Court to ignore Ekman AB's subsequent counter-proposal (the "Counter-Proposal"), which would have foreclosed most if not all damages.

Seemingly at a loss to find any factual basis upon which to contest Ekman AB's claim for damages, Graphic grasps at on Ekman AB's most recent edition of a chart that Ekman AB produced to reflect the details of its resales (the "Inventory Calculation Chart" or "ICC"), arguing that the ICC is inadmissible and lacks a foundation. Graphic ignores the wealth of documentary evidence, including invoices reflecting storage charges and the resales themselves,

1

that Ekman AB has already produced in support of the information contained in the ICC so as to carry its burden of proof as to damages incurred as a result of Graphic's breach. To the extent that Ekman AB did not produce supporting documents that Graphic now wants to see, Graphic's Opposition was the first instance in which Graphic made Ekman AB aware of this supposed "deficiency." Ironically, Graphic did not even bother to respond to Ekman AB's offer to produce the witness who spearheaded the resale effort and created the ICC - - a deposition that would have eliminated the issue.

## ARGUMENT

### I. EKMAN AB IS ENTITLED TO RECOVERY FROM GRAPHIC'S BREACH OF CONTRACT

Ekman AB is entitled to damages under N.Y. U.C.C. section 2-609 because Ekman AB resold the goods in a commercially reasonable manner and mitigated damages appropriately. As more fully explained in Ekman AB's Opening Brief (Ek. Mov. Br. 23-25) and Ekman AB's Opposition (Ek. Opp. at 5-16), Ekman AB was justified in demanding adequate assurances from Graphic because it had reasonable grounds to be insecure about Graphic's performance and Graphic was unencumbered to provide such assurances. Graphic subsequently failed to provide adequate assurance and instead repudiated the contracts. Graphic's claim that "Ekman could have taken less costly and less damaging measures to protect itself" (Gr. Opp. at 11-12) ignores the fact that resale is not a remedy of last resort but a statutory right that a seller acquires after a buyer has breached the contract. N.Y. U.C.C. §§ 2-703, 2-706. Moreover, no New York court has ever required a seller to mitigate damages by indemnifying a party or quashing a restraining notice that does not even mention the seller; rather it is clear that the standard of commercial reasonableness refers to the "method, manner, time, place and terms" of the re-sale, not whether a seller who was the victim of a breach may resell *ab initio*. N.Y. U.C.C. § 2-706; *Apex Oil Co.*

2

*v. Belcher Co. of New York, Inc.*, 855 F.2d 997, 1005 (2d Cir. 1988). Ekman AB acted in a commercially reasonable manner in reselling the goods (Ek. Opp. at 12-15), informed Graphic of the resales (Ekman AB's Statement of Material Facts ("SMF") ¶¶ 62, 64, 65, 67, 71), and even offered Graphic the opportunity to depose a witness regarding Ekman AB's resales of the Diverted Goods (Ekman AB's Statement of Additional Material Facts ("SAMF") ¶ 44) - - an offer which Graphic pointedly ignored.

### A. Graphic Could Have Eliminated Any Damage Claims Against It By Paying Cash For The Diverted Goods Or Requiring A Specification From U.S. Bank

Graphic ignores the fact that it had the ability to eliminate any damage claims against it by paying cash for the Diverted Goods. The Restraining Notice did not affect cash payments for the Diverted Goods. (SAMF ¶ 36). Indeed, in July of 2011, prior to the Restraining Notice's expiration but nearly one year after the controversy began, Graphic offered to purchase those as-yet unsold quantities of the Diverted Goods from Ekman AB on terms of advance or simultaneous payment. (By this time, another customer had already provided a verbal commitment to purchase the goods. (SAMF ¶ 43).) Furthermore, Graphic could have demanded a specification from U.S. Bank which would have protected both Graphic *and* Ekman AB.

### B. Ekman AB Mitigated Damages, While Graphic Exacerbated Damages.

Under the legal standard for mitigation – and even under Graphic's grossly deformed interpretation of that standard – Ekman AB has sought to mitigate damages at every step of this dispute. The mitigation principle calls for the seller to act in a commercially reasonable manner, *see North American Foreign Trading Corp. v. Unisonic Products Corp.*, 697 F. Supp. 163, 166 (S.D.N.Y. 1988), which Ekman AB did by avoiding a "fire sale," separating the paper into batches rather than selling in bulk, and carefully designing a resale timeline that would enable Ekman AB to obtain the high price possible while minimizing incidental damages. (SAMF ¶¶

3

40, 41). Moreover, when presented by Graphic with three options to resolve the brewing dispute between Graphic and Ekman AB – moving to quash the Restraining Notice,[1] indemnifying Graphic,[2] or offering affidavits from Ekman AB and Paper Max in support of Ekman AB's contentions – Ekman AB in fact complied with Graphic's request by providing its affidavit and working with Graphic and Paper Max to successfully obtain a suitable affidavit and corporate resolution (all drafted by Graphic's counsel) from Paper Max. In doing so, Ekman AB pursued the course that it perceived to be the least expensive and most effective way of quickly resolving the dispute, since Graphic moving effectively to address its concern about whether a Judgment Debtor had any interest in the debt owed to Ekman would have deterred (or defeated) U.S. Bank at minimal cost.

