UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK,
----------------------------------------------------------------------x
EKMAN & CO. AB.,

                                        Plaintiff,

    –against –

GRAPHIC PAPER, INC.,

Case No. 10 CV 8110 (JGK)

**ORAL ARGUMENT
REQUESTED**

                                        Defendant.
----------------------------------------------------------------------x
GRAPHIC PAPER, INC.,

                              Interpleader Plaintiff,

    -against-

EKMAN & CO. AB., and
U.S. BANK NATIONALASSOCIATION,

                              Interpleader Defendants.
----------------------------------------------------------------------x

**DEFENDANT/INTERPLEADER PLAINTIFF
GRAPHIC PAPER'S REPLY MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

                                  Ettelman & Hochheiser P.C.
                                  Attorneys for Interpleader Plaintiff
                                  Graphic Paper, Inc.
                                  Garden City Center
                                  100 Quentin Roosevelt Blvd.
                                  Suite 401
                                  Garden City, New York 11530
                                  516-227-6300

## **TABLE OF CONTENTS**

**Page #**

TABLE OF AUTHORITIES ................................................................................ ii,iii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ............................................................................................................ 1

    I.    EKMAN IS NOT ENTITLED TO PRE-JUDGMENT INTEREST ............................................................................................. 1

    II.    EKMAN'S CLAIM FOR BREACH OF CONTRACT RELATING TO THE INVENTORY MUST BE DISMISSED ....................... 3

    III.    GRAPHIC IS ENTITLED TO INDEMNIFICATION FROM U.S. BANK ............................................................................................ 5

          A.    *U.S. Bank's Misstatements of Law* ............................................... 6

          B.    *U.S. Bank Is Not a Creditor Entitled to the Affirmative Defense of Economic Justification* .......................... 6

          C.    *U.S. Bank Misstates the Law Regarding Duty* ............................ 7

    IV.    GRAPHIC IS ENTITLED TO ATTORNEYS' FEES ...................... 9

CONCLUSION ....................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**                                                                                 **PAGE #**

*A & E Television Networks, LLC v. Pivot Point Entm't, LLC*,
   771 F. Supp. 2d 296 (S.D.N.Y. 2011)..................................................................................2, 9

*Aspen Indus., Inc. v. Marine Midland Bank*,
   52 N.Y.2d 575 (1981) ...............................................................................................................3

*Beckman v. U.S. Postal Serv.*,
   79 F. Supp. 2d 394 (S.D.N.Y. 2000).........................................................................................1

*Citibank N.A. v. Leibowitz*,
   110 A.D.2d 615 (2d Dep't 1985) ..............................................................................................2

*Enron Power Mktg.*,
   2004 WL 2290486 (S.D.N.Y. Oct. 12, 2004 ............................................................................5

*Estate of Ellington v. EMI Music Publ'g*,
   282 F. Supp. 2d 192 (S.D.N.Y. 2003).......................................................................................9

*George v. Marshalls of MA, Inc.*,
   61 A.D.3d 925 (2009) ...............................................................................................................8

*Ingersoll Mill. Mach. Co. v. M/V Bodena*,
   829 F.2d 293 (2d Cir. 1987)......................................................................................................3

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*,
   296 A.D.2d 103, 744 N.Y.S.2d 384 (2002) ..............................................................................6

*Kel Kim Corp. v. Cent. Markets, Inc.*,
   70 N.Y.2d 900 (1987) ...............................................................................................................4

*Landmark Chemicals, SA. v. Merrill Lynch & Co.*,
   234 F.R.D. 62 (S.D.N.Y. 2005) ................................................................................................9

*Mas v. Two Bridges Associates by Nat. Kinney Corp.*,
   75 N.Y.2d 680 (1990) ...............................................................................................................8

*Mfr.'s & Traders Trust Co. v. Reliance Ins. Co.*,
   8 N.Y.3d 583, 588 (2007) .........................................................................................................2