Graphic could have pursued a number of inexpensive courses to avoid damages. Had Graphic honored its agreement to pay Ekman AB upon receipt of the Ekman AB and Paper Max affidavits, any litigation would have been avoided or curtailed on the basis of those very affidavits. Alternatively, as explained above, Graphic could have sought a specification from U.S. Bank or paid cash for the Diverted Goods. In addition, contrary to Graphic's assertions, Ekman AB provided Graphic with the Counter-Proposal with this Court's encouragement, which

---

[1] A poorly thought-out and expensive course of action, as Ekman AB lacked standing to make any such motion. To achieve Graphic's intended outcome, Ekman AB would have had to bring a declaratory judgment which would have mirrored the discovery and motion practice – and cost – of this action.

[2] An equally expensive proposition, as Ekman AB would have borne the full cost of defending what Graphic believed would be U.S. Bank's imminent lawsuit to recover the debt paid to Ekman AB, likely resulting in expenses commensurate to those expended in this action.

4

Graphic could have accepted and ended the dispute. Instead, Graphic now seeks to divert this Court's attention by emphasizing Ekman AB's rejection of Graphic's original indemnification proposal, while asking the Court to ignore Ekman AB's subsequent Counter-Proposal, the acceptance of which would have foreclosed most if not all damages.

## II.     FEDERAL RULE OF EVIDENCE 408 PERMITS DISCLOSURE OF EKMAN AB'S OFFER OF LOSS INDEMNIFICATION TO GRAPHIC

As discussed above, Ekman AB's making of the Counter-Proposal is merely one of several factors that directly refute Graphic's argument that Ekman AB allegedly failed to mitigate damages or act in a commercially reasonable manner. The fact that Graphic could have paid for the Diverted Goods in cash without violating the Restraining Notice is enough.

In a desperate and misguided attempt to divert attention from the true issue, Graphic now raises a baseless objection under Rule 408 in an attempt to silence one of Ekman AB's arguments on this issue. Contrary to Graphic's contentions, Rule 408 permits Ekman AB to introduce evidence reflecting its discussions with Graphic about indemnification and its subsequent Counter-Proposal because Graphic has repeatedly, through action and inaction, waived any objections to and even compelled the admissibility of the Counter-Proposal, even if the said evidence might ordinarily be inadmissible under Rule 408.

### A.    Ekman AB's Reference To The Counter-Proposal Is Admissible Under the Doctrine of Curative Admissibility Because Graphic Made The Subject Of Indemnification An Issue.

Under the doctrine of curative admissibility, Ekman AB's references to the Counter-Proposal are admissible. In essence, *Graphic cannot argue that its disclosure on the issue of indemnification is permitted under Rule 408, only to seek to muzzle Ekman AB as to the very same issue under the very same rule.* It is well-established that when one party introduces inadmissible evidence, that party "opens the door" and allows the opposing party to introduce

otherwise inadmissible evidence on the same issue in response.[3] *Bell v. Constr. & Gen. Bldg. Laborers' Local*, No. 04 Civ. 6520, 2011 U.S. Dist. LEXIS 95956, at **8-9 (S.D.N.Y. Aug. 24, 2011) (*quoting United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992)). This Court has discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence. *Paolitto v. Brown E.&C. Inc.*, 151 F.3d 60, 66 (2d Cir. 1998) (*quoting United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993)); *see also Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005); *Bell*, 2011 U.S. Dist. LEXIS 95956, at **8-9.

Here, Graphic "opened the door" to evidence of its indemnification discussions with Ekman AB and the Counter-Proposal because Graphic (a) in its pre-motion letter to this Court

---

[3] Graphic relies upon *Pierce v. F.R. Tripler & Co*, 955 F.2d 820 (2d Cir. 1992). (Gr. Opp. at 13). However, *Pierce* is distinguishable because the party opposing admissibility in that case did not "open the door," as Graphic did here. *Id.* Nevertheless, Graphic's citation to *Pierce* is ironic. Under the standard that *Pierce* established to determine whether a discussion is protected under Rule 408, Graphic's trifurcated proposal in 2010 should not be admitted into evidence because it was made by counsel in an effort to settle the suit that Ekman AB's counsel had threatened when Graphic refused to pay its debts because of its fantastical interpretation of the Restraining Notice. *Id.* at 827. Indeed, even the "first administrative steps" had been initiated as both parties acknowledged that if they failed to resolve their differences, litigation would ensue. [Decl. of Anthony J. Costantini, Ex. E (Dep. of Joel Morgenthau, Exs. M-1, M-5, M-4, M-7, M-8, M-9, M-10, M-11, M-23, M-24, M-26, M-31, M-34, M-48, M-67, M-71, M-73, M-75, M-81)]. *See, e.g., ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 411 (S.D.N.Y. 1999).