*Nat'l Fuel Gas Distribution Corp. v. TGX Corp.*,
   84-CV-1372E, 1992 WL 170819 (W.D.N.Y. July 10, 1992)....................................................4

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*,
   87 N.Y.2d 614 (1996) ..................................................................................................6

*Raquet v. Braun*,
   90 N.Y.2d 177, 681 N.E.2d 404 (1997) ....................................................................7,8

*Septembertide Pub., B.V. v. Stein & Day, Inc.*,
   884 F.2d 675 (2d Cir. 1989) .......................................................................................2

*Studio No. 54 Disco, Inc. v. Pee Dee Jay Amusement Corp.*,
   81 A.D.2d 911 (1981) .................................................................................................4

*U S W. Fin. Services, Inc. v. Marine Midland Realty Credit Corp.*,
   810 F. Supp. 1393 (S.D.N.Y. 1993) ...........................................................................5

*W. Virginia v. United States*,
   479 U.S. 305 (1987) ...................................................................................................9

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
   460 F.3d 281 (2d Cir. 2006) .......................................................................................7

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
   8 N.Y.3d 422 (2007) ..................................................................................................6

**STATUTES**

CPLR 5004 ............................................................................................................................2

CPLR § 5001 .........................................................................................................................9

CPLR § 5222 .........................................................................................................................3

CPLR § 5251 .........................................................................................................................4

U.C.C. § 2-609 ......................................................................................................................5

**OTHER AUTHORITIES**

F.R.E. 408 .............................................................................................................................4

Local Rule 67.1 ....................................................................................................................3

iii

**PRELIMINARY STATEMENT**

As outlined herein and previously in Defendant/Interpleader Plaintiff Graphic Paper, Inc.'s ("Graphic") initial memorandum of law in support [Dkt # 79], and also in its opposition to the motions for summary judgment filed separately by Interpleader Defendants Ekman & Co. AB ("Ekman") [Dkt # 91] and U.S. Bank National Association ("U.S. Bank") [Dkt # 89],[1] Graphic is entitled to a dismissal of all claims pending against it by Ekman, is alternatively entitled to indemnification from U.S. Bank, and is entitled to an award of $20,318.75, representing its reasonable attorneys' fees related to the filing of the interpleader action.

**ARGUMENT**

**I.      EKMAN IS NOT ENTITLED TO PRE-JUDGMENT INTEREST**

Ekman blatantly mischaracterizes the nature of its Complaint by asserting for the first time that it is seeking "contractual" interest rather than "pre-judgment" interest.  In fact, Ekman accuses Graphic of "conflate[ing] pre-filing or pre-judgment interest with contractual interest." (Ekman Br. at 18)  However, Ekman intentionally omits the fact that the only reference to interest contained in its Complaint is for pre-judgment interest, not contractual interest. Specifically, Ekman's Complaint states "EKMAN asks this court to order GRAPHIC to pay the $1,905,885.33 past due, **pre-judgment interest in the amount of at least $31,517.21** (interest through October 20)…" (emphasis added)  Thus, Ekman's reference to "contractual" interest is merely an attempt to assert an entirely new cause of action that must not be permitted.  *See Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant. . . it is inappropriate to

---

[1] Because the legal issues in this motion and in Ekman's and U.S. Bank's motion for summary judgment are identical, for the sake of brevity, Graphic hereby incorporates its opposition briefs for purposes of this motion for summary judgment. *See* Dkt ## 89, 90.

- 1 -

raise new claims for the first time in submissions in opposition to summary judgment.")