6

cited Ekman AB's refusal to accept Graphic's alternative indemnification offer to argue that Ekman AB failed to mitigate damages or act in a commercially reasonable manner; and (b) then created the false impression that Ekman AB *never* offered to indemnify Graphic during the resale process. [Second Declaration of Anthony J. Costantini, Esq., Ex. A at 2]. Ekman AB's clarification that it provided the Counter-Proposal is necessary to rebut this false impression on this narrow issue. The fact that there was some time gap between the proposal and the Counter-Proposal is irrelevant. Both the proposal and the Counter-Proposal were made against the backdrop of this litigation in its formative stages.

### B. Graphic Waived Any Objection To The Counter-Proposal's Admissibility By Failing To Object To Its Previous Admission

Graphic failed to object to Ekman AB's counsel's disclosure of the Counter-Proposal to the Court at the parties' appearance of May 26, 2011 and thus waived any objections to its admissibility. The Second Circuit has reiterated that failure to object to the admissibility of evidence when such evidence is presented waives a party's right to later object to its admissibility. *Hogan v. City of New York*, 396 Fed. App'x. 765 (2d Cir. 2010) (*citing Krieger v. Gold Bond Bldg. Prods.*, 863 F.2d 1091, 1096 (2d Cir. 1988); *United States v. Papadakis*, 510 F.2d 287, 295 (2d Cir. 1975)). Applying this principle in an analogous case, the First Circuit found that a party waived its right to object under Rule 408 where, as here, the party previously failed to object to the evidence. *United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 39 (1st Cir. 2008). Here, Ekman AB's counsel represented to this Court, in Graphic's presence, that it had provided Graphic with the Counter-Proposal and that Graphic had declined the Counter-Proposal. [Declaration of Anthony J. Costantini Submitted in Support of Plaintiff-Interpleader Defendant Ekman & Co AB's Motion For Partial Summary Judgment ("Decl. of Anthony J. Costantini"), ¶¶ 86-87]. Moreover, the Court itself had previously "suggested," on the record,

7

that Ekman AB extend an offer of indemnification. [Declaration of Keith D. Greenberg, Esq. in Support of Plaintiff-Interpleader Defendant Ekman & Co AB's Opposition to Graphic Paper, Inc.'s Motion for Summary Judgment ("Decl. of Keith D. Greenberg"), Ex. B]. Graphic did not object to the Court's suggestion or the representation by Ekman AB's counsel. Graphic thereby waived its right to object.

### III.  EKMAN AB OFFERED SUFFICIENT ADMISSIBLE EVIDENCE TO PROVE ITS PRIMA FACIE CASE FOR DAMAGES

As a result of Graphic's breach of contract, Ekman AB has suffered Diverted Goods damages of $64,477.30.[4] "All plaintiff must do to recover is demonstrate that the private [resale] complied with the requirements of [section] 2-706, namely, that the resale was made (1) in good faith; (2) in a commercially reasonable manner; and (3) buyer was given reasonable notification of the intention to resell." *Lugran v. J. Arrowsmith Broadway, Inc.*, No. 80 Civ. 0863-CLB, 1981 U.S. Dist. LEXIS 12224, at *18-19 (S.D.N.Y. Mar. 27, 1981). A party may prove a damages in a breach of contract action by submitting affidavits accompanied by documentary evidence. *See, e.g., Orchard Enterprises NY, Inc. v. Megabop Records Ltd.,* 09 Civ. 9607 (GBD)(GWG), 2012 U.S. Dist. LEXIS 3245, at *3-4 (S.D.N.Y. January 9, 2012); *D. R. I., Inc. v. Dennis*, 2006 U.S. Dist. LEXIS 85170, 2-3 (S.D.N.Y. Aug. 3, 2006). Here, Ekman AB has presented documentary evidence and sworn statements, and even offered a witness to give deposition testimony as to the resale efforts, whom Graphic never bothered to depose.

---

[4] In the course of Ekman AB's due diligence for this motion, Ekman AB became aware that the calculations provided in discovery were in certain ways inaccurate, which lowered the claimed damages by $12,430.31, primarily due to an inadvertent double count of freight and insurance charges. In order to rectify this error, Ekman AB provides the Court with a revised damages calculation. [Second Aff. of Xiomara Blanco, Ex. A].