Moreover, the difference between contractual interest versus prejudgment interest is merely a distinction without a difference. In fact, the very case relied on by Ekman, namely *Citibank N.A. v. Leibowitz*, 110 A.D.2d 615 (2d Dep't 1985), specifically cites New York's prejudgment interest statute. ("[W]hen a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until … merged in a judgment.") Thus, in *Citibank*, the issue was not whether there was a difference between "contractual" versus "prejudgment" interest, but rather the specific rate of interest to be assessed; either the statutory or contract rate. However, as court's have consistently held, because an interpleader action is an equitable and not a contractual cause of action, the application of interest and the rate to be applied is entirely within the discretion of the court. *See Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 684 (2d Cir. 1989); *Mfr.'s & Traders Trust Co. v. Reliance Ins. Co.*, 8 N.Y.3d 583, 588 (2007).[2]

In this regard, the law is clear that "prefiling interest is owed by a disinterested stakeholder in an interpleader action *only when it improperly and excessively delays the filing of the interpleader action.*" *A & E Television Networks, LLC v. Pivot Point Entm't, LLC*, 771 F. Supp. 2d 296 (S.D.N.Y. 2011). As outlined in Graphic's initial memorandum of law, the record overwhelmingly demonstrates that immediately after negotiations between Ekman and Graphic ended on October 15, 2010, Graphic quickly filed its cause of action for interpleader, served its interpleader action on U.S. Bank, and thereafter submitted a proposed order to the parties permitting the Interpleader Stake to be deposited into an interest bearing account pursuant to

---

[2] Like in *Mfrs. Traders Trust*, Graphic has not been adjudged to have breached the parties' agreement and, in fact, Ekman's cause of action for breach of contract relating to the Interpleader Stake was voluntarily dismissed, with Ekman retaining the right to seek interest. [Dkt # 41]

- 2 -

Local Rule 67.1 (as requested by Ekman). Accordingly, Ekman is not entitled to any pre-judgment interest because Graphic did not delay in depositing the Interpleader Stake.

However, although Graphic believes the prejudgment interest in this case is not appropriate, if the Court believes it has the authority to grant interest, using its discretion, the Court should calculate interest beginning one month after the negotiations between Graphic, Paper Max, and U.S. Bank, ended (namely November 15, 2010) and should use a more appropriate interest rate that reflects the economic reality of interest rates today, namely the weekly average Treasury-Bill rate for the time period. *See Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 311 (2d Cir. 1987).

## II.   EKMAN'S CLAIM FOR BREACH OF CONTRACT RELATING TO THE INVENTORY MUST BE DISMISSED

Ekman claims that it is entitled to damages under Uniform Commercial Code ("U.C.C.") § 2-609 because it was forced to cancel paper orders totaling approximately $558,440.72 (the "Inventory Claims") when Graphic failed to give it adequate assurances of performance. However, any damages suffered by Ekman were caused by its own actions (i.e. refusal to indemnify, quash the Restraining Notice, or provide acceptable affidavits) and not the actions of Graphic. As Ekman admits, Graphic repeatedly assured Ekman that it would make payment for the delivered paper if Ekman agreed to indemnify Graphic for any potential double liability, if Ekman was able to quash the Restraining Notice, or if Ekman and Paper Max could provide acceptable affidavits. It is thus simply inappropriate for Ekman to seek to hold Graphic liable for its own inaction.

Moreover, Graphic was legally prohibited from making payment to Ekman as a result of Restraining Notice. Under New York law, a restraining notice pursuant to CPLR § 5222

- 3 -

operates as an injunction and can subject a person or corporation to contempt of court. *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 579 (1981); CPLR § 5251. Therefore, by operation of law, Graphic could not legally make payment to Ekman, and, as a result, Ekman had no legal right to demand "adequate assurance" from Graphic under the U.C.C. In fact, what Ekman suffered was not "reasonable grounds for insecurity," but rather the effects of a legal restraint that prevented Graphic from making payment. Stated another way, Graphic could not repudiate what it did not have the legal right to perform. Accordingly, "under the modern doctrine of impossibility of performance, a party restrained by a judicial order will be excused from performance of a contract if the party did not contribute to the issuance of the order." *Studio No. 54 Disco, Inc. v. Pee Dee Jay Amusement Corp.*, 81 A.D.2d 911, 912, (1981); *Kel Kim Corp. v. Cent. Markets, Inc.*,70 N.Y.2d 900, 902, (1987). This case is no different because Graphic was excused from performance under the doctrine of impossibility.[3]