Ekman AB fulfilled its burden of proving damages in its claim against Graphic for breach of contract by introducing as an exhibit the ICC, various versions of which had been prepared by Ekman AB's sales staff during the resale process and produced to Graphic. [Second Aff. of Xiomara Blanco, ¶ 5]. This spreadsheet summarizes the prices at which Ekman AB resold the Diverted Goods and the incidental damages which Ekman AB incurred during the resale process. *Contrary to Graphic's contentions, the vast majority of the supporting documentation for the spreadsheet, including pages of invoices, were produced to Graphic during discovery.* Until Graphic's Opposition of February 15, 2012, Graphic had never raised or challenged the adequacy of Ekman AB's production on the issue of damages.[5]

In fact, Graphic never even responded to Ekman AB's offer of a limited deposition of Xiomara Blanco, who headed the resale effort, on this exact issue. (Decl. of Keith D. Greenberg, Ex. G). To the extent that Graphic now challenges Ekman AB's evidence of its damages claims, a second affidavit from Ms. Blanco accompanies this reply and outlines her personal knowledge of the damages incurred by Ekman AB in the resale process. [Second Aff. of Xiomara Blanco, ¶¶ 1-11]. The Second Circuit has held that a trial court may properly deny further discovery if the non-moving party has had a fully adequate opportunity for discovery. *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989); *see also* Fed. R. Civ. P. 26(b)(2)(C)(ii).

---

[5] By contrast, on those occasions when the parties asked Ekman AB to supplement its document production, Ekman AB promptly complied. [Second Decl. of Anthony J. Costantini, Esq., Exs. B and C]. In an effort to mollify Graphic and its sudden interest in evidence related to damages, Ekman AB has produced to the parties, under separate cover, those additional documents which Graphic has now chosen to make an issue of.

9

Moreover, to the extent that Graphic claims to be seeking additional discovery because it cannot present facts essential to justify its opposition,[6] we note that it is well-settled that a party seeking additional discovery under former Rule 56(f) (now (d)) must file an affidavit in support of its request for discovery.[7] An affidavit pursuant to Rule 56(d) must describe: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gene Codes Forensics, Inc.*, 2011 U.S. Dist. LEXIS 72130, at *21 (citations omitted). *Graphic has never filed such an affidavit.* "A memorandum is not a substitute for an affidavit under Rule 56[(d)], and it has been held that the failure to file such an affidavit under Rule 56[(d)] is by itself enough to reject a claim that the opportunity for discovery was inadequate." *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985) (citations omitted); see also *Gene Codes Forensics, Inc.*, 2011 U.S. Dist. LEXIS 72130, at *21-22 (citations omitted). In sum, Graphic presents no factual basis upon which to contest Ekman AB's damages claims.

---

[6] In Graphic's Opposition, the only damage calculations which Graphic appears to challenge are those related to incidental resale damages. [Gr. Opp. at 15-19]. Graphic does not appear to challenge Ekman AB's actual losses on resale or expenses incurred for storage/warehousing, both of which were well-documented in discovery. In essence, the only damages in controversy are those related to credit insurance expense, **which total $2,550.40.**

[7] Fed. R. Civ. P. 56(d) "'carries forward without substantial change the provisions of former subdivision (f).'" *Gene Codes Forensics, Inc. v. City of New York*, 2011 U.S. Dist. LEXIS 72130, at *21 (S.D.N.Y. June 24, 2011).

10

## CONCLUSION

Accordingly, for all the foregoing reasons, as well as those previously presented, Ekman AB respectfully requests that the Court grants its Motion for Summary Judgment.

Dated: February 29, 2012
      New York, New York

                                              **DUANE MORRIS LLP**

                                              By: _/s/ Anthony J. Costantini_
                                                       Anthony J. Costantini, Esq.
                                                       ajcostantini@duanemorris.com
                                                       Mairi V. Luce, Esq.
                                                       luce@duanemorris.com
                                                       Keith D. Greenberg, Esq.
                                                       kdgreenberg@duanemorris.com
                                            1540 Broadway
                                            New York, NY 10036
                                            (212) 692-1000
                                            *Attorneys for Plaintiff-Interpleader*
                                            *Defendant Ekman & Co AB*

TO:    Gary Ettelman, Esq.
           Joshua Stern, Esq.
           Ettelman & Hochheiser, P.C.
           Suite 401
           100 Quentin Roosevelt Boulevard
           Garden City NY  11530
           *Counsel for Defendant-Interpleader*
           *Plaintiff Graphic Paper, Inc.*

           Joseph Zelmanovitz, Esq.
           Jessica Taran, Esq.
           Wilk Auslander LLP
           1515 Broadway
           43rd Floor
           New York, NY 10036
           *Counsel for Interpleader Defendant*
           *U.S. Bank, N.A.*