Indeed, had Ekman believed that the Restraining Notice had no merit, it could have moved to quash the Restraining Notice in the state court proceeding or, even simpler, Ekman could have indemnified Graphic against potential double liability that Graphic was exposed to by reason of Ekman's purported relationship with APP and Paper Max.[4] Indeed, if Ekman was confident that no "judgment debtor" had any interest in its receivable from Graphic there is no

---

[3] Ekman repeatedly mischaracterizes communication between Graphic counsel Joel Morgenthau and U.S. Bank counsel Jessica Taran. In particular, during the August 24, 2010, communication, Morgenthau sought confirmation from U.S. Bank that the restraining notice did not apply to affiliates of the judgment debtors, but did not receive such a response. In fact, U.S. Bank attorney Joseph Zelmanovitz has admitted in his affidavit that the Restraining Notice applied to affiliates. Even more important though, U.S. Bank has repeatedly taken the position that the Restraining Notice properly restrained Graphic from making payment to Ekman.

[4] Ekman repeatedly references an offer of settlement it made during the pendency of its litigation. As outlined in more detail in Graphic's opposition brief to Ekman's motion for summary judgment, such references are barred by F.R.E. 408.

- 4 -

rational reason for refusing to indemnify Graphic.  *See Nat'l Fuel Gas Distribution Corp. v. TGX Corp.*, 84-CV-1372E, 1992 WL 170819 (W.D.N.Y. July 10, 1992), ("[T]he commercial purpose of a demand under section 2–609 is to permit a party likely to be injured by the other party's nonperformance to take steps to protect itself without the worry that its own nonperformance will be construed as a repudiation by it in future litigation.")

Moreover, Ekman did not act in good faith (as required by the UCC) because it could have, but failed to take the necessary steps to make itself secure.  Ekman could not simply sit on its hands, when it had the power and ability to remedy its own "insecurity."  In fact, U.C.C. § 2-609 requires that performance can only be suspended if is "commercially reasonable to do so."  In this case, it was not commercially reasonable to suspend performance when Ekman could have taken less costly and less damaging measures to protect itself.  Thus, Ekman's own failure to indemnify or move to quash the Restraining Notice is what caused it harm; not anything undertaken by Graphic.  In fact, Ekman's failure to indemnify or move to quash the Restraining Notice constituted a breach of its duty to mitigate its damages.  *See U S W. Fin. Services, Inc. v. Marine Midland Realty Credit Corp.*, 810 F. Supp. 1393, 1402 (S.D.N.Y. 1993).

Nevertheless, Graphic repeatedly did give Ekman adequate assurance that it would make payment under certain commercially reasonable conditions.  *See Enron Power Mktg.,* 2004 WL 2290486 (S.D.N.Y. Oct. 12, 2004) ("In addition, assurances may be less than demanded and still be adequate.")  For instance, in emails dated September 1 and 3, 2010, Graphic's counsel informed Ekman that Graphic would make payment if it was provided with acceptable affidavits, or if Ekman agreed to indemnify such payments.  Such assurances should have been and were sufficient to allay any "insecurity" felt by Ekman.

### III. GRAPHIC IS ENTITLED TO

## INDEMNIFICATION FROM U.S. BANK

*A.   U.S. Bank's Misstatements of Law*

U.S. Bank asserts that Graphic's claim for indemnification based on tortious interference with contract should be dismissed because its "legitimate" use of a collection tool cannot constitute a tort.  This is a clear misstatement of the law, and in fact all of the cases cited by U.S. Bank are factually and legally inapposite because they concern claims based on tortious interference with prospective economic advantage, abuse of process, or defamation, all of which require an element of illegal or wrongful conduct.  *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 425-26, (2007); *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 621 (1996); *Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 111, 744 N.Y.S.2d 384 (2002)

In this case, Graphic's claim is for tortious interference with existing contract. Accordingly, U.S. Bank's position that Graphic was required to demonstrate that U.S. Bank acted wrongfully or illegally to prove tortious interference with contract is simply not supported by the case law.  All that Graphic is required to demonstrate is that U.S. Bank's action were "unjustified."  In this regard, U.S. Bank's actions were clearly unjustified because it had no evidence to support its service of the Restraining Notice and its subsequent refusal to permit Graphic to pay Ekman the Interpleader Stake.

*B.   U.S. Bank Is Not a Creditor Entitled to the
Affirmative Defense of Economic Justification*

U.S. Bank also wrongly relies on the defense of economic justification for its position that Graphic is required to demonstrate that U.S. Bank acted "maliciously."  "Under this defense, where a third party has an 'economic interest' in an entity and interferes with an existing

- 6 -

contractual relationship between the plaintiff and that entity, such interference is considered privileged and the plaintiff must show malice or illegality in order to establish a tortious interference claim." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 283 (2d Cir. 2006). However, in order to constitute an "economic interest" a party must have an "equal or superior right." *White Plains,* 460 F.3d at 28; *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426, 867 N.E.2d 381, 383-84 (2007).

In support, U.S. Bank cites numerous cases where a creditor was permitted to rely on the defense of "economic justification." The basis for this rule is that a creditor has "an equal or superior right" to any other creditor. *See generally White Plains*, 8 N.Y.3d at 426-27 ("When the defendant is simply a competitor … interest is not equal to that of plaintiff and would not justify defendant's inducing the customer to breach the existing contract.") However, unlike the cases cited by U.S. Bank, U.S. Bank is neither a creditor of either Ekman or Graphic, nor does it have have any "economic interest" in Ekman or Graphic. In fact, if U.S. Bank was a creditor and had an economic interest in either Ekman or Graphic, it would have had the right to claim the Interpleader Stake, which it admittedly relinquished when it settled with Ekman. Thus, at the time of U.S. Bank's tortious interference it was a legal stranger to both Ekman and Graphic. Accordingly, U.S. Bank cannot rely on the defense of economic justification because it did not have "equal or superior rights" that it was protecting; it had no rights.

*C.     U.S. Bank Misstates the Law Regarding Duty*

U.S. Bank asserts that Graphic's claim against it for indemnification cannot be sustained because "U.S. Bank has no separate duty running directly to Ekman that form the basis of a claim for indemnification." However, in *Raquet v. Braun*, 90 N.Y.2d 177, 183, 681 N.E.2d 404, 407 (1997), the New York Court of Appeals stated that "[t]his Court has previously recognized

- 7 -

causes of action for contribution or indemnification against parties who were insulated from liability to the injured plaintiff **because of a lack of duty.**" (Emphasis added). In fact, in *Raquet*, the Court stated that "[w]e conclude that a third-party action for indemnification or contribution lies in these circumstances, even though the injured firefighter would not have a direct cause of action against the third-party defendant." *Raquet*, 90 N.Y.2d at 180-81.

In fact, "[t]he duty that forms the basis for the liability arises from the principle that everyone is responsible for the consequences of his own negligence, and if another person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him." *Raquet*, 90 N.Y.2d at 183; *George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 929-30 (2009) ("The principle of common-law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party"). This is because "[i]mplied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Mas v. Two Bridges Associates by Nat. Kinney Corp.*, 75 N.Y.2d 680, 690 (1990). Thus, it is simply wrong for U.S. Bank to assert that Graphic was required to demonstrate that U.S. Bank owed Ekman a duty.

Unable to support its legal contentions that indemnification should be denied because of a lack of duty, U.S. Bank next attempts to place blame on Graphic for not making payment to Ekman. This argument is simply incredulous. It has been U.S. Bank's repeated position in this case that the Restraining Notice prevented Graphic from making payment to Ekman. U.S. Bank even filed a cross-claim and counterclaim against Graphic and Ekman seeking declaratory relief that the Restraining Notice properly applied to the Interpleader Stake. The bottom line is that U.S. Bank served an overly broad Restraining Notice that listed 97 affiliates (including Paper

- 8 -

Max) and that restrained "all debts coming due from Graphic to the Judgment Debtors, its affiliates and/or agents," and then followed up that Restraining Notice by refusing to permit Graphic to make payment Ekman and telling Graphic to file an interpleader action.  For U.S. Bank to insist that anyone other than itself is responsible when it served an improper Restraining Notice without evidence to sustain its burden against Ekman is the height of hypocrisy.

Accordingly, Graphic has clearly met its burden that it is entitled to indemnification from U.S. Bank if Graphic is held liable to Ekman, and therefore requests that this Court deny the instant motion.

## IV.    GRAPHIC IS ENTITLED TO ATTORNEYS' FEES

Graphic seeks an award in the amount of $20,318.75, representing its reasonable attorneys' fees related to the filing of the interpleader action. "To recoup attorneys' fees and costs, a court must find (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Landmark Chemicals, SA. v. Merrill Lynch & Co.*, 234 F.R.D. 62, 63 (S.D.N.Y. 2005);  *Estate of Ellington v. EMI Music Publ'g*, 282 F. Supp. 2d 192, 193 (S.D.N.Y. 2003).

In its opposition, Ekman argues that Graphic is not entitled to attorneys' fees because Graphic is not a disinterested stakeholder that conceded liability since Graphic has contested its claim for 12 percent prejudgment interest.  However, all of the cases cited by Ekman are distinguishable because they concerned a disinterested shareholder who contested the amount of the underlying claim, and had nothing to do with the issue of pre-judgment interest, which is meant to be awarded after liability has been determined.  *See generally* CPLR § 5001; *W. Virginia v. United States*, 479 U.S. 305, 310 (1987).  In fact, courts in this district have treated the underlying liability and prejudgment interest as distinct concepts.  *See A & E Television*

- 9 -

*Networks, LLC v. Pivot Point Entm't, LLC*, 771 F. Supp. 2d 296, 303 (S.D.N.Y. 2011) (holding that even though a statutory interpleader action required a party for purposes of subject matter jurisdiction to deposit the highest disputed claimed amount into the court's registry, the court specifically precluded prejudgment interest from such a calculation.)  The simple fact is that the granting of prejudgment interest is entirely within the discretion of the Court (see above), and the fact that Graphic has asked this Court to exercise its discretion does not mean that it should be precluded from being awarded attorneys' fees that are limited to the filing the interpleader action and that are wholly unrelated to the issue of pre-judgment interest.

<u>Second,</u> Ekman asserts that Graphic may not be awarded attorneys' fees because it acted in bad faith because Graphic did not request that U.S. Bank specify the debt[5], and because Graphic did not promptly deposit the Interpleader Stake of the Court.  However, such statements have no basis in fact.  As detailed in Graphic's initial memorandum of law, Graphic spent considerable time negotiating with Ekman, Paper Max, and U.S. Bank, and it was only after U.S. Bank ostensibly made a claim for the money by suggesting the filing of an interpleader amount, did Graphic promptly file the interpleader claim and deposit the money into the Court's registry. Rather, it was Ekman that acted in bad faith because it repeatedly refused to indemnify Graphic if Graphic made payment to it.

## **CONCLUSION**

For all of the reasons set forth herein, it is respectfully submitted that this Court grant Graphic Paper, Inc.'s motion for summary judgment.

---

[5] In rejecting Ekman's motion to dismiss [Dkt # 28], this Court ruled that U.S. Bank was not required to "specify the debt."  Moreover, Ekman's statement is irrelevant since it has been U.S. Bank's position that the Restraining Notice applied to affiliates (see Aff. Of Joseph Zelmanovitz) and that Ekman was the agent of the Judgment Debtors.

Dated: Garden City, New York
       February 29, 2012

                                              ETTELMAN & HOCHHEISER, P.C.


                                              By:_____s/ Gary Ettelman_____
                                                    Gary Ettelman
                                                      Joshua S. Stern
                                            Attorneys for Interpleader Plaintiff
                                            100 Quentin Roosevelt Blvd., Suite 401
                                            Garden City, New York 11530
                                            (516) 227-6300